IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| AGILENT TECHNOLOGIES, INC. ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 2:25-cv-02101 |
| v. ) | Judge Mark S. Norris |
| ) | Magistrate Judge Charmiane Claxton |
| XPEDIENT MANAGEMENT GROUP, LLC ) | |
| and ST. PAUL FIRE AND MARINE ) | |
| INSURANCE COMPANY, ) | |
| ) | |
| Defendants. ) | |
| ) | |
| _____ ) | |
| ) | |
| XPEDIENT MANAGEMENT GROUP, LLC ) | |
| ) | |
| Cross-Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| ST. PAUL FIRE AND MARINE ) | |
| INSURANCE COMPANY, ) | |
| ) | |
| Cross-Defendant. ) | |

**MEMORANDUM IN SUPPORT OF ST. PAUL FIRE AND MARINE INSURANCE
COMPANY'S MOTION TO DISMISS CROSS-CLAIM**

Pursuant to Federal Civil Procedure Rule 12(b)(6) and Local Rule 7(a)(1), Defendant St. Paul Fire and Marine Insurance Company ("St. Paul") files the following memorandum in support of its motion to dismiss the Cross-Claim filed by Xpedient Management Group, LLC ("Lessee"). As grounds, St. Paul will show that the plain language of the Lease agreement bars the Lessee from making a Cross-Claim against St. Paul.

## RELEVANT FACTUAL BACKGROUND

On or about May 18, 2023, St. Paul and Lessee entered a commercial lease agreement for 45,720 square feet of warehouse space located at 4601 Cromwell Avenue, Building 20 Memphis, Tennessee 38118 (hereinafter "Warehouse"). See Standard Commercial Lease ("Lease") attached as Exhibit 1 to the Answer and Cross-Claim (filed under seal as Doc No. 22); Answer and Cross-Claim ¶6. The Lease contains the following express provisions involving insurance, liability, recovery, and subrogation.

First, and foremost, the Lease contains a provision addressing Lessee's insurance. Specifically, the section states as follows:

> **7.06 Lessee's Insurance.** Lessee shall, during the term of this Lease and any other period of occupancy, at its sole cost and expense, keep in full force and effect the following insurance:
>
> (a) Standard form property insurance on an "all risk" basis with extended coverage and special extended coverage, including insuring against the perils of fire, vandalism, malicious mischief and sprinkler leakage. This insurance shall cover all property owned by Lessee, including Lessee's personal property and trade fixtures, any Lessee improvements paid for by Lessee and not reimbursed by Lessor, and including such property or improvements in the course of construction, in an amount of the full replacement values thereof. **All property kept, maintained, or stored on the Premises shall be so kept, maintained, or stored at the sole risk of Lessee**.

Ex. 1 to Answer and Cross Claim (Doc No. 22) (emphasis added) (hereinafter the "Lease").

The same Lease contains a hold harmless provision where the Lessee agrees to indemnify and hold the Lessor harmless to the extent damage is caused by water and if the matter is not covered by an insurance policy. The section is stated as follows:

> **7.05 Hold Harmless.** Lessor shall not be liable to Lessee's employees, agents, invitees, licensees or visitors, or to any other person, for any injury to person or damage to property on or about the Leased Premises caused by any act or omission of Lessee, its agents, servants or employees, or of any other person entering upon the Leased Premises under express or implied invitation by Lessee, or caused by the improvements located on the Leased Premises becoming out of repair, the

failure or cessation of any service provided by Lessor (including security service and devices), or caused by **leakage** of gas, oil, **water** or steam or by electricity emanating from the Leased Premises. To the extent not covered by an insurance policy required herein, **Lessee agrees to indemnify and hold harmless Lessor of and from any loss, attorney's fees, expenses or claims arising out of any such damage or injury**.

The Lease.

Additionally, the Lease contains a waiver of recovery, as follows:

> **7.04 Waiver of Recovery and Subrogation.** Notwithstanding anything set forth in this Lease to the contrary (including indemnification provisions in this Lease), and to the extent permitted by applicable law, Lessor and Lessee do **hereby waive any and all rights of recovery, claims, actions or causes of action against the other**, their respective principals, beneficiaries, partners, officers, directors, agents (including Lessor's property manager(s) or agents with respect to Lessee's waiver), and employees **for any loss or damage that may occur to their respective property, the property of others in their respective care, custody, and control the Building, Premises, Leased Premises or any improvements thereto, or any contents, therein, by reason of fire, the elements or any other cause, regardless of cause or origin, including negligence of Lessor or Lessee**, or their respective principals, beneficiaries, partners, officers, directors, agents (including Lessor's property manager or agent with respect to Lessee's waiver) and employees, which loss or damage is covered by insurance (or would have been covered by insurance, had the insurance required by this Lease been procured or maintained).
>
> In addition, both **parties shall not be liable for, and both parties hereby waive claims against the other party's Indemnities for losses resulting from, an interruption of the business of the other party, and consequential damages, resulting from any accident or occurrence in or about the Leased Premises from any cause whatsoever**.
>
> Because the foregoing waivers will preclude the assignment of any such claim by subrogation (or otherwise) to an insurance company (or any other person), Lessor and Lessee each agree to give each insurance company which has issued, or in the future may issue, any insurance policy with respect to any of the items covered by this waiver, written notice of the terms of this waiver, and to have each such insurance policy properly endorsed, if necessary, to prevent the invalidation of any of the coverage provided by such insurance policy by reason of such waiver. For the purpose of the foregoing waiver, the amount of any deductible, self-insured retention, or coinsurance applicable to any loss or damage shall be deemed covered by and recoverable by the insured under the insurance policy to which such deductible, self-insured retention, or coinsurance relates, and the foregoing waiver shall also apply to such amounts.

The Lease (emphasis added).

Lastly, the Lease contains an express Indemnification clause of the Lessor by the Lessee.

> **7.08 Indemnification.** Subject to Section 7.04 above, and to the extent not covered by an insurance policy required herein, Lessee hereby agrees to indemnify and hold Lessor and Lessor's property manager (if any), their respective partners, officers, directors and employees harmless from and against any and all costs, damages, claims, liabilities, and expenses (including reasonable attorney fees) suffered by or claimed by a third party or by any of Lessor's or Lessor's property manager's employees against Lessor or Lessor's property manager, partners, officers, directors and employees, to the extent caused by: (i) Lessee's maintenance, use of occupancy of the Leased Premises or the business conducted by Lessee therein; (ii) any negligent act or omission by Lessee or its employees, agents or invitees; or (iii) any breach or default by Lessee in the performance or observance of its covenants or obligations under this Lease, including but not limited to costs, damages, claims, liabilities and expenses for injuries to Lessor's property manager, partners, officers, directors and employees.

The Lease.

On or about January 17, 2024, the temperatures dropped below freezing in the Warehouse causing a pipe in the fire sprinkler system to freeze, burst, and **leak water** into the Warehouse causing damage to inventory stored in the Warehouse. Answer and Cross Claim ¶10 (emphasis added).

On January 31, 2025, Plaintiff Agilent filed a Complaint against St. Paul and Lessee. Compl., *passim*. On February 3, 2025, Lessee filed an Answer and Cross Claim against St. Paul. Lessee makes claims for breach of contract, breach of indemnity agreement, and breach of quiet enjoyment. Answer and Cross Claim ¶¶ 11-14, 15-29, 20-23. The claims by Lessee are barred by the plain language of the Lease.

## **LEGAL STANDARD**

A claim may be dismissed for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). When evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to the

4

plaintiff, accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff." Courtright v. City of Battle Creek, 839 F.3d 513, 518 (6th Cir. 2016). Federal Rule of Civil Procedure 8(a)(2) requires only that a complaint contain "a short and plain statement of the claim[.]" Fed. R. Civ. P. 8(a)(2). "The factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible." Fritz v. Charter Twp. of Comstock, 592 F.3d 718, 722 (6th Cir. 2010) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678(2009)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

As a general rule, matters outside the pleadings may not be considered in ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6) unless the motion is converted to one for summary judgment under Fed. R. Civ. P. 56. Rule 12(d). When a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment. Ross v. Kirkpatrick, No. 3:20-cv-00536, 2021 U.S. Dist. LEXIS 27309, at *1 (M.D. Tenn. Feb. 12, 2021) (citing Doe v. Ohio State Univ., 219 F.Supp.3d 645, 652-53 (S.D. Ohio 2016); Blanch v. Trans Union, LLC, 333 F. Supp. 3d 789, 791-92 (M.D. Tenn. 2018)). "Resolution of contractual claims on a motion to dismiss is proper if the terms of the contract are unambiguous." Griggs v. LF Prod. PTE Ltd., No. 1:12-CV-00193, 2013 U.S. Dist. LEXIS 117896, 2013 WL 4499131, at *4 (M.D. Tenn. Aug. 16, 2013), McKee Foods Corp. v. Pitney Bowes, Inc., No. 1:06-CV-80, 2007 U.S. Dist. LEXIS 20630, at *3 (E.D. Tenn. Mar. 22, 2007) ("Where the language of the contract is clear and unambiguous, its literal meaning controls the outcome of contract disputes. In such a situation, contractual interpretation is a matter of law and may be addressed on a motion under Rule 12"); see also Ajuba Int'l, L.L.C. v. Saharia, 871 F. Supp. 2d

671, 689 (E.D. Mich. 2012) ("In reviewing a Rule 12(b)(6) motion to dismiss, the Court may resolve issues of contract interpretation when the contract is properly before the Court, but must resolve all ambiguities in the contract in Plaintiffs' favor.")

## LEGAL ARGUMENT

The interpretation of written agreements is a matter of law. Guiliano v. Cleo, 995 S.W.2d 88, 95 (Tenn. 1999). The starting point to any dispute involving the interpretation of a contract is the contract itself and the written words that appear on its face. Individual Healthcare Specialists, Inc. v. BlueCross BlueShield of Tenn., Inc., 566 S.W.3d 671, 694 (Tenn. 2019) (guiding courts "to keep the written words as the lodestar of contract interpretation." (citations omitted)).

A court interprets a contract to effectuate the intent of the parties by enforcing the agreement's plain and ordinary language. See Certain Underwriters at Lloyd's of London v. Paniagua, 957 F. Supp. 2d 921, 924 (W.D. Tenn. 2013) (citing U.S. Bank, N.A. v. Tenn. Farmers Mut. Ins. Co., 277 S.W.3d 381, 386 (Tenn. 2009); Nat'l Ins. Ass'n v. Simpson, 155 S.W.3d 134, 137 (Tenn. Ct. App. 2004)); see also Allmand v. Pavletic, 292 S.W.3d 618, 630 (Tenn. 2009) (""A cardinal rule of contractual interpretation is to ascertain and give effect to the intent of the parties.")

"When the language of the contract is plain and unambiguous, courts determine the intentions of the parties from the four corners of the contract, interpreting and enforcing it as written." Union Realty Co. v. Family Dollar Stores of Tennessee, Inc., 255 S.W.3d 586, 591 (Tenn. Ct. App. 2007). The Tennessee Court of Appeals has described the interpretation as follows:

> The rights and obligations of contracting parties are governed by their written agreements. The courts must interpret these contracts as written. We are not at liberty to make a new contract for parties who have spoken for themselves, nor are we at liberty to relieve parties from their contractual obligations simply because these obligations later prove to be burdensome or unwise.

Hillsboro Plaza Enterprises v. Moon, 860 S.W.2d 45, 47 (Tenn. Ct. App. 1993).

6

Here, Lessee attached the Lease to the Answer and Cross-Claim and relies upon the four corners of the document. Despite the allegations made by Lessee, the Lease provides in unambiguous language that St. Paul is not liable for the property kept, maintained, or stored on premises by the Lessee and the losses related to the events described in the Complaint and Answer and Cross-Claim, insured or uninsured, are precluded from recovery.

**I. THE PLAIN AND ORDINARY LANGUAGE OF THE LEASE STATES THAT PROPERTY ON THE PREMISES SHALL BE SO KEPT, MAINTAINED, OR STORED AT THE SOLE RISK OF LESSEE.**

The plain language of the Lease bars Lessee from making its Cross-Claim against St. Paul. Specifically, "[a]ll property kept, maintained, or stored on the Premises shall be so kept, maintained, or stored at the **sole risk of Lessee**." Section 7.06 to the Lease (emphasis added). The inventory described in the Complaint was property kept, maintained, or stored on the Premises. It was kept, maintained, or stored at the sole risk of Lessee. The terms were clear at the time the Lease was entered into on May 18, 2023 and at the time of the described event on January 17, 2024. There is no allegation in the Answer and Cross-Claim that the contract was not in effect at the time of the event or that the terms were unclear at the time the parties entered into the Lease; the parties to the Cross-Claim agree that the Lease governs their relationship. Accordingly, under Section 7.06, Lessee is barred from making a Cross-Claim against St. Paul because the parties agreed that the sole risk would fall on Lessee.

**II. ANY ALLEGED LOSSES, INSURED OR UNINSURED, ARE PRECLUDED FROM RECOVERY UNDER THE LEASE.**

Under the same Lease, the Lessee agreed to hold St. Paul harmless for the insured or uninsured losses described in the Complaint and Answer and Cross-Claim. First, the Lessee expressly agreed to hold St. Paul harmless for damage to property caused by the leakage of water.

7

> **7.05 Hold Harmless.** Lessor shall **not** be liable to Lessee's employees, agents, invitees, licensees or visitors, or to any other person, for any injury to person or damage to property on or about the Leased Premises caused by any act or omission of Lessee, its agents, servants or employees, or of any other person entering upon the Leased Premises under express or implied invitation by Lessee, or caused by the improvements located on the Leased Premises becoming out of repair, the failure or cessation of any service provided by Lessor (including security service and devices), or caused by leakage of gas, oil, water or steam or by electricity emanating from the Leased Premises. To the extent not covered by an insurance policy required herein, Lessee agrees to indemnify and hold harmless Lessor of and from any loss, attorney's fees, expenses or claims arising out of any such damage or injury.

The Lease (emphasis added).

The events described in the Complaint and Answer and Cross-Claim involved cold weather that caused "fire sprinkler system to freeze, burst, and **leak water** into the Subject Warehouse." Answer and Cross Claim ¶10. Under Section 7.05 of the Lease, the St. Paul is not liable to Lessee for damage caused by **leakage of water**. In fact, to the extent this event is not covered by an insurance policy, the Lessee agreed to indemnify and hold St. Paul harmless for the loss, attorney's fees, or claims (discussed further *infra*). Here, Lessee has filed a Cross-Claim against St. Paul for breach of contract, breach of quiet enjoyment, and indemnity in direct violation of its obligations under the Lease. There is no allegation in the Cross-Claim that this hold harmless provision was not in effect at the time of the events described in the Complaint and Answer and Cross-Claim. Section 7.05 bars claims by Lessee for the events described in the Complaint and Answer and Cross-Claim.

Furthermore, the Cross-Claim is expressly barred under Sections 7.04 and 7.08 of the Lease. Sections 7.04 and 7.08 directly address two types of losses: losses that were insured (or should have been insured) and uninsured losses.

> **7.04 Waiver of Recovery and Subrogation.** Notwithstanding anything set forth in this Lease to the contrary (including indemnification provisions in this Lease), and to the extent permitted by applicable law, Lessor and Lessee do **hereby waive any and all rights of recovery, claims, actions or causes of action against the other**,

8

their respective principals, beneficiaries, partners, officers, directors, agents (including Lessor's property manager(s) or agents with respect to Lessee's waiver), and employees **for any loss or damage that may occur to their respective property, the property of others in their respective care, custody, and control the Building, Premises, Leased Premises or any improvements thereto, or any contents, therein, by reason of fire, the elements or any other cause, regardless of cause or origin, including negligence of Lessor or Lessee**, or their respective principals, beneficiaries, partners, officers, directors, agents (including Lessor's property manager or agent with respect to Lessee's waiver) and employees, **which loss or damage is covered by insurance (or would have been covered by insurance, had the insurance required by this Lease been procured or maintained).**

In addition, both **parties shall not be liable for, and both parties hereby waive claims against the other party's Indemnities for losses resulting from, an interruption of the business of the other party, and consequential damages, resulting from any accident or occurrence in or about the Leased Premises from any cause whatsoever**.

Because the foregoing waivers will preclude the assignment of any such claim by subrogation (or otherwise) to an insurance company (or any other person), Lessor and Lessee each agree to give each insurance company which has issued, or in the future may issue, any insurance policy with respect to any of the items covered by this waiver, written notice of the terms of this waiver, and to have each such insurance policy properly endorsed, if necessary, to prevent the invalidation of any of the coverage provided by such insurance policy by reason of such waiver. For the purpose of the foregoing waiver, the amount of any deductible, self-insured retention, or coinsurance applicable to any loss or damage shall be deemed covered by and recoverable by the insured under the insurance policy to which such deductible, self-insured retention, or coinsurance relates, and the foregoing waiver shall also apply to such amounts.

…

**7.08 Indemnification.** Subject to Section 7.04 above, and **to the extent not covered by an insurance policy required therein**, Lessee hereby agrees to indemnity and hold Lessor and Lessor's property manager (if any), their respective partners, officers, directors and employees harmless from and against any and all costs, damages, claims, liabilities, and expenses (including reasonable attorney fees) suffered by or claimed by a third party or by any of Lessor's or Lessor's property manager's employees against Lessor or Lessor's property manager, partners, officers, directors and employees, to the extent caused by: (1) Lessee's maintenance, use or occupancy of the Leased Premises or the business conducted by Lessee therein; (ii) any negligent act or omission by Lessee or its employees, agents or invitees; or (iii) any breach or default by Lessee in the performance or observance of its covenants or obligations under this Lease, including but not

>   limited to costs, damages, claims, liabilities and expenses for injuries to Lessor's
>   property manager, partners, officers, directors and employees.

Sections 7.04 and 7.08 to the Lease (emphasis added).

Here, again, Lessee has made a Cross-Claim for breach of contract, breach of quiet enjoyment, and indemnity in direct violation of the Lease. To the extent that Lessee seeks to recover loss or damage to its own property and/or Agilent's property, and that loss or damage is covered by Lessee's insurance (or would have been covered if the required insurance was obtained), then Section 7.04 bars its claim against St. Paul. To the extent that Lessee seeks to recover loss or damage to property that is not covered by Lessee's insurance, then Xpedient alone has the contractual liability for "any loss or damage that may occur to their respective property, the property of others in their respective care, custody, and control the Building, Premises, Leased Premises or any improvements thereto, or any contents, therein, by reason of fire, the elements or any other cause, regardless of cause or origin, including negligence of Lessor or Lessee." Sections 7.04 to the Lease. To the extent that Lessee's breach of quiet enjoyment claim or breach of contract is a claim for business interruption, Section 7.04 expressly waives any such claim.

Moreover, the Lease in Section 7.08 contains an express indemnity clause for losses not covered by insurance. Lessee would indemnify for "costs, damages, claims, liabilities and expenses for injuries to Lessor's property manager, partners, officers, directors and employees. Here the Complaint was filed on January 31, 2025 against St. Paul alleging damage to third-party Agilent's property within the leased premises, the Warehouse space. Under the Lease, Lessee agreed to indemnify St. Paul for those costs, damages, claims, liabilities, and expenses not covered by their insurance including costs related to a lawsuit. Accordingly, Section 7.08 bars Lessee's Cross-Claim.

Despite these provisions in the Lease, Lessee filed a Cross-Claim against St. Paul. The plain language of Sections 7.04, 7.05, 7.06, and 7.08 in the Lease directly address these claims and therefore bar the Cross-Claim made by Lessee.

## CONCLUSION

For the foregoing reasons, St. Paul respectfully requests that this Court dismiss the claims against it by Cross-Plaintiff Xpedient Management Group, LLC.

Respectfully submitted,

*/s/ Paige I. Bernick*
Paige I. Bernick, Esq. (BPR # 30071)
Peter C. Robison, Esq. (BPR # 27498)
Ryan N. Clark, Esq. (BPR # 29105)
LEWIS THOMASON, P.C.
424 Church Street, Suite 2500
Nashville, TN  37219
pbernick@lewisthomason.com
Telephone:  (615) 259-1366

*Attorneys for Defendant St. Paul Fire and Marine Insurance Company*

**CERTIFICATE OF SERVICE**

   I hereby certify that a copy of the foregoing MEMORANDUM IN SUPPORT OF DEFENDANT ST. PAUL FIRE AND MARINE INSURANCE COMPANY'S MOTION TO DISMISS CROSS-CLAIM was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail and email. Parties may access this filing through the Court's electronic filing system.

  Elena R. Mosby, Esq.
  Douglas F. Halijan, Esq.
  Burch Porter & Johnson, PLLC
  130 N. Court Avenue
  Memphis, TN 38103
  Telephone: (901) 524-5000
  emosby@bpjlaw.com
  dhalijan@bpjlaw.com

  Amber S. Finch, Esq.
  Margaret Clemans McDonald, Esq.
  Reed Smith, LLP
  515 South Flower Street, Suite 4300
  Los Angeles, CA 90071
  Telephone: (213) 457-8000
  afinch@reedsmith.com
  mcmcdonald@reedsmith.com
  *Attorneys for Plaintiff*

  Andrew B. Schrack, Esq.
  Butler Snow LLP
  6075 Poplar Avenue, Suite 500
  Memphis, TN 38119
  Telephone: (901) 680-7200
  andrew.schrack@butlersnow.com
  *Attorney for Xpedient Management Group, LLC*

This 17th day of March, 2025.

                      *Paige I. Bernick*