THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| AGILENT TECHNOLOGIES, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>XPEDIENT MANAGEMENT GROUP, LLC and ST. PAUL FIRE AND MARINE INSURANCE COMPANY,<br><br>    Defendants. | Case No. 2:25-cv-02101-MSN-cgc |
| XPEDIENT MANAGEMENT GROUP, LLC<br><br>    Cross-Plaintiff,<br><br>    v.<br><br>ST. PAUL FIRE AND MARINE INSURANCE COMPANY<br><br>    Cross-Defendant. | |

**CROSS-PLAINTIFF XPEDIENT MANAGEMENT GROUP, LLC'S OPPOSITION TO ST. PAUL FIRE AND MARINE INSURANCE COMPANY'S MOTION TO DISMISS CROSS-CLAIM**

Cross-Plaintiff Xpedient Management Group, LLC ("Xpedient") submits its response in opposition to Cross-Defendant St. Paul Fire and Marine Insurance Company's ("St. Paul") motion to dismiss the cross-claim, stating as follows:

**INTRODUCTION**

St. Paul breached its Commercial Lease Agreement with Xpedient, causing damage. But St. Paul now seeks to escape all accountability through skewed interpretations of the Lease

provisions. But even those skewed interpretations—which are wrong—do not address all the claims of the cross-claim, and so the motion cannot fully dismiss the cross-claim. The hold harmless provision does not apply here, per its own text and per Tennessee statute. Further, the hold harmless and insurance provisions that St. Paul relies on do not supersede the indemnity provision, which is the basis of one of Xpedient's claim. Even so, St. Paul committed the first material breach of the contract, and so Xpedient is relieved of any obligation under the hold harmless provision. And finally, the waiver of subrogation provision is inapplicable because there is zero evidence in the pleadings regarding the insurance coverage. Consequently, the motion should be denied.

## **FACTUAL BACKGROUND**

Xpedient and St. Paul entered into a Commercial Lease Agreement (the "Lease") regarding a portion of warehouse space at 4601 Cromwell Avenue, Building 20, Memphis, Tennessee 38118. (Cross-cl. ¶ 4).

As part of the Lease, St. Paul was obligated to provide service connections for utilities and warranted that the heating system would be in good working order. (Cross-cl. ¶¶ 5–6). But St. Paul failed to do so, despite demand by Xpedient. (Cross-cl. ¶¶ 7–9). When the temperature dropped below freezing on or about January 17, 2024, a pipe in the fire sprinkler system froze due to the lack of heating, and it burst, causing damage to the inventory that was stored in the warehouse. (Cross-cl. ¶ 10).

Upon being served with the Complaint, Xpedient made a demand on St. Paul for indemnity, but St. Paul has failed to indemnify Xpedient in accordance with the terms of the Lease. (Cross-cl. ¶¶ 18–19).

## **LAW AND ARGUMENT**

Xpediant's crossclaims against St. Paul—in the light most favorable to Xpedient and accepting all allegations as true—are sufficient to "state a claim to relief that is plausible on its face." *Royal Truck & Trailer Sales & Serv., Inc. v. Kraft*, 974 F.3d 756, 758 (6th Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim is plausible on its face if 'the [cross-]plaintiff pleads factual content that allows the court to draw the reasonable inference that the [cross-]defendant is liable for the misconduct alleged.'" *Ragsdale v. Methodist Le Bonheur Healthcare*, No. 2:24-cv-02237-MSN-atc, 2025 WL 903842, *1 (W.D. Tenn. Mar. 25, 2025) (quoting *Iqbal*, 556 U.S. at 678). Because of this high bar and the requirement to accept all factual allegations as true, "[a] motion to dismiss under Rule 12(b)(6) is <u>disfavored</u> and <u>rarely granted</u>." *Nuchols v. Berrong*, 141 F.App'x 451, 453 (6th Cir. 2005) (emphasis added) (quoting *Harris v. Am. Postal Workers Union*, 198 F.3d 245 (6th Cir. 1999)).

St. Paul's motion should be denied for five reasons. ***First,*** as a preliminary matter, the motion does not even challenge two of the three claims, and so the complete dismissal that St. Paul seeks is unavailable to it. ***Second,*** the hold harmless provision does not apply under its own terms and, if it did, it would be void under Tennessee statute. ***Third,*** St. Paul is contractually obligated to indemnify Xpedient, and, to the extent St. Paul attempts to rely on the hold harmless provision or insurance provision, those provisions must be read harmoniously with the indemnity obligation. ***Fourth,*** to the extent the hold harmless provision governs here, Xpedient is relieved of that obligation because St. Paul committed the first material breach of the contract. ***Fifth,*** the waiver of subrogation provision does not apply because there is zero evidence in the pleadings about the applicable insurance coverage.

**I. St. Paul's motion does not challenge two of the three claims.**

Xpedient brought three claims against St. Paul: (1) Breach of Contract; (2) Breach of Indemnity Agreement, and (3) Breach of Covenant of Quiet Enjoyment.

In response, St. Paul argues that it is supposedly not liable for damages to any stored property under the following hold harmless provision in the lease: "[St. Paul] shall not be liable . . . for any injury to person or damage to property . . . caused by leakage of gas, oil, water or steam or by electricity emanating from the Leased Premises." (Counter-cl. Ex. 1 § 7.05).

But this argument <u>only</u> relates to the Breach of Indemnity Agreement claim, wherein Xpedient seeks indemnity for claims by Agilent for damages to the stored property. Xpedient *also* brought claims against St. Paul that are independent of any liability to Agilent—St. Paul breached the lease and breached the covenant of quiet enjoyment. St. Paul's argument has no bearing on the Breach of Contract and Breach of Covenant of Quiet Enjoyment claims, wherein Xpedient seeks damages against St. Paul for St. Paul's failure to provide normal utility service connections and a properly functioning heating system.

*Even if* St. Paul was not liable for any damages to Agilent's stored items, that would not alleviate St. Paul's liability for breaching its contract with Xpedient or breaching the covenant of quiet enjoyment of the property. That liability is unaffected by the hold harmless provision. St. Paul's motion would not dispose of the entire crossclaim.

**II. The hold harmless provision does not apply due to its specific language and because it would be void per Tennessee statute.**

The hold harmless provision does not apply here for two reasons. First, the very language of the provision precludes its application. Second, it is against the public policy of Tennessee and unenforceable per statute.

4

**A. The language of the provision precludes its application here.**

The hold harmless provision is not applicable to claims by <u>Xpedient</u>, only to claims by non-parties to the Lease: "[St. Paul] shall not be liable to [Xpedient]'s employees, agents, invitees, licensees or visitors, or to any other person, for any injury . . . ." (Cross-cl. Ex. 1 § 7.05). The provisions does *not* say that St. Paul is not liable to <u>Xpedient</u>, just Xpedient's employees, agents, invitees, licensees or visitors. (*Id.*)

Comparing this provision with the later indemnity provision illustrates the difference and why Xpedient itself (Lessee) is not included within the hold harmless provision:

| **7.05 Hold Harmless.** Lessor shall not be liable to Lessee's employees, agents, invitees, licensees or visitors or to any other person, for any injury . . . . | **7.08 Indemnification.** . . . Lessor agrees to indemnify and hold <u>Lessee and</u> Lessee's partners, officers, directors and employees harmless from and against . . . . |
|---|---|

Under the presumption of consistent usage, "where the document has used one term in one place, and a materially different term in another, the presumption is that the different term denotes a different idea." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* § 25 "Presumption of Consistent Usage" (2012); *see also United States. v. Cmty. Health Sys., Inc.*, 666 F.App'x 410, 414–15 (6th Cir. 2016). The drafters knew how to apply the provision to Xpedient—7.08 states "Lessee <u>and</u> Lessee's partners, [etc.]"—but the drafters did not do so here. Instead, the hold harmless provision only states "Lessee's employees, [etc.]" and does not name Lessee (Xpedient) itself. (Cross-cl. Ex. 1 § 7.05). Thus, the hold harmless provision does not apply to claims by Xpedient. To find otherwise—that St. Paul has no liability to Xpedient—would negate all of the other obligations of the lease.

### B. Interpreting the provision to hold St. Paul harmless for its own negligence is void under Tennessee statute.

To the extent the provision seeks to hold St. Paul harmless for damages caused by its own negligence, the provision is void and unenforceable under Tennessee statute. Tennessee Code Annotated § 62-6-123 states that any hold harmless provision "in connection with or collateral to a contract or agreement relative to the construction, alteration, repair or maintenance of a building . . . purporting to indemnify or hold harmless the promisee against liability for damages arising out of bodily injury to persons or damage to property caused by or resulting from the sole negligence of the promisee . . . is against public policy and is void and unenforceable." Although that statute is contained within the contractor licensing statutes, the Tennessee Court of Appeals has held that the statutory language does not limit its applications to contractors—it applies to any contract or agreement that falls within the broad categories in the text. *Elliot Crane Serv., Inc. v. H.G. Hill Stores, Inc.*, 840 S.W.2d 376 (Tenn. Ct. App. 1992) (holding an indemnity agreement as void when it related to an agreement for rental of a crane because the crane would ultimately be used in remodeling a building).

Here, the Lease is "relative to the . . . repair or maintenance of a building" under Tenn. Code Ann. § 62-6-123—the Lease has an entire article, Article 5.00, entitled "Repairs and Maintenance." And one of the sections of that article, Section 5.06 Systems Delivery, is directly implicated and cited in the Cross-Claim. (*See* Cross-cl. ¶ 6). Thus, the statute is applicable.[1] Under Tennessee Code Annotated § 62-6-123, to the extent the Lease "purport[s] to indemnify or hold

---

[1] Even if the statute did not apply, Tennessee courts have held that an indemnity obligation for a party's own negligence must express that intent "in the clearest of language," whereas "broad, and seemingly all inclusive language" is insufficient. *Summers Hardware & Supply Co., Inc. v. Steele*, 794 S.W.2d 358, 361 (Tenn. Ct. App. 1990); *see also Pitt v. Tyree Org. Ltd.*, 90 S.W.3d 244 (Tenn. Ct. App. 2002). The present provision does not contain "the clearest of language," and so Xpedient is raising this argument to the extent St. Paul tries to stretch the language further.

harmless" St. Paul from damages "caused by or resulting from [its] sole negligence," then the provision "is against public policy and is void and unenforceable." Tenn. Code Ann. § 62-6-123. Xpedient alleged the damages were caused by St. Paul's negligence, and so this provision would be unenforceable. (*See* Cross-cl. ¶ 17). Therefore, the claims cannot be dismissed on account of this provision.

### III. St. Paul must indemnify Xpedient under the clear terms of the contract, which must be read harmoniously.

St. Paul is obligated under the lease to indemnify Xpedient "against any and all costs, damages, claims, liabilities and expenses (including reasonable attorney fees) suffered by or claimed by a third party" against Xpedient to the extent they were "caused by (i) any negligent act or omission by [St. Paul] or its employees, agents or invitees; (ii) latent defects in the Building, the Premises, or Common Areas; (ii) [sic] any breach or default by [St. Paul] in the performance or observance of its covenants or obligations under this Lease[.]" (Cross-cl. Ex. 1 ¶ 7.08). This is the basis of Xpedient's claim for breach of the indemnity agreement.

The damages, claims, and liabilities claimed by Agilent in the Complaint were caused by the negligent acts and omissions of St. Paul when St. Paul failed to provide the normal utility service connections and failed to provide a properly functioning heating system. Further, those items were part of St. Paul's obligations under the Lease, and St. Paul therefore breached the Lease. Consequently, the claims in the Complaint fall within the scope of the indemnity provisions.

Despite the clear indemnity obligation in paragraph 7.08 of the Lease, St. Paul focuses on the hold harmless provision of 7.05, which states that "[St. Paul] shall not be liable . . . for any injury to person or damage to property on or about the Leased Premises caused by any act or omission of [Xpedient], . . . or caused by the improvements located on the Leased Premises becoming out of repair, the failure or cessation of any service provided by [St. Paul] . . . , or caused

by leakage of gas, oil, water or steam or by electricity emanating from the Leased Premises." According to St. Paul, this provision apparently trumps the indemnity language of 7.08.

The same implication is made for the insurance provision of 7.06(a). St. Paul cherry-picks one sentence from the insurance provision to trump the indemnity language and try to absolve itself of all liability. But that takes the sentence out of context.

These provisions must be interpreted harmoniously: "All provisions of a contract 'should be construed in harmony with each other, if possible, to promote consistency and to avoid repugnancy between the various provisions of a single contract.'" *Perkins v. Metro. Gov't of Nashville*, 380 S.W.3d 73, 85 (Tenn. 2012) (quoting *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999)). And the language must be read in its context: "[T]o properly construe an agreement, we are not allowed to take words in isolation, but must construe the instrument as a whole." *Fisher v. Revell*, 343 S.W.3d 776, 780–81 (Tenn. Ct. App. 2009) (quoting *Pitt. v. Tyree Org. Ltd.*, 90 S.W.3d 244, 253 (Tenn. Ct. App. 2002)). Thus, the provisions must be construed together.

Taking the hold harmless and indemnity provisions together, the hold harmless provision removes liability for damages caused by things other than St. Paul (e.g., improvements becoming out of repair, failure of services, leakage of water, etc.), while the indemnity provision relates to St. Paul's acts or omissions and latent defects in the building. Thus, St. Paul may not necessarily be liable for damages caused by the mere <u>leakage</u> of water at the premises, but St. Paul *is* liable for its negligent acts or omissions and its breaches of its obligations. (*See* Cross-cl. Ex. 1 ¶ 7.08). For example, St. Paul may not necessarily be liable if the roof leaked, but St. Paul *is* liable if it negligently fails to provide utilities and heat in breach of the Lease, which leads to a burst water pipe. Thus, the provision can and must be read harmoniously.

The same is true of the insurance provision. Even though St. Paul focuses on the final sentence in 7.06(a) ("All property kept, maintained, or stored on the Premises shall be so kept, maintained, or stored at the sole risk of Lessee."), the rest of the paragraph is all dealing with the type and manner of <u>insurance</u> that must be kept. This sentence is only related to the type of insurance coverage. This one cherry-picked sentence does not negate the multiple paragraphs of the indemnity provisions. *See Fisher*, 343 S.W.3d at 780–81 ("[W]e are not allowed to take words in isolation, but must construe the instrument as a whole.").

The hold harmless provision does not govern here; the indemnity provision does. And one sentence from the insurance paragraph does not negate it. St. Paul owes indemnity to Xpedient, and so the claim should not be dismissed.

**IV. Even if the hold harmless provision governed, Xpedient is relieved of the obligation due to St. Paul's first material breach of the contract.**

St. Paul materially breached the lease agreement first, which relieves Xpedient of the obligation of the hold harmless provisions.

Under Tennessee law, if there is a material breach of a contract, that breach can "relieve the non-breaching party of its contractual obligations." *Tenn. Homes v. Welch*, 664 S.W.3d 1, 9 (Tenn. Ct. App. 2022). The focus is whether the breach is material. *Cooper v. Patel*, 578 S.W.3d 40, 46 (Tenn. Ct. App. 2018). To determine materiality, Tennessee courts apply the test in section 241 of the Restatement (Second) of Contracts, but "these factors are only marginally helpful." *Tenn. Homes*, 664 S.W.3d at 9 (quoting *M & M Elec. Contractor, Inc. v. Cumberland Elec. Membership Corp.*, 529 S.W.3d 413, 423 (Tenn. Ct. App. 2016)).

The factors from the Restatement's test, as applied to this situation of St. Paul's breach, are as follows:

> (a) the extent to which [Xpedient] will be deprived of the benefit which [it] reasonably expected;

9

>    (b) the extent to which [Xpedient] can be adequately compensated for the part of that benefit of which [it] will be deprived;
>
>    (c) the extent to which the [St. Paul] will suffer forfeiture;
>
>    (d) the likelihood that the [St. Paul] will cure [its] failure, taking account of all the circumstances including any reasonable assurances;
>
>    (e) the extent to which the behavior of [St. Paul] comports with standards of good faith and fair dealing.

*Tenn. Homes*, 664 S.W.3d at 9 (quoting Restatement (Second) of Contracts § 241 (1981)).

Further, "[w]hether a party has fulfilled its obligations under a contract or is in breach of the contract is a question of fact." *Tenn. Homes*, 664 S.W.3d at 10 (quoting *A & P Excavating & Materials, LLC v. Geiger*, 622 S.W.3d 237, 248 (Tenn. Ct. App. 2020).

Here, St. Paul agreed to "provide the normal utility service connections with separate metering for Lessee premises to the building. (Cross-Cl. Ex. 1 ¶ 4.01). St. Paul also warranted that the heating system "shall be in good working order as of the Commencement Date." (Cross-Cl. Ex. 1 ¶ 5.06). St. Paul failed, however, to provide the normal utility service connections and failed to provide a properly functioning heating system.

St. Paul's breaches were material breaches. Xpedient reasonably expected a functioning heating system, as St. Paul warranted in the lease, and St. Paul's failures did not comport with the standards of good faith and fair dealing. *See Tenn. Homes*, 664 S.W.3d at 9. Due to St. Paul's first material breach of the contract, Xpedient is relieved of any obligation under the hold harmless provisions.

Since the breach "is a question of fact," *Tenn. Homes*, 664 S.W.3d at 10, it must be resolved in Xpedient's favor on this motion to dismiss. *Royal Truck & Trailer Sales & Serv., Inc.*, 974 F.3d at 758. Thus, even if the hold harmless provision governed, Xpedient is relieved of that obligation due to St. Paul's first material breach of the Lease.

10

## V. The waiver of subrogation provision does not apply because there is no proof of insurance.

Finally, St. Paul relies on the waiver of subrogation clause, arguing: "To the extent that Lessee seeks to recover loss or damage to its own property and/or Agilent's property, and that loss or damage is covered by Lessee's insurance (or would have been covered if the required insurance was obtained), then Section 7.04 bars its claim against St. Paul." (Mot. to Dismiss Cross-Cl. at 10).

It is unnecessary to go into the interpretation of the provision at this stage because there is no evidence in the pleadings regarding what insurance was in place or would be covering any damage. "[A]s a general rule, matters outside the pleadings may not be considered in ruling on a 12(b)(6) motion to dismiss unless the motion is converted to one for summary judgment under Fed. R. Civ. P. 56." *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999) (quoting *Weiner v. Klais & Co.*, 108 F.3d 86, 88 (6th Cir. 1997)). This motion cannot be converted because St. Paul did not even present any evidence—just a hypothetical of what could be discovered.

There is no proof, and all reasonable inferences must be drawn in Xpedient's favor. *See Royal Truck & Trailer Sales & Serv., Inc.*, 974 F.3d at 758. Consequently, this argument should be summarily rejected, and the motion denied.

## CONCLUSION

St. Paul's motion to dismiss fails for multiple reasons. St. Paul cannot merely ignore the obligations of the indemnity provision—much like it ignored its other obligations to provide a heating system—to escape liability here. The hold harmless provision must be construed harmoniously with the indemnity provision, and St. Paul must provide indemnity for its acts and omissions. Further, even if the hold harmless provision did govern, St. Paul's material breach removed that obligation from Xpedient. The motion should be denied.

RESPECTFULLY SUBMITTED, this the 14th day of April 2025.

11

*/s/ William P. Thomas*
William P. Thomas (MS 102209)
Andrew B. Schrack (TN 037624)
**Butler Snow LLP**
6075 Poplar Ave., Ste. 500
Memphis, TN 38119
T: 901-680-7200
F: 901-680-7201
will.thomas@butlersnow.com
andrew.schrack@butlersnow.com
*Attorneys for Defendant Xpedient Management Group, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been served on all counsel of record via the Court's ECF system on April 14, 2025.

*/s/ William P. Thomas*

93269727.v1