IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| AGILENT TECHNOLOGIES, INC. ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> XPEDIENT MANAGEMENT GROUP, LLC ) <br> and ST. PAUL FIRE AND MARINE ) <br> INSURANCE COMPANY, ) <br> ) <br> Defendants. ) <br> ) <br> ──────────────────────────── <br> ) <br> XPEDIENT MANAGEMENT GROUP, LLC ) <br> ) <br> Cross-Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ST. PAUL FIRE AND MARINE ) <br> INSURANCE COMPANY, ) <br> ) <br> Cross-Defendant. ) | No. 2:25-cv-02101 <br> Judge Mark S. Norris <br> Magistrate Judge Charmiane Claxton |

**REPLY IN SUPPORT OF ST. PAUL FIRE AND MARINE INSURANCE COMPANY'S MOTION TO DISMISS CROSS CLAIM**

Pursuant to Federal Civil Procedure Rule 12(b)(6) and Local 12.1(c), Defendant St. Paul Fire and Marine Insurance Company ("St. Paul" or "Defendant") files the following reply in support of its motion to dismiss the cross claim filed by Xpedient Management Group, LLC ("Lessee").

**1. ST. PAUL INDEED MOVES TO DISMISS ALL OF LESSEE'S CLAIMS IN THE CROSS CLAIM**

While Lessee argues that St. Paul does not dispute the breach of contract and breach of quiet of enjoyment claims, this is incorrect as St. Paul has pointed to multiple provisions in the

1

Lease that address the breach claims Lessee is making. St. Paul maintains that the damages described in the cross claim refer to Lessee's damages and losses related to the events contained in the Complaint by Agilent Technologies, Inc ("Agilent"). "The essential elements of any breach of contract claim include (1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) *damages caused by the breach of the contract*." See ARC Lifemed, Inc. v. AMC-Tennessee, Inc., 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005) (emphasis added). St. Paul expressly maintains that the damages Lessee seeks are barred by Sections 7.04, 7.05, 7.06 and 7.08 of the Lease. The damages Lessee seeks are related to losses that are covered (or required to be covered) by insurance or losses that are not covered by insurance where Lessee agreed to indemnify and hold St. Paul harmless. Accordingly, St. Paul moves to dismiss Lessee's breach of indemnity, breach of contract, and breach of quiet enjoyment claims in the cross claim as the damages they seek are addressed in the Lease.

2. **LESSEE DOES NOT DISPUTE THE LANGUAGE OF SECTION 7.04**

Lessee argues that the Court should not evaluate Section 7.04 as there is no proof of insurance presented in the pleadings. St. Paul disagrees with this assessment and points out that the plain language of Section 7.04 of the Lease represents a mutual release between Lessee and St. Paul with respect to the claims covered or required to be covered by insurance.

> **7.04 Waiver of Recovery and Subrogation.** Notwithstanding anything set forth in this Lease to the contrary (including indemnification provisions in this Lease), and to the extent permitted by applicable law, Lessor and Lessee do **hereby waive any and all rights of recovery, claims, actions or causes of action against the other**, their respective principals, beneficiaries, partners, officers, directors, agents (including Lessor's property manager(s) or agents with respect to Lessee's waiver), and employees **for any loss or damage that may occur to their respective property, the property of others in their respective care, custody, and control the Building, Premises, Leased Premises or any improvements thereto, or any contents, therein, by reason of fire, the elements or any other cause, regardless of cause or origin, including negligence of Lessor or Lessee**, or their respective principals, beneficiaries, partners, officers, directors, agents (including Lessor's

property manager or agent with respect to Lessee's waiver) and employees, which loss or damage is covered by insurance (or would have been covered by insurance, had the insurance required by this Lease been procured or maintained).

In addition, both **parties shall not be liable for, and both parties hereby waive claims against the other party's Indemnities for losses resulting from, an interruption of the business of the other party, and consequential damages, resulting from any accident or occurrence in or about the Leased Premises from any cause whatsoever**.

Because the foregoing waivers will preclude the assignment of any such claim by subrogation (or otherwise) to an insurance company (or any other person), Lessor and Lessee each agree to give each insurance company which has issued, or in the future may issue, any insurance policy with respect to any of the items covered by this waiver, written notice of the terms of this waiver, and to have each such insurance policy properly endorsed, if necessary, to prevent the invalidation of any of the coverage provided by such insurance policy by reason of such waiver. For the purpose of the foregoing waiver, the amount of any deductible, self-insured retention, or coinsurance applicable to any loss or damage shall be deemed covered by and recoverable by the insured under the insurance policy to which such deductible, self-insured retention, or coinsurance relates, and the foregoing waiver shall also apply to such amounts.

Section 7.04 to Ex. 1 to Answer and Cross Claim (Doc No. 22) (emphasis added) ("the Lease").

### A. Proof of Insurance

Lessee does not grapple with the language of Section 7.04. Instead, Lessee claims that "[i]t is unnecessary to go into the interpretation of this provision at this stage because there is <u>no evidence</u> in the pleadings regarding what insurance was in place or would be covering any damage. (Lessee's Resp., Doc. 42, at 11.) Lessee is wrong. Section 7.04 applies to losses that *are* or *are required by the Lease* to be covered by insurance. The Lease, which is a part of the pleadings because it was attached to the Answer and Cross Claim, is the only "evidence" required on what losses were required to be covered by insurance. Section 7.06 of the Lease required that Lessee maintain "standard form property insurance on an 'all risk' basis with extended coverage and special extended coverage, including insuring against the perils of fire, vandalism, malicious mischief *and sprinkler leakage*. (Section 7.06(a) to Lease.) (emphasis added). Although this

3

language is unambiguous, Section 7.06 also provide that "[a]ll property kept, maintained, or stored on the Premises shall be so kept, maintained, or stored at the sole risk of Lessee." (Id.)

### B. Section 7.04 Bars Lessee's Insured Damages and Losses

In plain terms, the Lessee and St. Paul agreed not to blame or sue one another for damage to property or business interruption that was covered or required to be covered by insurance. Regardless of Lessee's legal theory of recovery, all of Lessee's alleged damages described in the cross claim directly relate to the property damage claimed by Agilent.

The cross claim requests St. Paul defend, indemnify and hold Lessee harmless against the Complaint filed by Agilent, and an award of fees and costs incurred by Lessee as a result of St. Pauls' breach of the Lease. (Answer and Cross Claim, at 21-22). The cross claim only describes events related to the water event and utility services. (Answer and Cross Claim ¶¶4-23). The cross claim does not describe any other damages outside of the events identified by Plaintiff. To the extent Lessee's damages relate to losses or property damage as well as interruption of the business and consequential damages in their claims for breach of indemnity, breach of contract, and breach of quiet enjoyment as described in Section 7.04, these claims were covered or required to be covered by insurance and not brought in a lawsuit.

### 3. HOLD HARMLESS INTERPRETATION

Although Lessee attempts to weave together an interpretation of the language of the Lessee to circumvent the plain reading of the contract with a comparison of Section 7.05 and Section 7.08, the unambiguous and clear language of the Lease do not support Lessee's assessment. Specifically, Section 7.05 maintains that if property is damaged or if the premises has problems, the landlord is not responsible. Specifically,

> **7.05 Hold Harmless.** Lessor shall not be liable to Lessee's employees, agents, invitees, licensees or visitors, or to any other person, for any injury to person or damage to property on or about the Leased Premises caused by any act or omission

>of Lessee, its agents, servants or employees, or of any other person entering upon the Leased Premises under express or implied invitation by Lessee, or caused by the improvements located on the Leased Premises becoming out of repair, the failure or cessation of any service provided by Lessor (including security service and devices), or caused by **leakage** of gas, oil, **water** or steam or by electricity emanating from the Leased Premises. To the extent not covered by an insurance policy required herein, **Lessee agrees to indemnify and hold harmless Lessor of and from any loss, attorney's fees, expenses or claims arising out of any such damage or injury**.

Lease, Section 7.05 (emphasis added).

Under the plain language of this clause, St. Paul is not responsible for the damage described by Plaintiff in the Complaint and the related damages described by Lessee in the cross claim. Lessee agreed that to the extent the damage described in the clause was not covered by insurance, Lessee was to indemnify and hold St. Paul harmless. The slight differences in the language in Section 7.05 and 7.08 do not change the plain meaning of this clause. It is well-settled law in Tennessee that, subject to certain exceptions (which are not pled here), "parties may contract that one shall not be liable for his negligence to another." Olson v. Molzen, 558 S.W.2d 429, 430 (Tenn. 1977) (citing Moss v. Fortune, 207 Tenn. 426, 340 S.W.2d 902 (Tenn. 1960)). Here, the Lessee agreed to the Hold Harmless provision found in Section 7.05.

Further, Lessee argues that this clause is unenforceable and relies upon Tennessee Code Annotated § 62-6-123, a statute found in the contractor licensing statute. St. Paul is not a contractor or builder. Lessee is not a contractor or builder. Rather, the contract involved in this dispute is a common commercial lease for a warehouse. There is no case law in Tennessee that applies this statute to a Lease dispute.

Lessee, however, refers to the Tennessee Court of Appeal's analysis in Elliott Crane Serv., Inc. v. H. G. Hill Stores, Inc., 840 S.W.2d 376 (Tenn. Ct. App. 1992), as an example of Tennessee Courts applying Tennessee Code Annotated § 62-6-123 in a context outside of contractor licensing. In Elliott Crane, Elliot Crane Services rented a crane and operator to the defendant H.G. Hill Stores

5

for a construction project. Id. Elliott Crane Services' indemnity clause contained in the standard rental agreement stipulated that the lessee would indemnify and hold harmless Elliott Crane Service for damages arising from the lessee's use of the crane. The hold harmless clause, however, did not explicitly state that it covered damages resulting from Elliott Crane Service's own negligence. Id. at 380. In the absence of clear and unequivocal language, the Tennessee Court of Appeals found that the provision did not meet the requirements to indemnify against one's own negligence. Id. (citing Ga. Kraft Co. v. Terminal Transp. Co., 343 F. Supp. 1240 (E.D. Tenn. 1972) ("clear and unambiguous language must exist in a contract before an obligation to indemnify a party against the consequence of its own negligence may be found"); Brogdon v. S. R. Co., 384 F.2d 220 (6th Cir. 1967) ("indemnity agreements should not be extended to indemnify the indemnitee's own negligence unless the language clearly so provides"); Eades v. Union R. Co., 396 F.2d 798 (6th Cir. 1968) ("clear and unambiguous language is required if a contractual provision is to be regarded as indemnifying against the indemnitee's own negligence"); Crum v. Colman-Cocker Textile Mach. Co., 467 F. Supp. 6 (E.D. Tenn. 1978) ("to indemnify the indemnitee against losses resulting from his own negligent acts unless such intention is expressed in clear and unequivocal terms").

     Yes, unlike Elliott Crane, the hold harmless provision in the matter at bar is indeed clear and unambiguous.  Section 7.05 states that St. Paul was not liable for any damage to property relating the leakage of water on the leased premises.  To the extent not covered by a required insurance policy, Lessee was to indemnify and hold St. Paul harmless from any loss, attorneys fees, expenses or claims arising out of the damage. (Lease, Section 7.05).  Here, the entirety of Lessee's cross claim involves property damage caused by water and the subsequent litigation.

Under the clear and unambiguous language of the Lease, Lessee is to hold St. Paul harmless and therefore barring Lessee's cross claim.

    **4. INDEMNIFICATION UNDER THE CLEAR TERMS OF THE CONTRACT**

Lessee argues that the clear terms of the indemnification clause contained in 7.08 favors their interpretation—that only St. Paul is obligated to indemnify Lessee for the damages sought by Agilent. This is incorrect.

St. Paul agrees that the provisions in the contract must be interpreted harmoniously. Here, the clear terms of the contract contain multiple Sections addressing potential losses and damages and how they are to be handled under the Lease. The Lease contains unambiguous language that "All property kept, maintained, or stored on the Premises shall be so kept, maintained, or stored at the sole risk of Lessee." (Lease, Section 7.06.). Also, the parties mutually waived claims for damage to property as well as claims against the other party's Indemnities for losses resulting from, an interruption of the business of the other party, and consequential damages, resulting from any accident or occurrence in or about the Leased Premises from any cause whatsoever. (Lease, Section 7.04). Further, to the extent not covered by insurance, the Lessee is to hold St. Paul harmless from any loss, attorneys fees, expenses or claims arising out of the damage. (Lease, Section 7.05). Finally, Lessee agreed to indemnify and hold St. Paul harmless for damages "caused by: (i) Lessee's maintenance, use of occupancy of the Leased Premises or the business conducted by Lessee therein; (ii) any negligent act or omission by Lessee or its employees, agents or invitees; or (iii) any breach or default by Lessee in the performance or observance of its covenants or obligations under this Lease, including but not limited to costs, damages, claims, liabilities and expenses for injuries to Lessor's property manager, partners, officers, directors and employees." (Lease, Section 7.08). The same Complaint relied upon by Lessee describes numerous allegations pertaining to their negligence and omissions with regard to Agilent's property. Under their logic,

7

Lessee is also required to indemnify St. Paul. Nevertheless, the Lease directs Lessee that the damages they are seeking are not be filed in Court.

### 5. LESSEE FAILED TO PLEAD FIRST MATERIAL BREACH AS AN AFFIRMATIVE DEFENSE

"In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense." Fed. Civ. P. Rule 8(c)(1). "An affirmative defense is one that wholly or partly avoids the cause of action asserted by the preceding pleading by new allegations that admit part or all of the cause of action, but avoids liability because of a legally sufficient excuse, justification, or other matter negating the alleged breach or wrong." Thompson, Breeding, Dunn, Creswell & Sparks v. Bowlin, 765 S.W.2d 743, 744 (Tenn. Ct. App. 1987). In this matter, Lessee is alleging a first material breach as a defense to waive its obligations under the Lease. Lessee, however, failed to plead "first material breach." (Answer and Cross Claim, *passim*.)

"As a general rule, a party waives an affirmative defense if it does not include the defense in an answer or responsive pleading." Napolitano v. Bd. of Pro. Resp., 535 S.W.3d 481, 497 n.9 (Tenn. 2017). As Lessee failed to plead first material breach in its Answer and Cross Claim, they are barred from making this arguing first material breach in response to the current motion to dismiss. See Kazemi v. Arab, No. M2022-00707-COA-R3-CV, 2024 Tenn. App. LEXIS 81 (Ct. App. Feb. 29, 2024) (denying defendant's defense regarding first material breach when he did not raise first material breach as an affirmative defense in its responsive pleadings).

### CONCLUSION

For the foregoing reasons and the reasons stated in the motion to dismiss, St. Paul respectfully requests that this Court dismiss the claims against it by Cross-Plaintiff Xpedient Management Group, LLC.

Respectfully submitted,


*/s/ Paige I. Bernick*
Paige I. Bernick, Esq. (BPR # 30071)
Peter C. Robison, Esq. (BPR # 27498)
Ryan N. Clark, Esq. (BPR # 29105)
LEWIS THOMASON, P.C.
424 Church Street, Suite 2500
Nashville, TN 37219
pbernick@lewisthomason.com
Telephone: (615) 259-1366

*Attorneys for Defendant St. Paul Fire and Marine Insurance Company*

## CERTIFICATE OF SERVICE

       I hereby certify that a copy of the foregoing REPLY IN SUPPORT OF DEFENDANT ST. PAUL FIRE AND MARINE INSURANCE COMPANY'S MOTION TO DISMISS CROSS-CLAIM was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  All other parties will be served by regular U.S. mail and email. Parties may access this filing through the Court's electronic filing system.

       Elena R. Mosby, Esq.
       Douglas F. Halijan, Esq.
       Burch Porter & Johnson, PLLC
       130 N. Court Avenue
       Memphis, TN 38103
       Telephone: (901) 524-5000
       emosby@bpjlaw.com
       dhalijan@bpjlaw.com

       Amber S. Finch, Esq.
       Margaret Clemans McDonald, Esq.
       Reed Smith, LLP
       515 South Flower Street, Suite 4300
       Los Angeles, CA  90071
       Telephone: (213) 457-8000
       afinch@reedsmith.com
       mcmcdonald@reedsmith.com
       *Attorneys for Plaintiff*

       Andrew B. Schrack, Esq.
       Butler Snow LLP
       6075 Poplar Avenue, Suite 500
       Memphis, TN 38119
       Telephone: (901) 680-7200
       andrew.schrack@butlersnow.com
       *Attorney for Xpedient Management Group, LLC*

This 28th day of April, 2025.

                                                                   *Paige I. Bernick*