## THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

AGILENT TECHNOLOGIES, INC.,

     **Plaintiff,**

     v.                                **Case No. 2:25-cv-02101-MSN-cgc**

XPEDIENT MANAGEMENT GROUP,
LLC and ST. PAUL FIRE AND MARINE
INSURANCE COMPANY,

     **Defendants.**

---

XPEDIENT MANAGEMENT GROUP,
LLC

     **Cross-Plaintiff,**

     v.

ST. PAUL FIRE AND MARINE
INSURANCE COMPANY

     **Cross-Defendant.**

---

## ANSWER AND DEFENSES OF DEFENDANT XPEDIENT MANAGEMENT GROUP, LLC TO PLAINTIFF'S FIRST AMENDED COMPLAINT

Defendant Xpedient Management Group, LLC ("Defendant" or "Xpedient") responds to Plaintiff's First Amended Complaint as follows:

## <u>ANSWER</u>

Xpedient responds to the allegations of Plaintiff's Complaint paragraph by paragraph, as follows:

## NATURE OF THE ACTION

1.      Xpedient admits that Plaintiff has filed a Complaint and that the document speaks for itself.

2.      Xpedient admits only that the relationship with Plaintiff is set forth in the Master Operating Services Agreement and the Site Operating Agreement attached to Plaintiff's Complaint.  Xpedient denies any remaining allegation in Paragraph 2.

3.      Xpedient admits the area of the warehouse in question was leased from St. Paul Fire and Marine Insurance Company ("St. Paul") and that Xpedient entered the Site Operating Agreement with Plaintiff, which is attached as Exhibit B to Plaintiff's Complaint.  Xpedient denies any remaining allegations in Paragraph 3.

4.      Xpedient admits that unusually cold temperatures were experienced in the Memphis area in January of 2024.  Xpedient denies all remaining allegations in Paragraph 4 as stated.

5.      Xpedient admits the subject warehouse had a failure of sprinkler pipes on or about January 17, 2024.  Xpedient denies all remaining allegations in Paragraph 5 as stated.

6.      Xpedient admits the Site Operating Agreement with Plaintiff has not yet expired and that the agreement with Plaintiff has not been breached by Xpedient.  Xpedient further denies any liability in tort or that a bailment existed.  Xpedient denies all remaining allegations in Paragraph 6 as stated.

7.      Xpedient denies any negligence or wrongdoing as alleged in Paragraph 7.  Xpedient admits the Site Operating Agreement with Plaintiff has not yet expired.  Xpedient denies any remaining allegations in Paragraph 7.

## PARTIES

8.      Admitted.

9.      Admitted.

10.     Admitted.

## JURISDICTION AND VENUE

11.     Xpedient is not challenging subject matter jurisdiction at this time.

12.     Admitted.

13.     Admitted.

## BACKGROUND

### A.  AGILENT SEEKS A WAREHOUSER FOR SURPLUS PIPETTE TIPS

14.     Xpedient lacks sufficient knowledge to admit or deny the veracity of the allegations set forth in Paragraph 14 and therefore denies the same.

15.     Xpedient lacks sufficient knowledge to admit or deny the veracity of the allegations set forth in Paragraph 15 and therefore denies the same.

16.     Xpedient lacks sufficient knowledge to admit or deny the veracity of the allegations set forth in Paragraph 16 and therefore denies the same.

17.     Xpedient lacks sufficient knowledge to admit or deny the veracity of the allegations set forth in Paragraph 17 and therefore denies the same.

18.     Xpedient lacks sufficient knowledge to admit or deny the veracity of the allegations set forth in Paragraph 18 and therefore denies the same.

### B.   AGILENT'S SELECTS XPEDIENT AND THE CROMWELL WAREHOUSE

19.      Xpedient admits only that the relationship with Plaintiff is set forth in the Master Operating Services Agreement and the Site Operating Agreement attached to Plaintiff's Complaint.

20.     Xpedient admits it has expertise in logistics and warehousing and that it seeks to deliver beyond the expectations of its customers.  Xpedient denies all remaining allegations in Paragraph 20.

21.     Xpedient admits the statement quoted in Paragraph 21 appear on its website.

22.     Xpedient admits it operates the warehouse space identified in Paragraph 22. Xpedient denies all remaining allegations in Paragraph 22 as stated.

23.     Admitted.

24.     Xpedient admits St. Paul maintained a certain level of actual control over the Cromwell Warehouse consistent with the provisions of the lease.  Xpedient denies all remaining allegations in Paragraph 24.

25.     The allegations in Paragraph 25 are not directed at Xpedient.  To the extent a response is required Xpedient has insufficient information to admit or deny these allegations.

### C.  AGILENT AND XPEDIENT ENTER INTO WAREHOUSING AGREEMENTS

26.      Admitted.

27.     The agreements referenced in Paragraph 26 speak for themselves.  Xpedient admits only that the agreements were entered, and the terms are set forth therein.

28.     The agreement referenced in Paragraph 27 speaks for itself.  Xpedient admits only that the agreement was entered, and the terms are set forth therein.

29.     The agreement referenced in Paragraph 28 speaks for itself.  Xpedient admits only that the agreement was entered, and the terms are set forth therein.

30.     The agreements referenced in Paragraph 29 speak for themselves.  Xpedient admits only that the agreements were entered, and the terms are set forth therein.

31.     Admitted based on information and belief.

**D.  ST. PAUL AND XPEDIENT ENTER INTO THE LEASE AGREEMENT**

32.     The agreements referenced in Paragraph 32 speak for themselves.  Xpedient admits only that the agreements were entered, and the terms are set forth therein.

33.     Xpedient admits St. Paul retained a certain level of control of the Cromwell Warehouse consistent with the provisions of the Agreement.  Xpedient denies all remaining allegations in Paragraph 33.

34.     Xpedient admits the agreements referenced in Paragraph 34 speak for themselves. Xpedient admits only that the agreements were entered, and the terms are set forth therein.

35.     Xpedient admits the agreements referenced in Paragraph 35 speak for themselves. Xpedient admits only that the agreements were entered, and the terms are set forth therein.

36.     Xpedient admits the agreements referenced in Paragraph 36 speak for themselves. Xpedient admits only that the agreements were entered, and the terms are set forth therein Xpedient.

37.     Xpedient admits the agreements referenced in Paragraph 37 speak for themselves. Xpedient admits only that the agreements were entered, and the terms are set forth therein.

**E.  DEFENDANTS FAIL TO MAINTAIN THE CROMWELL WAREHOUSE**

38.     Xpedient is without sufficient knowledge or information to admit or deny the allegations set forth in Paragraph 38.

39.     Xpedient admits the HVAC system at the subject warehouse operated on natural gas.

40.     Xpedient admits the warehouse was equipped with a fire suppression system. Xpedient denies all remaining allegations in Paragraph 40 as stated.

41.     Xpedient admits that on May 23, 2023, an email regarding the utility accounts was sent from a representative of Xpedient to a representative of St. Paul and that the content of that email speaks for itself.

42.      Xpedient admits that on May 23, 2023, a representative of St. Paul responded to the email referenced in Paragraph 42 and that the content of that email speaks for itself.

43.     Denied as stated.

44.     Xpedient admits that various emails were exchanged regarding the utilities and that each email speaks for itself.  Xpedient denies any remaining allegations set forth in Paragraph 44 as stated.

45.     Denied.

46.     Xpedient lacks sufficient information to admit or deny the veracity of the allegations in Paragraph 46.

47.     Denied as stated.

**F.  A DEEP FREEZE HITS MEMPHIS**

48.     Xpedient lacks sufficient information to admit or deny the veracity of the allegations in Paragraph 48.

49.     Xpedient admits based upon information and belief that Memphis Light Gas and Water issued a press release and that the language of the release speaks for itself.

50.     Xpedient admits based upon information and belief that Memphis Light Gas and Water issued a press release and that the language of the release speaks for itself.  Xpedient denies obtaining a copy of the release.

51.     Xpedient admits based upon information and belief that Memphis Light Gas and Water issued a press release and that the language of the release speaks for itself.  Xpedient denies obtaining a copy of the warning.

52.     Xpedient admits based upon information and belief that Memphis Light Gas and Water issued a press release and that the language of the release speaks for itself.

53.     Xpedient admits based upon information and belief that Memphis Light Gas and Water issued a press release and that the language of the release speaks for itself.  Xpedient denies obtaining a copy of the notice.

54.     Xpedient lacks sufficient information to admit or deny the veracity of the allegations in Paragraph 54.

55.     Xpedient lacks sufficient information to admit or deny the veracity of the allegations in Paragraph 55.

56.     Xpedient lacks sufficient information to admit or deny the veracity of the allegations in Paragraph 56.

57.     Xpedient admits that the temperature began to drop on January 14, 2024. Expedient denies any remaining allegations set forth in Paragraph 57.

58.     Xpedient lacks sufficient information to admit or deny the veracity of the allegations in Paragraph 58.

59.     Based on information and belief Xpedient admits the allegations in Paragraph 59.

**G.  THE DEEP FREEZE DAMAGES THE UNHEATED CROMWELL WAREHOUSE, DESTROYING THE MAJORITY OF THE TIPS INVENTORY**

60.     Xpedient lacks sufficient information to admit or deny the actual temperatures in the Cromwell Warehouse.  Based on information and belief Xpedient admits the remaining allegations in Paragraph 60.

61.     Xpedient admits the Memphis Fire Department responded to the warehouse and issued an incident report and the language of the report speaks for itself.

62.    Based on information and belief Xpedient admits that on or about January 17, 2024, a representative of Xpedient contacted St. Paul's property manager and informed them of the water intrusion event.  Xpedient denies all remaining allegations in Paragraph 62.

63.    Based on information and belief Xpedient admits the allegations in Paragraph 63.

64.    Xpedient admits that representatives of Plaintiff visited the warehouse and contended that some of the boxes stored there were damaged.

65.    Xpedient lacks sufficient information to admit or deny the veracity of the allegations in Paragraph 65.

66.    Xpedient lacks sufficient information to admit or deny the veracity of the allegations in Paragraph 66.

67.    Denied.

68.    Denied.  St. Paul's lease with Xpedient states that St. Paul "shall provide the normal utility service connections with separate metering for [Xpedient] premises to the building" and that St. Paul "warrants to [Xpedient] that the fire system, plumbing, electrical and heating, ventilation and air conditioning systems . . . shall be in good working order as of the Commencement Date."  See Standard Commercial Lease Agreement Cromwell Warehouse Exh. "1" (filed under seal) ¶¶ 4.01, 5.06.

69.    Denied.

## H.  AGILENT SUFFERS OVER $9 MILLION IN DAMAGES FROM THE WATER INTRUSION EVENT

70.    Xpedient admits that on or about January 18, 2024, Xpedient notified Plaintiff of the water intrusion event.

71.    Denied as stated.

72.     Xpedient lacks sufficient information to admit or deny the veracity of the allegations in Paragraph 72.

73.     Denied.

74.     Xpedient lacks sufficient information to admit or deny the veracity of the allegations in Paragraph 74.

75.     Xpedient lacks sufficient information to admit or deny the veracity of the allegations in Paragraph 75.

I.   **IN THE AFTERMATH OF THE WATER INTRUSION EVENT, MONTHS LAPSE BEFORE BASIC UTILITIES ARE RESTORED TO THE CROMWELL WAREHOUSE**

76.     Xpedient denies that it attempted to "hide the lack of gas" as alleged in Paragraph 76.  Xpedient admits that the gas utilities were ultimately connected, and the HVAC system was placed into service following the subject incident.  Certain allegations within the timeline provided in Paragraph 76 are summarized from email correspondence.  Xpedient admits that emails were sent and received on the dates set forth in Paragraph 76 and that the language of those emails speaks for itself.

77.     Xpedient admits that St. Paul was responsible for and ultimately did repair and replace the damaged fire sprinkler system in the subject warehouse.  Xpedient denies that it was responsible for or that it did replace or repair the damage sprinkler system.

78.     Denied.

J.   **AGILENT SEEKS INFORMATION ABOUT THE WATER INTRUSION EVENT WHILE DEFENDANTS STONEWALL AND DENY WRONGDOING**

79.     Based on information and belief Xpedient denies the allegations set forth in Paragraph 79.

80.     Denied as stated.

81.    Denied.

82.    Xpedient admits that email correspondence was sent and received in March of 2024 regarding the subject incident and the language of that correspondence speaks for itself.  Xpedient denies all remaining allegations set forth in Paragraph 82.

83.    Denied as stated.

84.    Xpedient admits that correspondence from Xpedient's counsel was sent to Agilent in November of 2024 and the language of that correspondence speaks for itself.  Xpedient denies all remaining allegations set forth in Paragraph 84 as stated.

85.    Xpedient admits that on or around June 7, 2024, Agilent sent correspondence to Xpedient and Xpedient admits the correspondence speaks for itself.  Xpedient denies all remaining allegations set forth in Paragraph 85.

86.    The allegations in Paragraph 86 are not directed at Xpedient; therefore, a response by Xpedient is not required.  To the extent a response is required Xpedient is without sufficient information to admit or deny those allegations.

87.    Xpedient admits that it provided a written response to Plaintiff's June 7, 2024, correspondence.   Xpedient admits only that the language of the response speaks for itself. Xpedient denies all remaining allegations in Paragraph 87.

88.    Xpedient admits that it corresponded with Plaintiff on or around September 12, 2024, and in the months following.  Xpedient admits only that the language of the correspondence speaks for itself.  Xpedient denies all remaining allegations in Paragraph 88.

89.    The allegations in Paragraph 82 are not directed at Xpedient; therefore, a response by Xpedient is not required.  To the extent a response is required Xpedient is without sufficient information to admit or deny those allegations.

90.     Xpedient denies the allegations set forth in Paragraph 90.

91.     The allegations in Paragraph 91 are not directed at Xpedient; therefore, a response by Xpedient is not required.  To the extent a response is required Xpedient is without sufficient information to admit or deny those allegations.

### K. DEFENDANTS BENEFIT FROM THEIR BREACH AND WRONGDOING WHILE AGILENT CONTINUES TO PERFORM ITS OBLIGATIONS UNDER THE AGREEMENTS

92.     Xpedient denies the allegations set forth in Paragraph 92 as stated.  St. Paul agreed in the lease with Xpedient to "provide the normal utility service connections with separate metering for . . . the building" and St. Paul's lease also "warrants to [Xpedient] that the fire system, plumbing, electrical and heating, ventilation and air conditioning systems currently serving the Lease Premises . . . shall be in good working order as of the Commencement Date."

93.     Denied.

94.     Xpedient admits that Agilent has continued paying rents under the Site Operating Agreement dated May 15, 2023, attached to Plaintiff's Complaint as Exhibit B.  Xpedient specifically denies that performance has been "excused, waived, or prevented" for any reason. Xpedient denies all remaining allegations set forth in Paragraph 94 as stated.

95.     Denied.

### FIRST CAUSE OF ACTION
### BREACH OF CONTRACT
### (AGAINST XPEDIENT)

96.     Xpedient adopts and incorporates by reference its responses to Paragraphs 1 through 95 of the Complaint.

97.     Xpedient admits the Agreements are valid and enforceable.  Xpedient admits only that each term within each Agreement speaks for itself.   Xpedient denies as stated any further allegation in Paragraph 97.

98.     Xpedient admits only that each term within each Agreement speaks for itself. Xpedient denies as stated any further allegation in Paragraph 98.

99.     Xpedient specifically denies that Agilent provided timely notice of its claims. Xpedient admits that Agilent has continued paying rents under the Site Operating Agreement dated May 15, 2023, attached to Plaintiff's Complaint as Exhibit B.  Xpedient specifically denies that performance has been "excused, waived, or prevented" for any reason.  Xpedient denies all remaining allegations set forth in Paragraph 99 as stated.

100.    Denied.

101.    Denied.

102.    Denied.

103.    Denied.

## SECOND CAUSE OF ACTION
## BREACH OF BAILMENT AND/OR NEGLIGENT BAILMENT
## (AGAINST XPEDIENT)

104.    Xpedient adopts and incorporates by reference its responses to Paragraphs 1 through 103.

105.    Xpedient admits that Plaintiff's inventory was moved into the warehouse on or about May 22, 2023, pursuant to the Master Operating Services Agreement and the Site Operating Agreement attached to Plaintiff's Complaint.  Xpedient denies as stated all remaining allegations set forth in Paragraph 105.

106.    Denied.

107.    Xpedient is without sufficient information to admit or deny that each item of inventory was in "good, new, and undamaged condition" when it was moved into the subject warehouse and therefore denies this allegation out of an abundance of caution.

108.    Denied.

109.    Denied.

110.    Denied.

## THIRD CAUSE OF ACTION
## NEGLIGENT MISREPRESENTATION
## (AGAINST XPEDIENT)

111.    Xpedient adopts and incorporates by reference its responses to Paragraphs 1 through 111.

112.    Xpedient admits that part of its business involves providing warehousing and storage.  Xpedient denies any remaining allegations in Paragraph 112.

113.    Denied.

114.    Denied.

115.    Denied.

116.    Denied.

117.    Denied.

## FOURTH CAUSE OF ACTION
## NEGLIGENCE AND/OR RECKLESS ACTIONS OR OMISSIONS
## (AGAINST XPEDIENT)

118.    Xpedient adopts and incorporates by reference its responses to Paragraphs 1 through 117.

119.    Denied.

120.    Denied.

121.    Denied.

122.    Denied.

123.    Denied.

## FIFTH CAUSE OF ACTION
## DECLARATORY RELIEF
## AGAINST XPEDIENT

124.    Xpedient adopts and incorporates by reference its responses to Paragraphs 1 through 123.

125.    Denied.

126.    Denied.

127.    Denied.

## SIXTH CAUSE OF ACTION
## NEGLIGENCE
## (AGAINST ST. PAUL)

128.    Xpedient adopts and incorporates by reference its responses to Paragraphs 1 through 127.

129.    The allegations set forth in Paragraph 129 are legal conclusions for which a response is not required.  To the extent a response is required Xpedient denies the allegations as stated.

130.    Xpedient denies the allegations in Paragraph 130 as stated.

131.    The referenced Fire Code speaks for itself and any allegations set forth in Paragraph 131 are legal conclusion for which a response is not required.  To the extent a response is required Xpedient denies the allegations as stated.

132.    The referenced code speaks for itself and any allegations set forth in Paragraph 132 are legal conclusion for which a response is not required.  To the extent a response is required Xpedient denies the allegations as stated.

133.    The referenced Fire Code speaks for itself and any allegations set forth in Paragraph 133 are legal conclusion for which a response is not required.  To the extent a response is required Xpedient denies the allegations as stated.

134.    The referenced Fire Code speaks for itself and any allegations set forth in Paragraph 134 are legal conclusion for which a response is not required.  To the extent a response is required Xpedient denies the allegations as stated.

135.    The referenced NFPA speaks for itself and any allegations set forth in Paragraph 135 are legal conclusion for which a response is not required.  To the extent a response is required Xpedient denies the allegations as stated.

136.    The referenced NFPA speaks for itself and any allegations set forth in Paragraph 136 are legal conclusion for which a response is not required.  To the extent a response is required Xpedient denies the allegations as stated.

137.    The referenced NFPA speaks for itself and any allegations set forth in Paragraph 137 are legal conclusion for which a response is not required.  To the extent a response is required Xpedient denies the allegations as stated.

138.    The allegations set forth in Paragraph 138 are legal conclusion for which a response is not required.  To the extent a response is required Xpedient denies the allegations as stated.

139.    The allegations set forth in Paragraph 139 are legal conclusion for which a response is not required.  To the extent a response is required Xpedient denies the allegations as stated.

140.    The allegations set forth in Paragraph 140 are legal conclusion for which a response is not required.  To the extent a response is required Xpedient denies the allegations as stated.

141.    The allegations set forth in Paragraph 141 are legal conclusion for which a response is not required.  To the extent a response is required Xpedient denies the allegations as stated.

142.    The allegations set forth in Paragraph 142 are legal conclusion for which a response is not required.  To the extent a response is required Xpedient denies the allegations as stated.

143.    The allegations set forth in Paragraph 143 are legal conclusion for which a response is not required.  To the extent a response is required Xpedient denies the allegations as stated.

144.    The allegations set forth in Paragraph 144 are legal conclusion for which a response is not required.  To the extent a response is required Xpedient denies the allegations as stated.

145.    Denied.

146.    Denied.

**SEVENTH CAUSE OF ACTION
NEGLIGENCE
(AGAINST ST. PAUL)**

147.    Xpedient adopts and incorporates by reference its responses to Paragraphs 1 through 146.

148.    The allegations in Paragraph 148 are not directed at Xpedient; therefore, a response by Xpedient is not required.

149.    The allegations in Paragraph 149 are not directed at Xpedient; therefore, a response by Xpedient is not required.

150.    The allegations in Paragraph 150 are not directed at Xpedient; therefore, a response by Xpedient is not required.

151.    The allegations in Paragraph 151 are not directed at Xpedient; therefore, a response by Xpedient is not required.

152.    The allegations in Paragraph 152 are not directed at Xpedient; therefore, a response by Xpedient is not required.

### EIGHTH CAUSE OF ACTION
### NEGLIGENCE *PER SE*
### AGAINST ST. PAUL

153.    Xpedient adopts and incorporates by reference its responses to Paragraphs 1 through 152.

154.    The allegations set forth in Paragraph 153 are legal conclusions for which a response is not required.  To the extent a response is required Xpedient denies the allegations as stated.

155.    The referenced Fire Code speaks for itself and any allegations set forth in Paragraph 154 are legal conclusion for which a response is not required.  To the extent a response is required Xpedient denies the allegations as stated.

156.    The referenced code speaks for itself and any allegations set forth in Paragraph 155 are legal conclusion for which a response is not required.  To the extent a response is required Xpedient denies the allegations as stated.

157.    The referenced Fire Code speaks for itself and any allegations set forth in Paragraph 156 are legal conclusion for which a response is not required.  To the extent a response is required Xpedient denies the allegations as stated.

158.    The referenced Fire Code speaks for itself and any allegations set forth in Paragraph 157 are legal conclusion for which a response is not required.  To the extent a response is required Xpedient denies the allegations as stated.

159.    The referenced NFPA speaks for itself and any allegations set forth in Paragraph 158 are legal conclusion for which a response is not required.  To the extent a response is required Xpedient denies the allegations as stated.

160.    The referenced NFPA speaks for itself and any allegations set forth in Paragraph 159 are legal conclusion for which a response is not required.  To the extent a response is required Xpedient denies the allegations as stated.

161.    The referenced NFPA speaks for itself and any allegations set forth in Paragraph 160 are legal conclusion for which a response is not required.  To the extent a response is required Xpedient denies the allegations as stated.

162.    The allegations set forth in Paragraph 162 are legal conclusion for which a response is not required.  To the extent a response is required Xpedient denies the allegations as stated.

163.    The allegations set forth in Paragraph 163 are legal conclusion for which a response is not required.  To the extent a response is required Xpedient denies the allegations as stated.

164.    The allegations set forth in Paragraph 164 are legal conclusion for which a response is not required.  To the extent a response is required Xpedient denies the allegations as stated.

165.    The allegations set forth in Paragraph 164 are legal conclusion for which a response is not required.  To the extent a response is required Xpedient denies the allegations as stated.

166.    The allegations set forth in Paragraph 165 are legal conclusion for which a response is not required.  To the extent a response is required Xpedient denies the allegations as stated.

167.    The allegations set forth in Paragraph 166 are legal conclusion for which a response is not required.  To the extent a response is required Xpedient denies the allegations as stated.

168.    The allegations set forth in Paragraph 167 are legal conclusion for which a response is not required.  To the extent a response is required Xpedient denies the allegations as stated.

169.    The allegations set forth in Paragraph 168 are legal conclusion for which a response is not required.  To the extent a response is required Xpedient denies the allegations as stated.

170.    The allegations set forth in Paragraph 169 are legal conclusion for which a response is not required.  To the extent a response is required Xpedient denies the allegations as stated.

171.    The allegations set forth in Paragraph 170 are legal conclusion for which a response is not required.  To the extent a response is required Xpedient denies the allegations as stated.

172.    The allegations set forth in Paragraph 171 are legal conclusion for which a response is not required.  To the extent a response is required Xpedient denies the allegations as stated.

## PRAYER FOR RELIEF

173.    Xpedient denies the allegations in the final unnumbered paragraph of the Complaint beginning with the word "WHEREFORE" including each subparagraph "A." through "I."

174.    Xpedient denies any and all allegations contained in the Complaint that are not specifically admitted herein.

## FIRST AFFIRMATIVE DEFENSE

To the extent Xpedient is liable to Plaintiff (which is specifically denied) Plaintiff has contractually limited recovery to a "maximum liability" against Xpedient "not to exceed one million dollars ($1,000,000) per occurrence."   See Master Operating Services Agreement ¶ 12(C)(c).  Therefore, Plaintiff's attempt to recover any amount over $1,000,000 for the water intrusion event is not supported by the parties' agreement.  In Tennessee, parties are free to contract with each other to construct their own bargain and to allocate the handling of future liability. *Planters Gin Co. v. Federal Compress & Warehouse Co., Inc.*, 78 S.W.3d 885, 892 (Tenn. 2002).

## SECOND AFFIRMATIVE DEFENSE

Plaintiff failed to timely and adequately submit a claim for "Products lost, or damaged" pursuant to the Master Operating Services Agreement ¶ 12(C)(e), and as such, "[n]o action may be maintained by Customer for loss of or damage to Products."  Therefore, Plaintiff's claims are barred.

## THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, because Plaintiff contractually waived any right to "special, indirect, consequential, or punitive damages" and any claim for "loss of production, loss of income, or loss of profits" therefore any such damages sought by Plaintiff are barred.  in the Master Operating Services Agreement ¶12(C)(e).

## FOURTH AFFIRMATIVE DEFENSE

All disputes arising under the Master Operating Services Agreement "shall be submitted to mediation prior to any other action being taken."  Plaintiff failed to comply with the applicable mediation provisions set forth in the Master Operating Services Agreement ¶ 30 (M) and is therefore barred from maintaining this action.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the Force Majeure provision of the Master Operating Services Agreement, which provides that, "[n]either party shall be liable to the other for failure to perform its obligations under this Agreement or any Site Operating Agreement if prevented from doing so because of an act of God . . ." The adverse weather conditions that occurred in January 2024 were unforeseeable and unavoidable events that cannot be the basis for Plaintiff's breach of contract claims.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred or limited by the doctrine of modified comparative fault as that doctrine has been adopted by the courts of the State of Tennessee.  Xpedient avers that any recovery to which Plaintiff is entitled is barred or reduced by the negligence of Plaintiff or other persons or entities under the doctrine of comparative fault.  To the extent found liable, Xpedient is responsible only for the portion of fault allocated to it, if any.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's losses or damages as claimed in the Complaint, were the result of causes over which Xpedient had no control, including independent, intervening, or superseding causes.

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiff breached the contractual obligation to act in good faith and cooperate in all matters relating to the Agreements.

## NINTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred in whole or in part by the comparative fault of St. Paul; Colliers Management-Memphis, LLC; Memphis Light Gas and Water; and third parties that discovery may reveal.

## TENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the doctrines of estoppel, waiver, ratification, acquiescence and/or assumption of risk because Plaintiffs leased the subject warehouse fully aware of its condition and ultimately elected to lease the space at issue after inspecting it and/or having the opportunity to inspect it.

## ELEVENTH AFFIRMATIVE DEFENSE

 Plaintiff's tort claims are barred, in whole or in part, by the Economic Loss Doctrine which prohibits recovery in tort for claims sounding in contract.

## TWELFTH AFFIRMATIVE DEFENSE

Xpedient acted in accordance with its rights, obligations, and duties provided in the Master Operating Services Agreement and the Site Operating Agreement attached to Plaintiff's Complaint and all of the terms associated therewith.

## THIRTEENTH AFFIRMATIVE DEFENSE

Xpedient affirmatively raises all applicable contractual and statutory defenses, rights, and remedies provided in the Master Operating Services Agreement and the Site Operating Agreement attached to Plaintiff's Complaint, which defenses are incorporated by reference herein.

## FOURTEENTH AFFIRMATIVE DEFENSE

Xpedient affirmatively states that Plaintiff's claims are barred, in whole or in part, by the doctrines of setoff and recoupment.

## FIFTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims for damages are barred, in whole or in part, by its failure to mitigate damages.

## SIXTEENTH AFFIRMATIVE DEFENSE

Xpedient affirmatively states that the Complaint is barred, in whole or in part, by the doctrines of estoppel.

## SEVENTEENTH AFFIRMATIVE DEFENSE

To the extent it is revealed that the alleged damaged inventory or other evidence was not properly preserved, Xpedient is entitled to a spoliation instruction and/or other proper relief as may be determined by the Court.

WHEREFORE, Defendant Xpedient Management Group, LLC, respectfully requests that this Court enter judgment in its favor against the Plaintiff, that the Plaintiff's Complaint against Defendant Xpedient Management Group, LLC be dismissed with prejudice, and that Defendant be awarded its costs in defending this action, together with such other and further relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED, this the 26th day of November 2025.

*/s/ Andrew B. Schrack*
Andrew B. Schrack (TN 037624)
**Butler Snow LLP**
6075 Poplar Ave., Ste. 500
Memphis, TN 38119
T: 901-680-7200
F: 901-680-7201
andrew.schrack@butlersnow.com

*Attorney for Defendant Xpedient Management
Group, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the above and foregoing document has been

served on all counsel of record via the Court's ECF system on November 26, 2025.

*/s/ Andrew B. Schrack*
Andrew B. Schrack (TN 037624)