## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | | |
|---|---|---|
| AGILENT TECHNOLOGIES, INC., | * | |
| | * | |
| Plaintiff, | * | |
| | * | No. 2:25-cv-02101 |
| v. | * | |
| | * | JURY DEMAND |
| XPEDIENT MANAGEMENT GROUP, LLC | * | |
| and ST. PAUL FIRE AND MARINE | * | |
| INSURANCE COMPANY, | * | |
| | * | |
| Defendants. | * | |

| | | |
|---|---|---|
| FACTORY MUTUAL INSURANCE | * | |
| COMPANY, as subrogee of Agilent | * | |
| Technologies, Inc., | * | |
| | * | |
| Plaintiff, | * | |
| | * | No. 2:25-cv-02424 |
| v. | * | |
| | * | JURY DEMAND |
| XPEDIENT MANAGEMENT GROUP, LLC, | * | |
| and ST. PAUL FIRE AND MARINE | * | |
| INSURANCE COMPANY, | * | |
| | * | |
| Defendants. | * | |

### DEFENDANT ST. PAUL FIRE AND MARINE INSURANCE COMPANY'S RESPONSE TO PLAINTIFF AGILENT TECHNOLOGIES, INC.'S FIRST SET OF SPECIAL INTERROGATORIES

COMES NOW the Defendant, St. Paul Fire and Marine Insurance Company ("St. Paul"), to submit its Response to Plaintiff Agilent Technologies, Inc.'s First Set of Special Interrogatories pursuant to *Fed. R. Civ. P.* 26 and 33.

**INTERROGATORY NO. 1:** Describe in detail all measures taken to prepare and/or protect the Cromwell Warehouse against inclement weather, including, without limitation, freezing temperatures, from January 1, 2023 to the present, including, without limitation, the date(s) each

measure was taken, Identifying the person(s) who performed or directed each measure, and Identifying the Documents which evidence these measures.

> **ANSWER:** From January 1, 2023 to the present, St. Paul has contracted with Colliers Management Services, LLC/Colliers International to supervise, lease, and manage the Cromwell Warehouse. St. Paul owned the Cromwell Warehouse during that period of time but did not and does not operate it. Pursuant to the terms of the contract between St. Paul and Colliers, Colliers maintained and/or arranged for the maintenance of the heating, ventilating, and air conditioning system at the Cromwell Warehouse during that period of time. Upon information and belief, the Colliers employees primarily responsible for those efforts at the Cromwell Warehouse for the time frame requested are Shellie Moses and Jessica Edmonds. Upon information and belief, Colliers arranged for Soefker Services to perform maintenance on the HVAC system at the Cromwell Warehouse. Further information responsive to this interrogatory may be ascertained from the Bates stamped materials produced by St. Paul in discovery and the materials produced by third parties in response to subpoenas served by Agilent.

**INTERROGATORY NO. 2:** Describe in detail each source of heat at the Cromwell Warehouse from January 1, 2023 to the present, including for each source: its type, make/model, location within the Cromwell Warehouse, fuel or power source, capacity (if known), the dates it was installed and removed (if applicable), and the specific dates and periods during which it was operational or otherwise in use.

> **ANSWER:** From January 1, 2023 to the present, St. Paul has contracted with Colliers to supervise, lease, and manage the Cromwell Warehouse. St. Paul owned the Cromwell Warehouse during that period of time but did not and does not operate it. Nevertheless, based on information supplied by Colliers, and upon information and belief, the following are the heat sources in the Cromwell Warehouse:

| Unit Number | Make | Size | Year of Installation | Model Number |
|---|---|---|---|---|
| RTU-107 | Carrier | 10 Ton | 2012 | 48TCDD12A2A5A0A0A0 |
| RTU-101 | York | 7.5 Ton | 1984 | 505DJN08A2AAA3C |
| RTU-102 | York | 5 Ton | 1987 | DM060N10A2AAA2A |
| RTU-103 | York | 4 Ton | 1984 | DM048N10A2AAA-2 |
| RTU-104 | Carrier | 3 Ton | 2009 | 48TCEA04A2A3A0A0A0 |
| RTU-105 | Carrier | 3 Ton | 2009 | 48TCEA04A2A5A0A0A0 |

| RTU-106 | Carrier | 3 Ton    | 2007 | 48TME004A501 |
| C.U.-116 | Trane  | 10 Ton   | 1987 | BTA120C300MB |
| C.U.-117 | Trane  | 10 Ton   | 1987 | BTA120C300MB |
| RTU-1B  | Trane   | 12.5 Ton | 2000 | YCD150C3L0CA |
| RTU-2B  | Trane   | 15 Ton   | 2000 | YCD180B3L0FA |
| RTU-3B  | Trane   | 12.5 Ton | 2000 | YCD150C3L0CA |
| RTU-4B  | Trane   | 15 Ton   | 2000 | YCD180B3L0FA |
| RTU-5B  | Trane   | 12.5 Ton | 2000 | YCD150C3L0CA |
| RTU-6B  | Trane   | 15-Ton   | 2000 | YCD180B3L0FA |
| RTU-108 | Carrier | 10 Ton   | 1996 | 48TJD012511  |

>**Because Colliers, rather than St. Paul, operated the Cromwell Warehouse during the time period referenced, St. Paul is unaware of the precise dates the heat sources were operational and in use. Further information responsive to this interrogatory may be ascertained from the materials produced by third parties in response to subpoenas served by Agilent.**

**INTERROGATORY NO. 3:** Describe in detail the specific dates between January 1, 2023 and the present on which the HVAC system at the Cromwell Warehouse was capable of providing heat, and for each such date state the start and end times of these capabilities, the areas or zones served, and any interruptions, outages, or curtailments.

>**ANSWER:** **From January 1, 2023 to the present, St. Paul has contracted with Colliers to supervise, lease, and manage the Cromwell Warehouse. St. Paul owned the Cromwell Warehouse during that period of time but did not and does not operate it. For that reason, St. Paul is not aware of the exact dates the HVAC system at the Cromwell Warehouse was operational during that period of time. Further information responsive to this interrogatory may be ascertained from the materials produced by third parties in response to subpoenas served by Agilent.**

**INTERROGATORY NO. 4:** Describe in detail all measures taken to establish, maintain, restore, monitor, test, or improve the operational status of the gas meter(s), and all associated components, including, without limitation, the gas regulator, serving the Cromwell Warehouse from January 1, 2023 to the present, including, without limitation, the date(s) each measure was taken, Identifying the person(s) who performed or directed each measure, and Identifying the Documents which evidence these measures.

- 3 -

     **ANSWER:** **From January 1, 2023 to the present, St. Paul has contracted with Colliers to supervise, lease, and manage the Cromwell Warehouse. St. Paul owned the Cromwell Warehouse during that period of time but did not and does not operate it. Pursuant to the terms of the contract between St. Paul and Colliers, Colliers arranged for the maintenance and testing of the gas meters in the Cromwell Warehouse. Upon information and belief, Colliers arranged for Soefker Services to maintain and test those meters. Colliers also corresponded with Memphis Light, Gas and Water regarding utility-related issues. Upon information and belief, the Colliers employees primarily responsible for those efforts at the Cromwell Warehouse for the time frame requested are Shellie Moses and Jessica Edmonds. Upon information and belief, Crowe Services was also contracted with for similar services. Further information responsive to this interrogatory may be ascertained from the materials produced by third parties in response to subpoenas served by Agilent.**

**INTERROGATORY NO. 5:** Describe in detail all measures taken to establish, maintain, restore, monitor, test, or improve the operational status of utilities serving the Cromwell Warehouse from January 1, 2023 to the present, including, without limitation, the date(s) each measure was taken, Identifying the person(s) who performed or directed each measure, and Identifying the Documents which evidence these measures.

     **ANSWER:** **From January 1, 2023 to the present, St. Paul has contracted with Colliers to supervise, lease, and manage the Cromwell Warehouse. St. Paul owned the Cromwell Warehouse during that period of time but did not and does not operate it. Pursuant to the terms of the contract between St. Paul and Colliers, Colliers arranged for the maintenance and testing of utilities serving the Cromwell Warehouse with third parties. The third parties contracted with included Soefker Services and Security Fire Protection Company, Inc. Upon information and belief, the Colliers employees primarily responsible for those efforts at the Cromwell Warehouse for the time frame requested are Shellie Moses and Jessica Edmonds. Upon information and belief, Crowe Services was also contracted with for similar services. Further information responsive to this interrogatory may be ascertained from the materials produced by third parties in response to subpoenas served by Agilent.**

**INTERROGATORY NO. 6:** Describe in detail all measures You undertook to mitigate the damages that Agilent alleges arose from the Water Intrusion Event, including, without

- 4 -

limitation, the date(s) each measure was taken, Identifying the person(s) who performed or directed each measure, and Identifying the Documents which evidence these measures.

    **ANSWER:** **At the time of the January 17, 2024 incident, St. Paul contracted with Colliers to supervise, lease, and manage the Cromwell Warehouse. St. Paul owned the Cromwell Warehouse during that period of time but did not and does not operate it. Pursuant to the terms of the contract between St. Paul and Colliers, Colliers arranged for Security Fire Protection to assess and remediate damage in connection with the January 17, 2024 incident. Colliers also arranged for Soefker Services to conduct repairs and remediations. Colliers also corresponded with Memphis Light, Gas and Water in an effort to resolve utility-related issues. Upon information and belief, the Colliers employees primarily responsible for those efforts at the Cromwell Warehouse for the time frame requested are Shellie Moses and Jessica Edmonds. Upon information and belief, Crowe Services was also contracted with for similar services. Further information responsive to this interrogatory may be ascertained from the materials produced by third parties in response to subpoenas served by Agilent.**

**INTERROGATORY NO. 7:** If You contend that Agilent did not suffer some or all of the damages that Agilent alleges resulted from the Water Intrusion Event, describe in detail all facts supporting Your contention, including, without limitation, each category and amount You contend was not incurred or is not recoverable from You, Identifying the persons with knowledge of those facts, and Identifying the documents on which you rely.

    **ANSWER:** **Objection. This interrogatory is overly broad, unduly burdensome, and not proportional to the needs of the case particularly. It is unreasonable to require St. Paul to identify all facts supporting its defenses to Agilent's damages this early in litigation. Discovery in this case is ongoing and St. Paul reserves the right to supplement its answer to this interrogatory as needed in accordance with the *Federal Rules of Civil Procedure.***

    **Subject to and without waiving the foregoing objections and limitations, see St. Paul's Answer to Agilent's First Amended Complaint and the materials produced by the parties and non-parties in discovery. St. Paul will amend its answer to this interrogatory as needed in accordance with the *Federal Rules of Civil Procedure*, the Court's Scheduling Order [Doc 54], and the *Local Rules* of Court.**

**INTERROGATORY NO. 8:** If You contend that You are not liable, in whole or in part, for the damages Agilent alleges arising from the Water Intrusion Event, describe in detail all facts supporting Your contention, including, without limitation, the legal and factual bases for Your contention, Identifying Persons with knowledge of those facts, and Identifying the Documents on which you rely.

**ANSWER:** **Objection. This interrogatory is overly broad, unduly burdensome, and not proportional to the needs of the case. It is unreasonable to require St. Paul to identify all fact supporting its defenses to liability this early in litigation. Discovery in this case is ongoing and St. Paul reserves the right to supplement its answer to this interrogatory as needed in accordance with the *Federal Rules of Civil Procedure*.**

**Subject to and without waiving the foregoing objections and limitations, at the time of the January 17, 2024 incident, St. Paul owned, but did not operate, the Cromwell Warehouse. St. Paul contracted with Colliers for Colliers to supervise, lease, and manage the Cromwell Warehouse. St. Paul was an out-of-possession landlord, the January 17, 2024 incident took place after Xpedient took possession of the Cromwell Warehouse, and St. Paul did not exercise control over the Cromwell Warehouse at the time of the January 17, 2024 incident. Consequently, St. Paul cannot be liable for Agilent's claims under Tennessee law. Further, St. Paul never contracted with Agilent. St. Paul also expressly reserves the to assert the comparative fault of Agilent, Factory Mutual and the co-defendant, Xpedient. For further affirmative defenses to liability, see St. Paul's Answer to Agilent's First Amended Complaint and the materials produced by the parties and non-parties in discovery. St. Paul will amend its answer to this interrogatory as needed in accordance with the *Federal Rules of Civil Procedure*, the Court's Scheduling Order [Doc 54], and the *Local Rules* of Court.**

## VERIFICATION

Pursuant to 28 U.S.C. § 1746 and *Fed. R. Civ. P.* 33, I declare under penalty under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

**ST. PAUL FIRE AND MARINE INSURANCE COMPANY**

BY: *Connie J. Miller*
    —90278064CF97443...

TITLE: Authorized Representative

DATE: 2/26/2026

Respectfully submitted,

**CARR ALLISON**

BY: _/s/ Michael J. Petherick_

**SEAN W. MARTIN, BPR #020870**
**MICHAEL J. PETHERICK, BPR #036155**
Attorneys for St. Paul
633 Chestnut Street, Suite 2000
Chattanooga, TN 37450
(423) 648-9832 / (423) 648-9869 FAX
swmartin@carrallison.com
mpetherick@carrallison.com

## **CERTIFICATE OF SERVICE**

I, the undersigned attorney, do hereby certify that the foregoing document has been delivered to all counsel for parties in this cause by placing a true and correct copy of same in the United States mail, postage prepaid, in a properly addressed envelope, or by hand delivering same to each such attorney as follows:

| | |
|---|---|
| Elena R. Mosby, Esq. | Amber S. Finch, Esq. |
| Douglas F. Halijan, Esq. | Margaret Clemans McDonald, Esq. |
| Burch, Porter & Johnson, PLLC | Reed Smith, LLP |
| 130 North Court Ave. | 515 South Flower St. Suite 4300 |
| Memphis, TN 38103 | Los Angeles, CA 90071 |
| | |
| Andrew B. Schrack, Esq. | S. Joe Wellborn, Esq. |
| Butler Snow LLP | Jefferson C. Orr, Esq. |
| 6075 Poplar Ave., Suite 500 | Brenden T. Holbrook, Esq. |
| Memphis, TN 38119 | Smith Cashion & Orr, PLC |
| | 3100 West End Ave., Suite 800 |
| | Nashville, TN 37203 |

This 27th day of February, 2026.

BY: _/s/ Michael J. Petherick_
**MICHAEL J. PETHERICK, BPR #036155**

- 8 -