UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

| | | |
|---|---|---|
| AGILENT TECHNOLOGIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:25-cv-02101-BCL-cgc |
| | ) | |
| XPEDIENT MANAGEMENT GROUP, LLC and | ) | Judge Brian C. Lea |
| ST. PAUL FIRE AND MARINE INSURANCE | ) | Magistrate Judge Charmiane Claxton |
| COMPANY, | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |
| _____ | ) | |

| | | |
|---|---|---|
| | ) | |
| XPEDIENT MANAGEMENT GROUP, LLC., | ) | |
| | ) | |
| Cross-Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ST. PAUL FIRE AND MARINE INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Cross-Defendant | ) | |
| | ) | |
| _____ | ) | |

| | | |
|---|---|---|
| | ) | |
| FACTORY MUTUAL INSURANCE CO., as | ) | |
| subrogee of Agilent Technologies, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 2:25-cv-02424-BCL-tmp |
| v. | ) | |
| | ) | JURY DEMANDED |
| XPEDIENT MANAGEMENT GROUP, LLC and | ) | |
| ST. PAUL FIRE AND MARINE INSURANCE | ) | |
| COMPANY | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |

1

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF AGILENT
TECHNOLOGIES, INC. FOR LEAVE TO AMEND COMPLAINT**

Plaintiff Agilent Technologies, Inc. respectfully files this Memorandum of Law in support of its motion for leave to amend its complaint for the purpose of adding Colliers Management Services - Memphis, LLC ("Colliers") as a defendant.  Good cause exists for the amendment, which is sought in good faith, will not unduly prejudice any party, and is warranted under the well-settled standards governing amendment and joinder.

## BACKGROUND

### 1.     Agilent's Tips Inventory is Destroyed

Agilent is a world-leading supplier in life sciences, diagnostics and applied chemical markets.  [Doc. 73 ¶ 14].  It provides laboratories with instruments, services, consumables, applications, and expertise, enabling customers to achieve their research, production, therapeutic, and discovery goals.  [*Id.* ¶ 15].  Some of Agilent's instruments contain internal pipettes that measure and transport and dispense liquid samples or specimens to be tested.  [*Id.* ¶ 16].  These high-precision, liquid-handling pipettes use single- or limited-use, medical-grade disposable plastic tips.  [*Id.*]

In early 2023, following a period of irregularity in worldwide supply chains, Agilent acquired a surplus of pipette tips to maintain assurance of supply.  [Doc. 73 ¶ 18].  With limited space of its own, Agilent began looking for a logistics company in the Memphis area to provide warehousing for the surplus pipette tips inventory, valued at over $12 million ("Tips Inventory").  [*Id.*]  In May 2023, Agilent and defendant Xpedient Management Group, LLC ("Xpedient") entered into two agreements, spanning a 36-month term, pursuant to which Xpedient agreed to

provide logistics services related to the Tips Inventory, including warehousing services.  [Doc. 73 ¶ 26, Exs. A-B].  In particular, the agreements specified that the Tips Inventory would be stored at a large warehouse facility located at 4601 Cromwell Avenue in Memphis, Tennessee (the "Cromwell Warehouse").  [Doc. 73 ¶¶ 22, 60-62].

The Cromwell Warehouse is owned by defendant St. Paul Fire and Marine Insurance Company ("St. Paul").  [Doc. 73 ¶ 23].  Contemporaneously with Agilent and Xpedient entering into the above-referenced agreements, defendants St. Paul and Xpedient entered into a commercial lease agreement for the Cromwell Warehouse, which runs for an almost identical 36-month term as the agreements between Agilent and Xpedient.  [Doc. 73 ¶ 29, Ex. C].  Under the lease agreement, St. Paul was responsible for providing "normal utility service connections with separate metering" for the leased sub-portion of the Cromwell Warehouse and warranted that the "heating, ventilation and air conditioning systems currently serving" the Cromwell Warehouse "shall be in good working order."  [Doc. 73 ¶¶ 34-35].

In mid-May 2023, Agilent began moving the Tips Inventory into the Cromwell Warehouse. [Doc. 73 ¶ 31].  What Agilent did not know then was that the utilities for the facility had not been transferred from St. Paul to Xpedient, that the gas meter was locked, the gas regulator broken, and that the HVAC system was not working.  [*Id*. ¶ 38].

As the HVAC system at the Cromwell Warehouse is understood to have relied on natural gas, without a working gas line, the Cromwell Warehouse was unable to generate heat.  [Doc. 73 ¶ 39]. On or around May 23, 2023, *after* execution of the agreements between Agilent and Xpedient, and *after* the Tips Inventory had begun to be stored in the Cromwell Warehouse, Xpedient contacted Colliers, St. Paul's agent and property manager, to discuss having the utility

3

accounts associated with its leased sub-portion of the Cromwell Warehouse transferred to Xpedient.  [*Id*. ¶ 41].

Following sporadic communications during the summer and fall of 2023, all efforts by Xpedient, St. Paul, and/or Colliers, acting as St. Paul's agent and property manager, to have the utility account transferred, the gas line unlocked, and HVAC system repaired, were abandoned. [Doc. 73 ¶¶ 44-45].

On January 14, 2024, following nearly two weeks of widely publicized national warnings about an anticipated freeze event, temperatures in Memphis began to drop below freezing.  [Doc. 73 ¶¶ 48-59].  On the evening of January 17, 2024, in the midst of the deep freeze, temperatures inside the Cromwell Warehouse dropped well below 32°F, ultimately causing the sprinkler system to activate, water pipes to burst, and the Memphis Fire Department to report to the scene.  [*Id*. ¶¶ 60-62].

After learning of the water intrusion event from Xpedient, Agilent personnel responded to the Cromwell Warehouse and reported that many of the boxes storing the tips were saturated with water due to the burst pipes.  [Doc. 73 ¶ 64].  Because the Tips Inventory is intended for use with Agilent's highly sensitive instruments and given the importance of the diagnostic test results depending on the same, any contact with water and/or other liquids constitutes a contamination event destroying the tips' integrity.  [*Id*. ¶¶ 65-67].  Ultimately, over $8.5 million worth of tips were found to have been damaged and/or destroyed as a result of water intrusion event.  [*Id*. ¶ 73].

In short, by the time of the water intrusion event, the Tips Inventory had been stored at the Cromwell Warehouse for more than six months, yet not once during that time was Agilent advised by Defendants that the gas meter had been locked since May 2023, and that the portion of the Cromwell Warehouse where the Tips Inventory was stored was not heated.

### 2.    Agilent Commences this Action

After Xpedient and St. Paul rejected Agilent's claims of liability arising from their negligence, Agilent filed its Complaint against them on January 30, 2025 asserting claims for breach of contract, breach of bailment/negligent bailment, negligent misrepresentation, negligence and/or reckless conduct against Xpedient and negligence against St. Paul. [Doc 1]. With the consent of the parties and leave of court, Xpedient filed a First Amended Complaint on November 3, 2025 adding claims for negligence *per se* against both Xpedient and St. Paul.  [Doc. 73].

After conducting a scheduling conference pursuant to Fed. R. Civ. P. 16(b), the Court entered a Scheduling Order on August 27, 2025.  [Doc 59].  This matter was later consolidated with the separate subrogation lawsuit filed by Agilent's property insurer, Factory Mutual Insurance Company ("Factory Mutual").  [Doc. 59].  The trial of the consolidated matter is set for October 19, 2026. [Doc. 59.]  As required by that Order, the parties mediated on December 11, 2025, which was unsuccessful.  [Doc 89].  Discovery has proceeded with each party serving and responding to written discovery requests, engaging expert witnesses, and seeking documents or testimony from third parties via subpoenas.  On March 16, 2026, the Court extended certain deadlines under the Scheduling Order, including Defendants' expert disclosure deadline and the close of fact and expert discovery.  [Doc. 119].

### 3.    St. Paul Now Alleges Colliers Bears Liability for the Water Intrusion Event

Although Agilent notified St. Paul of its claim nearly two years ago, St. Paul never alleged—until just over two weeks ago—that Colliers bore any responsibility for the actions or repairs that St. Paul itself should have undertaken with respect to the Cromwell Warehouse.  To the contrary, Agilent has always understood, and continues to maintain, that Colliers acted as St. Paul's agent and that Colliers acts and omissions are therefore attributable to St. Paul.  [*See, e.g.,* Doc. 1 ¶ 35; Doc. 73 ¶ 42].

The history between St. Paul and Agilent underscored rather than contradicted this understanding.  First, in denying Agilent's pre-litigation claim in or around November 2024, St. Paul placed all blame on Xpedient—not Colliers.  [Doc. 73, ¶ 89].   In its denial letter, St. Paul never alleged that Colliers bore any liability for the water intrusion event.  Indeed, St. Paul treated Colliers' liability as interchangeable with its own, acknowledging that notice to Colliers of the heating issues would constitute notice to St. Paul.  Second, in moving to dismiss Agilent's initial Complaint, St. Paul never argued that Colliers bore liability for any loss attributable to warehouse operations; instead, St. Paul contended Xpedient, not itself, controlled the Cromwell Warehouse. [Doc. 19 (arguing that "Xpedient had control of the property in the leased area where the loss occurred, and St. Paul did not."); [*see also* Doc. 19-1 at 6-7 (same)].  Third, after St. Paul's motion to dismiss was denied, St. Paul filed an Answer that included no affirmative defenses attributing fault to Colliers—even though that same Answer specifically alleged the comparative fault of Xpedient, Agilent, and third-party Memphis Light, Gas and Water.  [*See* Doc. 85 at Third through Fifth Affirmative Defenses].

It was not until February 27, 2026—for the first time in this litigation—that St. Paul alleged in its responses to Agilent's First Set of Interrogatories that St. Paul "did not and does not operate" the Cromwell Warehouse, and had "contracted with Colliers to supervise, lease, and manage the Cromwell Warehouse."[1]  [Doc. 101-2].  Following this disclosure, Plaintiffs Agilent and Factory Mutual reiterated their demand, made previously, that St. Paul produce a copy of the management and leasing agreement ("Agreement") between St. Paul and Colliers.  St. Paul ultimately produced the Agreement on March 4, 2026.

---

[1] These responses, originally due on January 21, 2026, were served only after Agilent filed a Motion to Compel. [Doc. 96].

Through these recent disclosures and documents, it has become apparent that Colliers is a necessary party whose participation is required for complete relief and whose alleged conduct gives rise to claims that arise out of the same transaction or occurrence and share common questions of law and fact with the existing claims. Under the Agreement, Colliers bore responsibility for the "care, protection, operation, maintenance, repair and replacement" of the Cromwell Warehouse.  Moreover, where required by St. Paul's leases with tenants—such as its lease with Xpedient—Colliers was "required" to make contracts for operating services, including utilities like "gas."

While Agilent believes, and pled in its Complaint and Amended Complaint, that Colliers acted at all times as St. Paul's agent such that Colliers acts and omissions are attributable to St. Paul, St. Paul may ultimately contend that it delegated responsibility to Colliers for maintaining the Cromwell Warehouse including normal temperatures and cannot be liable for Colliers' negligence nor any resulting Memphis Fire Code violations[2] and subsequent damage.  For these reasons, Colliers should be joined as a defendant herein and Agilent has moved promptly to amend for such purpose.

**<u>LAW AND ARGUMENT</u>**

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that a party may amend its responsive pleadings with leave of court, and "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).  A party must show "good cause" under Rule 16(b) when seeking leave to amend after a deadline set in a schedule order. *CBR Funding, LLC v. Jones*, 2015 WL 12857355, at *1 (W.D. Tenn. Jan. 15, 2015) (quoting *Leary v. Daeschner*, 349 F.3d 888, 909

---

[2] Under the Memphis Fire Code, either the owner or its "designated representative" must maintain temperatures above 40 degrees Fahrenheit where the property has a wet sprinkler system, like in the Cromwell Warehouse.

(6th Cir. 2003)).  "Only after the movant establishes good cause will a court then proceed to the more permissive Rule 15(a)(2) analysis."  *Id.*

Where an amendment seeks to add a new party, joinder is also governed by Federal Rules of Civil Procedure 20 and 21.  Rule 20(a)(2) permits the joinder of defendants if (a) the claims asserted against them arise out of the same transaction, occurrence, or series of transactions or occurrences, and (b) "any question of law or fact common to all defendants will arise in the action."  Fed. R. Civ. P. 20(a)(2); *LaPine v. City of Detroit*, 2025 WL 4063744, at *2 (6th Cir. Nov. 6, 2025).  Rule 21 authorizes the court to add a party "on just terms" and "at any time".  *Goode v. City of Southaven*, 2016 WL 11607743, at *4 (W.D. Tenn. June 29, 2016).

Courts within the Sixth Circuit, including this District, apply Rule 15's liberal standard in favor of amendments such as this in the absence of undue delay, bad faith, prejudice, or futility, and permit joinder where Rule 20's requirements are satisfied.  *E.g.*, *McDaniel v. Upsher-Smith Pharms., Inc.*, 229 F. Supp. 3d 707, 712 (W.D. Tenn. 2017).

### 1.      Good Cause Exists for Agilent to Add Colliers

The need to add Colliers as a party was revealed only after St. Paul produced the Agreement with Colliers on March 4, 2026.  Under Federal Rule of Civil Procedure 16(b), a party seeking leave to amend may be deemed "to have acted diligently when the factual basis supporting an amendment is not disclosed until after the deadline set in the scheduling order."  *Ousley v. CG Consulting, LLC*, 339 F.R.D. 455, 459–60 (S.D. Ohio 2021).  Agilent maintains that St. Paul is responsible for Colliers actions because Colliers acted as its agent in managing the Cromwell Warehouse. Under the Agreement, however, St. Paul apparently assigned Colliers with responsibility for the operation, maintenance and repair of the Cromwell Warehouse.

8

Based on the Agreement, which Agilent only received in discovery, St. Paul may contend that it delegated responsibility for maintaining the Cromwell Warehouse, including maintaining normal temperatures within it, to Colliers and thus cannot be held liable for damages to the Cromwell Warehouse.  Agilent has not unduly delayed seeking such leave and certainly has no dilatory motive in adding Colliers as an additional defendant. The proposed amendment is brought in good faith to ensure that all responsible parties are before the Court and that complete relief may be afforded.

No prejudice will result to the other parties in this matter by Agilent adding Colliers as a party at this juncture.  *See Harrell v. Spring Oaks Capital, LLC*, 2025 WL 4349260, at *2 (E.D. Tenn. Jan. 6, 2025).  Discovery remains ongoing and, while the addition of Colliers will necessitate the amendment of the current Scheduling Order and a reasonable extension of the present trial setting, there is no risk of prejudice to any party.  No depositions have yet been taken in the matter (depositions that would obviously have to be reopened or retaken after Colliers is joined), and Colliers is already well-aware of the existence of this lawsuit as it has received subpoenas from Agilent and defendant Xpedient.

This motion is also unopposed by defendant Xpedient, a tacit recognition that it does not believe it will be unduly or unfairly prejudiced, while defendant St. Paul has not yet taken a position on the issue.  *Brown v. Mohr*, 2016 WL 4721190 (S.D. Ohio Sept. 9, 2016), *report and recommendation adopted*, No. 2:13-CV-006, 2017 WL 127478 (S.D. Ohio Jan. 13, 2017) (noting party fails to demonstrate prejudice by not opposing motion for leave to amend).  To the contrary, the addition of Colliers as a party will allow coordinated discovery on overlapping issues and the necessary adjustments to the case schedule can be accommodated without impairing the existing parties' ability to prepare for trial.  *See Gelan v. Miranda*, 2024 WL 5010835, at *3 (E.D. Tenn.

9

Dec. 5, 2024) (explaining that amendment's effect on discovery is relevant consideration under Rule 16). The amendment does not expand the litigation beyond the nucleus of facts already at issue; rather, it ensures that all relevant parties participate in a single proceeding. *See Ballard v. Interplane sspol s.r.o.*, 2006 WL 8569639, at *1 (W.D. Tenn. May 23, 2006) ("A court may also consider the interests in avoiding duplicative litigation and ensuring reasonably expeditious litigation"). In sum, good cause exists for permitting Agilent to add Colliers as a party.

   2.   **Leave to Amend Should Be Freely Granted Under Rule 15(a)(2)**

Given that good cause exists for modifying the scheduling order under Rule 16, this Court should grant Agilent leave to add Colliers as a party under Rule 15(a)(2). "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant [or] repeated failure to cure deficiencies by amendments previously allowed . . . the leave sought should, as the rule requires, be 'freely given.'" *Orlowski v. Bates*, 2014 WL 12773800, at *6 (W.D. Tenn. Feb. 11, 2014) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Agilent seeks leave to amend promptly after learning facts that substantiate the basis for the assertion of a claim directly against Colliers from the Agreement produced by St. Paul on March 4, 2026. No other party will be prejudiced and amendment will have no effect on the discovery already conducted in this matter. Moreover, the amendment is not futile, as the proposed Second Amended Complaint pleads specific factual allegations supporting each claim against Colliers. *C.f. VanStory v. Am. Health Partners Mgmt., LLC*, 2025 WL 2585679, at *5 (M.D. Tenn. Sept. 5, 2025) (discussing futility of proposed amendment as consideration under Rule 15(a)(2)). Under Rule 15(a)(2)'s liberal standard, leave should be granted.

### 3.    Joinder of Colliers Is Proper Under Fed. R. Civ. P. 20 and 21

All the requirements for joinder under Rules 20 and 21 of the Federal Rules of Civil Procedure are satisfied here.  Federal Rule of Civil Procedure 20(a) provides that:

> Persons . . . may be joined in one action as defendants if (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action.

The claims against Colliers arise from the exact same transaction or occurrence as the existing claims—namely, the catastrophic loss of $8.5 million in Tips Inventory resulting from burst pipes in the Cromwell Warehouse, which had no functioning heating system during a widely-anticipated deep freeze event.  *See Bridgeport Music, Inc. v. 11C Music*, 202 F.R.D. 229, 231–32 (M.D. Tenn. 2001) (explaining transactional relatedness requirement).  Any right to relief by Agilent is asserted against St. Paul and Colliers "jointly, severally, or in the alternative" because Colliers acted as St. Paul's agent in managing the Cromwell Warehouse.  The allegations present common (or, indeed, the exact same) questions of law and fact.  And joinder will promote judicial economy by avoiding parallel proceedings and inconsistent results.  *Helton v. Am. Gen. Life Ins. Co.*, 2011 WL 13213536, at *1 (W.D. Ky. June 6, 2011) (concluding joinder of party appropriate because it would "serve the interests of judicial economy and avoid the multiplicity of actions").  Rule 21 further authorizes the addition of a party on just terms, which are satisfied here given the timely request and absence of prejudice.  *L.H. v. Red Roof Inn, Inc.*, 2025 WL 714385, at *19 (W.D. Ky. Mar. 5, 2025) ("Rule 21 considers the same factors as Rule 15 of prejudice and fairness.").  Joinder is accordingly proper under Rules 20 and 21.

## **CONCLUSION**

For the foregoing reasons, Agilent respectfully requests that the Court grant this Motion

for Leave to Amend Complaint, permit the addition of Colliers as a defendant, and allow Agilent

to file promptly the proposed Second Amended Complaint (attached as Exhibit A to the Motion).

Dated:  March 20, 2026.

*s/ Douglas F. Halijan*
Douglas F. Halijan (BPR # 16718)
Elena R. Mosby (BPR # 40562)
Burch Porter & Johnson, PLLC
130 North Court Avenue
Memphis, TN 38103
Telephone: 901-524-5000
Facsimile: 901-524-5024
dhalijan@bpjlaw.com
emosby@bpjlaw.com

Margaret C. McDonald (*admitted pro hac vice*)
Amber Finch (*admitted pro hac vice*)
Reed Smith LLP
515 South Flower Street
Los Angeles, CA 90071
Telephone: 213-457-8000
Facsimile: 213-457-8080
mcmcdonald@reedsmith.com
afinch@reedsmith.com

*Attorneys for Plaintiff*

12