**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | |
|---|---|
| **AGILENT TECHNOLOGIES, INC.,** )<br><br>Plaintiff, )<br><br>v. )<br><br>**XPEDIENT MANAGEMENT GROUP, LLC<br>and ST. PAUL FIRE AND MARINE<br>INSURANCE COMPANY,** )<br><br>Defendants. ) | |

**XPEDIENT MANAGEMENT GROUP, LLC,** )

    Cross-Plaintiff, )    **Case No. 2:25-cv-02101-BCL-cgc**

v. )    **Consolidated with**

**ST. PAUL FIRE AND MARINE INSURANCE
COMPANY** )    **Case No. 2:25-cv-02424-BCL-tmp**

    Cross-Defendant, )    **JURY DEMANDED**

**FACTORY MUTUAL INSURANCE CO., as
subrogee of Agilent Technologies, Inc.,** )

    Plaintiff, )

v. )

**XPEDIENT MANAGEMENT GROUP, LLC
and ST. PAUL FIRE AND MARINE** )

    Defendants. )

**PLAINTIFF FACTORY MUTUAL INSURANCE COMPANY'S MEMORANDUM OF
LAW IN SUPPORT OF ITS MOTION FOR LEAVE TO AMEND COMPLAINT TO
ADD COLLIERS MANAGEMENT SERVICES-MEMPHIS, LLC AS A DEFENDANT**

1

Plaintiff, Factory Mutual Insurance Company ("FM"), as subrogee of Agilent Technologies, Inc. ("Agilent"), submits this Memorandum of Law in Support of its Motion for Leave to Amend Complaint ("Motion") to add Colliers Management Services-Memphis, LLC ("Colliers") as a defendant based on information and documents recently produced by Defendant St. Paul Fire and Marine Insurance Company ("St. Paul") in discovery. As set forth in more detail below, good cause exists for the amendment, which is sought in good faith, will not unduly prejudice any party, and is warranted under the well-settled standards governing amendment and joinder. As noted in the Certificate of Consultation appended to the Motion, undersigned counsel has conferred pursuant to Local Rule 7.2(a)(1)(B) with all other counsel of record. Counsel for Agilent and counsel for Defendant Xpedient Management Group, LLC ("Xpedient") have represented that their respective clients consent to the relief requested. Counsel for St. Paul has indicated that he is "conferring with his client about whether the motions will be opposed and that, as of the filing of this Motion, he does not have authority to consent to the relief requested.

## STATEMENT OF THE CASE

This subrogation lawsuit[1] arises from a water damage loss event ("Loss Event") at a warehouse building (the "Warehouse") owned by Defendant St. Paul that destroyed Agilent's consumable goods inventory while that inventory was being stored in the Warehouse by Defendant

---

[1]    FM filed its Complaint against St. Paul and Xpedient on April 17, 2025. FM has asserted claims for breach of contract and breach of bailment against Xpedient, and claims for negligence, gross negligence and negligence per se against both Defendants. Agilent filed its own lawsuit against these same Defendants on January 30, 2025 (the "*Agilent* Case"), which is pending before this Court as Case No. 2:25-CV-02101-BCL-cgc. During a scheduling conference held pursuant to Fed. R. Civ. P. 16(b) on August 22, 2025, the Court granted FM's Motion to Consolidate (ECF 23) and consolidated the two cases (ECF 35).

Xpedient. (Compl. ¶¶ 1 and 14, ECF 1).[2]  This action arises from Xpedient's contractual breaches of warehousing agreements between Agilent and Xpedient[3] and from both Defendants' negligence, gross negligence, and negligence *per se* in knowingly leaving the HVAC system serving the Warehouse inoperative which left the wet pipe sprinkler system therein unprotected from a well-publicized and predicted freeze event (the "Deep Freeze Event") (*See* FM's Compl., ECF 1). Defendants' failures in this regard allowed the wet pipe sprinkler system pipes in the Warehouse to freeze, burst and damage over $9 million of Agilent's inventory. (Compl. ¶¶ 41, 110-126, ECF 1).

FM insured Agilent's inventory pursuant to FM policy number 1115069 (hereinafter "the Policy"). (Compl. ¶ 42, ECF 1). FM has paid Agilent $4,787,087.40 for the damages Agilent sustained as a result of the Loss Event. (Compl. ¶ 43, ECF 1). As a result of its payments and in accordance with common law principles of equitable and/or legal subrogation and the terms of the Policy, FM is now subrogated to the rights of Agilent to recover damages from third-persons, to the extent of its payment to Agilent. (Compl. ¶ 44, ECF 1).

On August 27, 2025, the Court entered a Scheduling Order establishing a deadline of October 15, 2025 for amending pleadings and adding parties, a deadline for completion of fact and expert discovery of April 17, 2026, and setting the jury trial for this consolidated case to commence on October 19, 2026.  (Doc. 59, ECF 36). As required by the Scheduling Order, the parties mediated on December 11, 2025, which was unsuccessful. (Doc 89). Discovery has proceeded with each party serving and responding to written discovery requests, engaging expert witnesses,

---

[2]     "ECF __" references/citations herein denote pleadings of record in Case No. 2:25-cv-02424-BCL-cgc, whereas "Doc. __" references/citations herein denote pleadings of record in the *Agilent* Case.

[3]     These warehousing agreements are Sealed Ex. A to FM's Complaint, ECF 2.

and seeking documents or testimony from third parties via subpoenas. In accordance with the Scheduling Order, FM and Agilent both served expert disclosures upon Defendants on February 17, 2026.

Up until two weeks ago, St. Paul never alleged or even hinted that Colliers bore any responsibility for actions or repairs St. Paul itself should have undertaken with respect to the Warehouse. Indeed, since moving to dismiss FM's Complaint on June 4, 2025, St. Paul has never argued that Colliers bore liability for any loss attributable to warehouse operations. Instead, St. Paul contended that it was an out-of-possession landlord and that Xpedient, as tenant, controlled the Warehouse and was responsible for this Loss Event.[4] *See* St. Paul's Memorandum of Law in Support of Motion to Dismiss FM's Complaint, ECF 21-1, Subparts II and III; *see also* St. Paul's Answer to Agilent's Amended Complaint, Doc 85, ¶ 89.

In fact, St. Paul's Answer to Agilent's Amended Complaint[5] included no affirmative defenses attributing fault to Colliers—even though that same Answer specifically alleged the comparative fault of Xpedient, Agilent, and non-party Memphis Light, Gas and Water. *See* St. Paul's Answer to Agilent's Amended Complaint, Third through Fifth Affirmative Defenses. (Doc. 85). Based on the legal positions taken by St. Paul in its filings in these consolidated actions, FM has always understood, and continues to maintain, that Colliers acted as St. Paul's agent and that Colliers' acts and omissions are therefore attributable to St. Paul.

---

[4]    St. Paul took this position, notwithstanding the fact that it owned the Warehouse and the Fire Prevention Code of the City of Memphis ("Fire Code") imposed a legal duty upon it as owner to maintain all areas with a wet pipe sprinkler system at a minimum temperature of 40°F (4°C) or to protect that wet pipe sprinkler system with anti-freeze.

[5]    While Xpedient has answered FM's Complaint (Doc. 61), St. Paul has yet to file an Answer to FM's Complaint.

It was not until February 27, 2026—for the first time in this litigation—that St. Paul alleged in its responses to Agilent's First Set of Interrogatories[6] that Colliers, not St. Paul or Xpedient, operated and controlled the Warehouse. In these responses, St. Paul alleged that it had contracted with Colliers to "supervise, lease, and manage the Cromwell Warehouse" and that "[p]ursuant to the terms of the contract between St. Paul and Colliers, Colliers maintained and/or arranged for the maintenance of the heating, ventilating, and air conditioning system at the Cromwell Warehouse during that period of time."[7] Following this disclosure, Agilent and FM reiterated their demand, made previously, that St. Paul produce a copy of the Management and Leasing Agreement ("Agreement") between St. Paul and Colliers, its Property Manager.  St. Paul ultimately produced the Agreement on March 4, 2026.

Through these recent disclosures and documents, it has become apparent that Colliers is a necessary party whose participation is required for complete relief and whose alleged conduct gives rise to claims that arise out of the same transaction or occurrence and share common questions of law and fact with the existing claims. Under the Agreement, Colliers bore responsibility for the "care, protection, operation, maintenance, repair and replacement" of the Warehouse.  Moreover, where required by St. Paul's leases with tenants—such as its lease with Xpedient—Colliers was "required" to make contracts for operating services, including "gas." Additionally, Colliers agreed to "perform such acts as shall be necessary to effect compliance with all laws, rules, ordinances, statutes, and regulations of any appropriate government authority applicable to [the Warehouse]."

---

[6]     FM served its First Set of Interrogatories, First Set of Requests for Production of Documents and First Set of Requests for Admission on St. Paul on February 23, 2026.

[7]     These responses, originally due on January 21, 2026, were served only after Agilent filed a Motion to Compel. (Doc. 96).

While the Agreement does not absolve St. Paul of liability for its failure, as owner of the Warehouse, to comply with the Fire Code, Colliers did agree to perform such acts as shall be necessary to effect compliance with the Fire Code applicable to the Warehouse. Clearly that did not happen here, because at the time of the Loss Event the gas line serving the Warehouse's HVAC system was locked, the HVAC system serving the Warehouse was inoperative leaving the Warehouse unheated and consequently the wet pipe sprinkler system pipes in the Warehouse froze and burst causing water damage to over $9 million of Agilent's inventory. (Compl. ¶¶ 41, 110-126, ECF 1).

While FM believes that Colliers acts and omissions are attributable to St. Paul, it is now apparent that St. Paul may (or likely will) ultimately contend at the trial of this consolidate matter that it: (1) delegated responsibility to Colliers for maintaining the Warehouse including the responsibility to maintain normal temperatures and the wet pipe sprinkler system in the Warehouse; and (2) cannot be held liable for Colliers' negligence nor any resulting Fire Code violations[8] and subsequent damage. For these reasons, FM seeks leave to amend its operative complaint[9] (ECF 1) to add Colliers as a defendant to this action. This information was not available to FM or Agilent prior to the expiration of the deadline to amend pleadings and add parties. Discovery is currently ongoing and FM has moved promptly to amend for such purpose.

## LAW AND ARGUMENT

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that a party may amend its

---

[8]    Under the Fire Code, either the owner or its "designated representative" must maintain temperatures above 40 degrees Fahrenheit where the property has a wet sprinkler system, like in the Warehouse.

[9]    FM previously filed a Motion for Leave to Amend its Complaint as a matter of right under Fed. R. Civ. P. 15(a)(1)(B) and 15(a)(2) on June 23, 2025 (ECF 24), however, as of the date of this filing FM's Motion has not been ruled on by this Court.

responsive pleadings with leave of court, and "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). A party must show "good cause" under Rule 16(b) when seeking leave to amend after a deadline set in a schedule order. *CBR Funding, LLC v. Jones*, 2015 WL 12857355, at *1 (W.D. Tenn. Jan. 15, 2015) (quoting *Leary v. Daeschner*, 349 F.3d 888, 909 (6th Cir. 2003)). "Only after the movant establishes good cause will a court then proceed to the more permissive Rule 15(a)(2) analysis." *Id.*

Where an amendment seeks to add a new party joinder of that new party is also governed by Rules 20 and 21 of the Federal Rules of Civil Procedure. Rule 20(a)(2) permits the joinder of defendants if (a) the claims asserted against them arise out of the same transaction, occurrence, or series of transactions or occurrences, and (b) "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2); *LaPine v. City of Detroit*, 2025 WL 4063744, at *2 (6th Cir. Nov. 6, 2025). Rule 21 authorizes the court to add a party "on just terms" and "at any time". *Goode v. City of Southaven*, 2016 WL 11607743, at *4 (W.D. Tenn. June 29, 2016).

Courts within the Sixth Circuit, including this District, apply Rule 15's liberal standard in favor of amendments such as this in the absence of undue delay, bad faith, prejudice, or futility, and permit joinder where Rule 20's requirements are satisfied. *E.g.*, *McDaniel v. Upsher-Smith Pharms., Inc.*, 229 F. Supp. 3d 707, 712 (W.D. Tenn. 2017).

### 1. Good Cause Exists for FM to Add Colliers.

The need to add Colliers as a party was revealed only after St. Paul produced the Agreement with Colliers on March 4, 2026. Under Federal Rule of Civil Procedure 16(b), a party seeking leave to amend may be deemed "to have acted diligently when the factual basis supporting an amendment is not disclosed until after the deadline set in the scheduling order." *Ousley v. CG Consulting, LLC*, 339 F.R.D. 455, 459–60 (S.D. Ohio 2021). FM maintains that St. Paul is

7

responsible for Colliers actions because Colliers acted as its agent in managing the Cromwell Warehouse. Under the Agreement, however, St. Paul apparently assigned Colliers with responsibility for the operation, maintenance and repair of the Cromwell Warehouse. This responsibility arguably includes the obligation to maintain temperatures above 40 degrees Fahrenheit to prevent the wet fire sprinkler system from freezing and bursting—as occurred on the day of the Loss Event.

Based on the Agreement, which FM only recently received in discovery, St. Paul may contend that it delegated responsibility for maintaining the Warehouse, including maintaining normal temperatures within it, to Colliers and thus cannot be held liable for damages to Agilent's inventory located in the Warehouse. FM has not unduly delayed seeking such leave and certainly has no dilatory motive in adding Colliers as an additional defendant. The proposed amendment is brought in good faith to ensure that all responsible parties are before the Court and that complete relief may be afforded.

No prejudice will result to the other parties in this matter by FM adding Colliers as a party at this juncture. *See Harrell v. Spring Oaks Capital, LLC*, 2025 WL 4349260, at *2 (E.D. Tenn. Jan. 6, 2025). Discovery remains ongoing and, while the addition of Colliers will necessitate the amendment of the current Scheduling Order and a reasonable extension of the present trial setting, there is no risk of prejudice to any party. No depositions have yet been taken in the matter (depositions that would obviously have to be reopened or retaken after Colliers is joined), and Colliers is already well-aware of the existence of this lawsuit as it has received subpoenas from Agilent and Xpedient.

This motion is also unopposed, a tacit recognition that no party, including the existing defendants, will suffer undue or unfair prejudice. *Brown v. Mohr*, 2016 WL 4721190 (S.D. Ohio

8

Sept. 9, 2016), *report and recommendation adopted*, No. 2:13-CV-006, 2017 WL 127478 (S.D. Ohio Jan. 13, 2017) (noting party fails to demonstrate prejudice by not opposing motion for leave to amend). To the contrary, the addition of Colliers as a party will allow coordinated discovery on overlapping issues and the necessary adjustments to the case schedule can be accommodated without impairing the existing parties' ability to prepare for trial. *See Gelan v. Miranda*, 2024 WL 5010835, at *3 (E.D. Tenn. Dec. 5, 2024) (explaining that amendment's effect on discovery is relevant consideration under Rule 16). The amendment does not expand the litigation beyond the nucleus of facts already at issue; rather, it ensures that all relevant parties participate in a single proceeding. *See Ballard v. Interplane sspol s.r.o.*, 2006 WL 8569639, at *1 (W.D. Tenn. May 23, 2006) ("A court may also consider the interests in avoiding duplicative litigation and ensuring reasonably expeditious litigation"). In sum, good cause exists for permitting FM to add Colliers as a party.

### 2.  Leave to Amend Should Be Freely Granted Under Rule 15(a)(2).

Given that good cause exists for modifying the scheduling order under Rule 16, this Court should grant FM leave to add Colliers as a party under Rule 15(a)(2). "In the absence of any apparent or declared reason--such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.--the leave sought should, as the rules require, be freely given." *Parchman v. SLM Corp.*, 896 F.3d 728, 737 (6th Cir. 2018) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "It should be emphasized that the case law in this Circuit manifests liberality in allowing amendments to a complaint." *Id.* "The thrust of Rule 15 is to reinforce the principle that cases should be tried on their merits rather than the technicalities of pleadings." *Tefft v. Seward*, 689 F.2d 637, 639 (6th Cir. 1982).

FM seeks leave to amend promptly after learning facts that substantiate the basis for the assertion of a claim directly against Colliers from the Agreement produced by St. Paul on March 4, 2026. FM's filing of its Motion with its proposed amended complaint and is well short of any time period that constitutes undue delay as a matter of law. See *CSX Transportation, Inc. v. Columbus Downtown Dev. Corp.*, 2018 WL 4090199, at *2 (S.D. Ohio Aug. 28, 2018) (one month delay is not undue); *Loew v. Regret Inc.*, 2020 WL 6882597, at *2 (S.D. Ohio Nov. 24, 2020) (same). Further, no other party will be prejudiced and amendment will have no effect on the discovery already conducted in this matter. Moreover, the amendment is not futile, as FM's proposed Amended Complaint pleads specific factual allegations supporting each claim against Colliers, as set forth in Exhibit A. *C.f. VanStory v. Am. Health Partners Mgmt., LLC*, 2025 WL 2585679, at *5 (M.D. Tenn. Sept. 5, 2025) (discussing futility of proposed amendment as consideration under Rule 15(a)(2)). Under Rule 15(a)(2)'s liberal standard, leave should be granted.

### 3. Joinder of Colliers Is Proper Under Fed. R. Civ. P. 20 and 21.

All the requirements for joinder under Rules 20 and 21 of the Federal Rules of Civil Procedure are satisfied here. Federal Rule of Civil Procedure 20(a) provides that:

> Persons . . . may be joined in one action as defendants if (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20.

The claims against Colliers arise from the exact same transaction or occurrence as the existing claims—namely, the catastrophic loss of over $9 million in Tips Inventory resulting from burst pipes in the Warehouse, which had no functioning heating system during the predicted Deep

Freeze Event. *See Bridgeport Music, Inc. v. 11C Music*, 202 F.R.D. 229, 231–32 (M.D. Tenn. 2001) (explaining transactional relatedness requirement). Any right to relief by FM is asserted against St. Paul and Colliers "jointly, severally, or in the alternative" because Colliers acted as St. Paul's agent in managing the Cromwell Warehouse. The allegations present common (or, indeed, the exact same) questions of law and fact. And, joinder will promote judicial economy by avoiding parallel proceedings and inconsistent results. *Helton v. Am. Gen. Life Ins. Co.*, 2011 WL 13213536, at *1 (W.D. Ky. June 6, 2011) (concluding joinder of party appropriate because it would "serve the interests of judicial economy and avoid the multiplicity of actions"). Rule 21 further authorizes the addition of a party on just terms, which are satisfied here given the timely request and absence of prejudice. *L.H. v. Red Roof Inn, Inc.*, 2025 WL 714385, at *19 (W.D. Ky. Mar. 5, 2025) ("Rule 21 considers the same factors as Rule 15 of prejudice and fairness."). Joinder of Colliers is accordingly proper under Rules 20 and 21.

### CONCLUSION

For all of the foregoing reasons, FM respectfully requests that the Court grant its Motion for Leave to File an Amended Complaint, permit the addition of Colliers as a defendant, and allow FM to file the proposed Amended Complaint attached as **Exhibit 1** to FM's Motion.

Respectfully submitted,

*/s/ S. Joe Welborn*
S. Joe Welborn, TN BPR No. 21747
Brenden T. Holbrook, TN BPR No. 39485
Sam D. Jones, TN BPR No. 38436
SMITH CASHION & ORR, PLC
3100 West End Avenue
Suite 800 – One American Center
Nashville, TN 37203
(615) 742-8586 – Tel
jwelborn@smithcashion.com
bholbrook@smithcashion.com
sjones@smithcashion.com

11

*Attorneys for Plaintiff Factory Mutual Insurance Company, as subrogee of Agilent Technologies, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on March 20, 2026, I electronically filed **PLAINTIFF FACTORY MUTUAL INSURANCE COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR LEAVE TO AMEND COMPLAINT TO ADD COLLIERS MANAGEMENT SERVICES-MEMPHIS, LLC AS A DEFENDANT** with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to the following attorneys of record:

Sean W. Martin
Michael J. Petherick
633 Chestnut Street, Suite 2000
Chattanooga, TN 37450
(423) 648-9832 / (423) 648-9869 FAX
swmartin@carrallison.com
mpetherick@carrallison.com

*Attorneys for St. Paul Fire and Marine Insurance Company*

William P. Thomas
Andrew B. Schrack
Butler Snow LLP
6075 Poplar Avenue, Suite 500
Memphis, TN 38119
Will.Thomas@butlersnow.com
Andrew.Schrack@butlersnow.com

*Attorneys for Xpedient Management Group, LLC*

Douglas F. Halijan
Elena R. Mosby
BURCH PORTER & JOHNSON, PLLC
130 North Court Avenue
Memphis, TN 38103
dhalijan@bpjlaw.com
emosby@bpjlaw.com

Amber Finch (admitted pro hac vice)
Margaret C. McDonald (admitted pro hac vice)
REED SMITH LLP
515 South Flower, Suite 4300
Los Angeles, CA 90071
afinch@reedsmith.com
mcmcdonald@reedsmith.com

*Attorneys for Plaintiff Agilent Technologies, Inc.*

*/s/ S. Joe Welborn*