**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | |
|---|---|
| AGILENT TECHNOLOGIES, INC., ) | |
| ) | |
|     **Plaintiff,** ) | |
| ) | |
| **v.** ) | |
| ) | **Case No. 2:25-cv-02101-BCL-cgc** |
| XPEDIENT MANAGEMENT GROUP, LLC, ) | |
| ST. PAUL FIRE AND MARINE INSURANCE ) | **Judge Brian C. Lea** |
| COMPANY, and COLLIERS ) | **Magistrate Judge Charmaine Claxton** |
| MANAGEMENT SERVICES – MEMPHIS, ) | |
| LLC, ) | |
| ) | |
|     **Defendants.** ) | |
| _____ ) | |
| ) | |
| XPEDIENT MANAGEMENT GROUP, LLC, ) | |
| ) | |
|     **Cross-Plaintiff,** ) | |
| ) | |
| **v.** ) | |
| ) | |
| ST. PAUL FIRE AND MARINE INSURANCE ) | |
| COMPANY and COLLIERS MANAGEMENT ) | |
| SERVICES – MEMPHIS, LLC, ) | |
| ) | |
|     **Cross-Defendants.** ) | |
| _____ ) | |
| ) | |
| FACTORY MUTUAL INSURANCE CO., as ) | |
| subrogee of Agilent Technologies, Inc., ) | |
| ) | |
|     **Plaintiff,** ) | **Case No. 2:25-cv-02424-BCL-tmp** |
| **v.** ) | |
| ) | **JURY DEMANDED** |
| XPEDIENT MANAGEMENT GROUP, LLC, ) | |
| ST. PAUL FIRE AND MARINE INSURANCE ) | |
| COMPANY, and COLLIERS ) | |
| MANAGEMENT SERVICES – MEMPHIS, ) | |
| LLC, ) | |
| ) | |
|     **Defendants.** ) | |

**ANSWER AND DEFENSES OF DEFENDANT
XPEDIENT MANAGEMENT GROUP, LLC TO
AMENDED COMPLAINT OF FACTORY MUTUAL INSURANCE CO. AND
CROSSCLAIM AGAINST ST. PAUL FIRE AND MARINE INSURANCE COMPANY
AND COLLIERS MANAGEMENT SERVICES – MEMPHIS, LLC**

---

Defendant Xpedient Management Group, LLC ("Defendant" or "Xpedient") responds to Plaintiff Factory Mutual Insurance Co.'s ("Plaintiff") Amended Complaint ("Complaint") as follows:

## ANSWER

Xpedient responds to the allegations of Plaintiff's Complaint paragraph by paragraph, as follows:

### NATURE OF THE ACTION

1. Xpedient admits only that it leased a warehouse building from St. Paul Fire and Marine Insurance Company ("St. Paul") and that sprinkler pipes burst during a freeze event. Xpedient denies any remaining allegations in Paragraph 1.

### THE PARTIES

2. Admitted.

3. Admitted.

4. Admitted.

5. Admitted.

6. Admitted.

### JURISDICTION AND VENUE

7. Xpedient is not challenging subject matter jurisdiction at this time.

8. Admitted.

9. Admitted.

**FACTUAL ALLEGATIONS**

10.     Xpedient lacks sufficient knowledge to admit or deny the veracity of the allegations set forth in Paragraph 10 and therefore denies the same.

11.     Xpedient lacks sufficient knowledge to admit or deny the veracity of the allegations set forth in Paragraph 11 and therefore denies the same.

12.     Xpedient lacks sufficient knowledge to admit or deny the veracity of the allegations set forth in Paragraph 12 and therefore denies the same.

13.     Xpedient admits that it is a third-party logistics company that has expertise in logistics and warehousing and that it seeks to deliver beyond the expectations of its customers. Xpedient denies all remaining allegations in Paragraph 13.

14.     Xpedient admits only that the relationship with Agilent Technologies, Inc. ("Agilent") is set forth in the Master Operating Services Agreement and the Site Operating Agreement attached to Plaintiff's Complaint as Exhibit A.

15.     Admitted.

16.     The allegations in Paragraph 16 are not directed at Xpedient.  To the extent a response is required Xpedient admits these allegations.

17.     The allegations in Paragraph 17 are not directed at Xpedient.  To the extent a response is required Xpedient admits these allegations.

18.     The allegations in Paragraph 18 are not directed at Xpedient.  To the extent a response is required Xpedient admits these allegations.

19.     The allegations in Paragraph 19 are not directed at Xpedient.  To the extent a response is required Xpedient admits these allegations.

20. The allegations in Paragraph 20 are not directed at Xpedient. To the extent a response is required Xpedient admits these allegations.

21. The allegations in Paragraph 21 are not directed at Xpedient. To the extent a response is required Xpedient admits these allegations.

22. Xpedient admits it leased a portion of the Cromwell Warehouse from St. Paul. Xpedient denies all remaining allegations in Paragraph 22 as stated.

23. The allegations in Paragraph 23 are not directed at Xpedient. To the extent a response is required Xpedient has insufficient information to admit or deny these allegations.

24. Admitted.

25. The allegations in Paragraph 25 are not directed at Xpedient. To the extent a response is required Xpedient has insufficient information to admit or deny these allegations.

26. Xpedient admits only that the interior of the Cromwell Warehouse contained a wet pipe fire sprinkler system prior to and on January 17, 2024. Xpedient denies without sufficient knowledge or information to admit or deny the remaining allegations of Paragraph 26.

27. Xpedient admits the HVAC system at the Cromwell Warehouse operated on natural gas.

28. Admitted based on information and belief.

29. Denied as stated.

30. Denied as stated.

31. Xpedient lacks sufficient information to admit or deny the veracity of the allegations in Paragraph 31.

32. Xpedient admits based upon information and belief that Memphis Light Gas and Water ("MLGW") issued a press release and that the language of the release speaks for itself.

4

33.     Xpedient admits based upon information and belief that MLGW issued a press release and that the language of the release speaks for itself.

34.     Xpedient admits based upon information and belief that MLGW issued a press release and that the language of the release speaks for itself.

35.     Xpedient admits based upon information and belief that MLGW issued a press release and that the language of the release speaks for itself.

36.     Xpedient admits based upon information and belief that MLGW issued a press release and that the language of the release speaks for itself.

37.     Xpedient lacks sufficient information to admit or deny the veracity of the allegations in Paragraph 37.

38.     Xpedient lacks sufficient information to admit or deny the veracity of the allegations in Paragraph 38.

39.     Xpedient lacks sufficient information to admit or deny the veracity of the allegations in Paragraph 39.

40.     Xpedient specifically denies any knowledge of temperature minimums for the Cromwell warehouse prior to January 17, 2024.  Xpedient admits that Security Fire Protection Company, Inc. issued a report directed to Colliers that recommended the maintenance of temperatures above 40 degrees but denies that this information was shared with Xpedient.

41.     Denied as stated.

42.     Xpedient admits that the temperature began to drop on January 14, 2024. Xpedient denies any remaining allegations set forth in Paragraph 42.

43.     Xpedient lacks sufficient information to admit or deny the veracity of the allegations in Paragraph 43.

44.    Based on information and belief Xpedient admits the allegations in Paragraph 44.

45.    Xpedient admits only that on or around the evening of January 17, 2024, a fire sprinkler pipe at the Cromwell Warehouse broke and failed the remaining allegations are denied.

46.    Denied as stated.

47.    Xpedient lacks sufficient information to admit or deny the veracity of the allegations in Paragraph 47.

48.    Denied.

49.    Xpedient lacks sufficient information to admit or deny the veracity of the allegations in Paragraph 49.

50.    Xpedient lacks sufficient information to admit or deny the veracity of the allegations in Paragraph 50.

51.    Xpedient lacks sufficient information to admit or deny the veracity of the allegations in Paragraph 51.

## CAUSES OF ACTION

### COUNT I - BREACH OF CONTRACT
### (Against Xpedient)

52.    Xpedient adopts and incorporates by reference its responses to Paragraphs 1 through 51 of the Complaint.

53.    Admitted.

54.    Xpedient admits only that each term within each Agreement speaks for itself. Xpedient denies as stated any further allegation in Paragraph 54.

55.    Xpedient admits only that each term within each Agreement speaks for itself. Xpedient denies as stated any further allegation in Paragraph 55.

56.    Denied as stated.

57.    Denied.

58.    Denied.

## COUNT II - BREACH OF BAILMENT AND/OR NEGLIGENT BAILMENT
### (Against Xpedient)

59.    Xpedient adopts and incorporates by reference its responses to Paragraphs 1 through 58.

60.    Xpedient admits that Agilent's inventory was moved into the warehouse on or about May 22, 2023, pursuant to the Master Operating Services Agreement and the Site Operating Agreement attached to Plaintiff's Complaint.  Xpedient denies as stated all remaining allegations set forth in Paragraph 60.

61.    Denied.

62.    Xpedient is without sufficient information to admit or deny that each item of inventory was in "good, new, and undamaged condition" when it was moved into the subject warehouse and therefore denies this allegation out of an abundance of caution.

63.    Denied.

64.    Denied.

65.    Denied.

## COUNT III - NEGLIGENCE
### (Against Xpedient)

66.    Xpedient adopts and incorporates by reference its responses to Paragraphs 1 through 65.

67.    Denied.

68.    Denied.

69.    Denied.

70.    Denied.

## COUNT IV - GROSS NEGLIGENCE
### (Against Xpedient)

71.    Xpedient adopts and incorporates by reference its responses to Paragraphs 1 through 70.

72.    Denied.

73.    Denied.

74.    Denied.

75.    Denied.

76.    Denied.

77.    Denied.

78.    Denied.

79.    Denied.

80.    Denied.

81.    Denied.

82.    Denied.

## COUNT V - NEGLIGENCE *PER SE*
### (Against Xpedient)

83.    Xpedient adopts and incorporates by reference its responses to Paragraphs 1 through 82.

84.    Xpedient denies any allegation inconsistent with the cited ordinances and codes.

85.    Denied as stated.

86.    Xpedient denies any allegation inconsistent with the cited ordinances and codes.

87.    Xpedient denies any allegation inconsistent with the cited ordinances and codes.

88.    Denied.

89. Denied.

90. Xpedient denies any allegation inconsistent with the cited ordinances and codes.

91. Xpedient denies any allegation inconsistent with the cited ordinances and codes.

92. Xpedient denies any allegation inconsistent with the cited ordinances and codes.

93. Denied.

94. Denied.

95. Denied.

96. Denied.

97. Denied.

98. Denied.

99. Denied.

100. Denied.

**COUNT VI - NEGLIGENCE**
**(Against St. Paul)**

101. Xpedient adopts and incorporates by reference its responses to Paragraphs 1 through 100.

102. The allegations in Paragraph 102 are not directed at Xpedient; therefore, a response by Xpedient is not required.

103. The allegations in Paragraph 103 are not directed at Xpedient; therefore, a response by Xpedient is not required.

104. The allegations in Paragraph 104 are not directed at Xpedient; therefore, a response by Xpedient is not required.

105. The allegations in Paragraph 105 are not directed at Xpedient; therefore, a response by Xpedient is not required.

9

## COUNT VII - GROSS NEGLIGENCE
### (Against St. Paul)

106.     Xpedient adopts and incorporates by reference its responses to Paragraphs 1 through 105.

107.     The allegations in Paragraph 107 are not directed at Xpedient; therefore, a response by Xpedient is not required.

108.     The allegations in Paragraph 108 are not directed at Xpedient; therefore, a response by Xpedient is not required.

109.     The allegations in Paragraph 109 are not directed at Xpedient; therefore, a response by Xpedient is not required.

110.     The allegations in Paragraph 110 are not directed at Xpedient; therefore, a response by Xpedient is not required.

111.     The allegations in Paragraph 111 are not directed at Xpedient; therefore, a response by Xpedient is not required.

112.     The allegations in Paragraph 112 are not directed at Xpedient; therefore, a response by Xpedient is not required.

113.     The allegations in Paragraph 113 are not directed at Xpedient; therefore, a response by Xpedient is not required.

114.     The allegations in Paragraph 114 are not directed at Xpedient; therefore, a response by Xpedient is not required.

115.     The allegations in Paragraph 115 are not directed at Xpedient; therefore, a response by Xpedient is not required.

116.     The allegations in Paragraph 116 are not directed at Xpedient; therefore, a response by Xpedient is not required.

117.    The allegations in Paragraph 117 are not directed at Xpedient; therefore, a response by Xpedient is not required.

## COUNT VIII – NEGLIGENCE
### (Against Colliers)

118.    Xpedient adopts and incorporates by reference its responses to Paragraphs 1 through 117.

119.    The allegations in Paragraph 119 are not directed at Xpedient; therefore, a response by Xpedient is not required.

120.    The allegations in Paragraph 120 are not directed at Xpedient; therefore, a response by Xpedient is not required.

121.    The allegations in Paragraph 121 are not directed at Xpedient; therefore, a response by Xpedient is not required.

122.    The allegations in Paragraph 122 are not directed at Xpedient; therefore, a response by Xpedient is not required.

## COUNT IX – GROSS NEGLIGENCE
### (Against Colliers)

123.    Xpedient adopts and incorporates by reference its responses to Paragraphs 1 through 122.

124.    The allegations in Paragraph 124 are not directed at Xpedient; therefore, a response by Xpedient is not required.

125.    The allegations in Paragraph 125 are not directed at Xpedient; therefore, a response by Xpedient is not required.

126.    The allegations in Paragraph 126 are not directed at Xpedient; therefore, a response by Xpedient is not required.

127. The allegations in Paragraph 127 are not directed at Xpedient; therefore, a response by Xpedient is not required.

128. The allegations in Paragraph 128 are not directed at Xpedient; therefore, a response by Xpedient is not required.

129. The allegations in Paragraph 129 are not directed at Xpedient; therefore, a response by Xpedient is not required.

130. The allegations in Paragraph 130 are not directed at Xpedient; therefore, a response by Xpedient is not required.

131. The allegations in Paragraph 131 are not directed at Xpedient; therefore, a response by Xpedient is not required.

132. The allegations in Paragraph 132 are not directed at Xpedient; therefore, a response by Xpedient is not required.

133. The allegations in Paragraph 133 are not directed at Xpedient; therefore, a response by Xpedient is not required.

134. The allegations in Paragraph 134 are not directed at Xpedient; therefore, a response by Xpedient is not required.

## COUNT X – NEGLIGENCE *PER SE*
### (Against St. Paul and Colliers)

135. Xpedient adopts and incorporates by reference its responses to Paragraphs 1 through 134.

136. The allegations in Paragraph 136 are not directed at Xpedient; therefore, a response by Xpedient is not required.

137. The allegations in Paragraph 137 are not directed at Xpedient; therefore, a response by Xpedient is not required.

138. The allegations in Paragraph 138 are not directed at Xpedient; therefore, a response by Xpedient is not required.

139. The allegations in Paragraph 139 are not directed at Xpedient; therefore, a response by Xpedient is not required.

140. The allegations in Paragraph 140 are not directed at Xpedient; therefore, a response by Xpedient is not required.

141. The allegations in Paragraph 141 are not directed at Xpedient; therefore, a response by Xpedient is not required.

142. The allegations in Paragraph 142 are not directed at Xpedient; therefore, a response by Xpedient is not required.

143. The allegations in Paragraph 143 are not directed at Xpedient; therefore, a response by Xpedient is not required.

144. The allegations in Paragraph 144 are not directed at Xpedient; therefore, a response by Xpedient is not required.

145. The allegations in Paragraph 145 are not directed at Xpedient; therefore, a response by Xpedient is not required.

146. The allegations in Paragraph 146 are not directed at Xpedient; therefore, a response by Xpedient is not required.

147. The allegations in Paragraph 147 are not directed at Xpedient; therefore, a response by Xpedient is not required.

148. The allegations in Paragraph 148 are not directed at Xpedient; therefore, a response by Xpedient is not required.

149.    The allegations in Paragraph 149 are not directed at Xpedient; therefore, a response by Xpedient is not required.

150.    The allegations in Paragraph 150 are not directed at Xpedient; therefore, a response by Xpedient is not required.

151.    The allegations in Paragraph 151 are not directed at Xpedient; therefore, a response by Xpedient is not required.

152.    The allegations in Paragraph 152 are not directed at Xpedient; therefore, a response by Xpedient is not required.

**PRAYER FOR RELIEF**

153.    Xpedient denies the allegations in the final unnumbered paragraph of the Complaint beginning with the word "WHEREFORE" including each subparagraph "A." through "F."

154.    Xpedient denies any and all allegations contained in the Complaint that are not specifically admitted herein.

**FIRST AFFIRMATIVE DEFENSE**

To the extent Xpedient is liable to Plaintiff (which is specifically denied) Plaintiff's subrogor has contractually limited recovery to a "maximum liability" against Xpedient "not to exceed one million dollars ($1,000,000) per occurrence." See Master Operating Services Agreement ¶ 12(C)(c). Therefore, Plaintiff's attempt to recover any amount over $1,000,000 for the water intrusion event is not supported by the parties' agreement. In Tennessee, parties are free to contract with each other to construct their own bargain and to allocate the handling of future liability. *Planters Gin Co. v. Federal Compress & Warehouse Co., Inc.*, 78 S.W.3d 885, 892 (Tenn. 2002).

## SECOND AFFIRMATIVE DEFENSE

Plaintiff's subrogor failed to timely and adequately submit a claim for "Products lost, or damaged" pursuant to the Master Operating Services Agreement ¶ 12(C)(e), and as such, "[n]o action may be maintained by Customer for loss of or damage to Products."  Therefore, Plaintiff's claims are barred.

## THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, because Plaintiff's subrogor contractually waived any right to "special, indirect, consequential, or punitive damages" and any claim for "loss of production, loss of income, or loss of profits" therefore any such damages sought by Plaintiff are barred.  in the Master Operating Services Agreement ¶12(C)(e).

## FOURTH AFFIRMATIVE DEFENSE

All disputes arising under the Master Operating Services Agreement "shall be submitted to mediation prior to any other action being taken."  Plaintiff's subrogor failed to comply with the applicable mediation provisions set forth in the Master Operating Services Agreement ¶ 30 (M) and is therefore barred from maintaining this action.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the Force Majeure provision of the Master Operating Services Agreement, which provides that, "[n]either party shall be liable to the other for failure to perform its obligations under this Agreement or any Site Operating Agreement if prevented from doing so because of an act of God . . ." The adverse weather conditions that occurred in January 2024 were unforeseeable and unavoidable events that cannot be the basis for Plaintiff's breach of contract claims.

15

## SIXTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred or limited by the doctrine of modified comparative fault as that doctrine has been adopted by the courts of the State of Tennessee.  Xpedient avers that any recovery to which Plaintiff is entitled is barred or reduced by the negligence of Plaintiff or other persons or entities under the doctrine of comparative fault.  To the extent found liable, Xpedient is responsible only for the portion of fault allocated to it, if any.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's losses or damages as claimed in the Complaint, were the result of causes over which Xpedient had no control, including independent, intervening, or superseding causes.

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiff's subrogor breached the contractual obligation to act in good faith and cooperate in all matters relating to the Agreements.

## NINTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred in whole or in part by the comparative fault of Agilent; St. Paul; Colliers Management-Memphis, LLC; Memphis Light Gas and Water; and third parties that discovery may reveal.

## TENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the doctrines of estoppel, waiver, ratification, acquiescence and/or assumption of risk because Plaintiff's subrogor leased the subject warehouse fully aware of its condition and ultimately elected to lease the space at issue after inspecting it and/or having the opportunity to inspect it.

## ELEVENTH AFFIRMATIVE DEFENSE

Plaintiff's tort claims are barred, in whole or in part, by the Economic Loss Doctrine which prohibits recovery in tort for claims sounding in contract.

## TWELFTH AFFIRMATIVE DEFENSE

Xpedient acted in accordance with its rights, obligations, and duties provided in the Master Operating Services Agreement and the Site Operating Agreement attached to Plaintiff's Complaint and all of the terms associated therewith.

## THIRTEENTH AFFIRMATIVE DEFENSE

Xpedient affirmatively raises all applicable contractual and statutory defenses, rights, and remedies provided in the Master Operating Services Agreement and the Site Operating Agreement attached to Plaintiff's Complaint, which defenses are incorporated by reference herein.

## FOURTEENTH AFFIRMATIVE DEFENSE

Xpedient affirmatively states that Plaintiff's claims are barred, in whole or in part, by the doctrines of setoff and recoupment.

## FIFTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims for damages are barred, in whole or in part, by its failure to mitigate damages.

## SIXTEENTH AFFIRMATIVE DEFENSE

Xpedient affirmatively states that the Complaint is barred, in whole or in part, by the doctrines of estoppel.

17

## SEVENTEENTH AFFIRMATIVE DEFENSE

To the extent it is revealed that the alleged damaged inventory or other evidence was not properly preserved, Xpedient is entitled to a spoliation instruction and/or other proper relief as may be determined by the Court.

## EIGHTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred in whole or in part by the waiver of subrogation clause in the Master Operating Services Agreement ¶ 20.

WHEREFORE, Defendant Xpedient Management Group, LLC, respectfully requests that this Court enter judgment in its favor against the Plaintiff, that the Plaintiff's Complaint against Defendant Xpedient Management Group, LLC be dismissed with prejudice, and that Defendant be awarded its costs in defending this action, together with such other and further relief as the Court deems just and proper.

## CROSS-CLAIM

Having fully answered the Amended Complaint, Defendant and Cross-Plaintiff Xpedient Management Group, LLC ("Xpedient"), pursuant to Rule 13(g) of the Federal Rules of Civil Procedure, submits its Cross-Claim against Defendant and Cross-Defendant St. Paul Fire and Marine Insurance Company ("St. Paul") and Defendant and Cross-Defendant Colliers Management Services – Memphis, LLC ("Colliers"), and states as follows:

## PARTIES, JURISDICTION, AND VENUE

1.      Cross-Plaintiff Xpedient is a Tennessee limited liability company with its principal place of business located at 100 Cresent Court, Suite 700, Dallas, Texas 75201.

2.      Cross-Defendant St. Paul is a Connecticut corporation with its principal place of business located at One Tower Square, Hartford, Connecticut 06183.

18

3. Cross-Defendant Colliers is a Tennessee limited liability company with its principal place of business located at 6363 Poplar Avenue, Suite 400, Memphis, Tennessee 38119.

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1367 because Xpedient's claims asserted herein against St. Paul and Colliers arise out of or involve the same subject matter, transaction, and/or occurrence as the claims asserted by Plaintiff Agilent Technologies, Inc. ("Agilent") in its Second Amended Complaint.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the allegations in this Cross-Claim occurred in this District, as the relevant agreements were to be performed in Shelby County, Tennessee.

## FACTUAL ALLEGATIONS

6. Xpedient incorporates by reference Paragraphs 1 through 5 above as if fully set forth herein.

7. St. Paul is the owner of certain real property located at 4601 Cromwell Avenue, Building 20, Memphis, Tennessee 38118 (the "Property").

### A. The Management and Leasing Agreement Between St. Paul and Colliers

8. On or about June 1, 2004, St. Paul and Colliers entered into a Management and Leasing Agreement (the "Management and Leasing Agreement"), under which Colliers would act as St. Paul's property manager for the Property. A copy of the Management and Leasing Agreement is filed contemporaneously under seal, and is referred to herein as **Exhibit 1**.

9. Xpedient was provided a copy of the Management and Leasing Agreement from St. Paul on March 3, 2026.

19

10.     Pursuant to Section 2.5 of the Management and Leasing Agreement, Colliers agreed to maintain, repair, and/or replace or cause to be maintained, repaired and/or replaced the Property and its common areas.  Ex. 1 § 2.5.

11.     Pursuant to Section 2.6 of the Management and Leasing Agreement, Colliers agreed to, for leases pertaining to the Property, make contracts for utilities, including electricity and gas.  Ex. 2 § 2.6.

### B.     The Lease Agreement Between St. Paul and Xpedient

12.     On May 18, 2023, St. Paul, as lessor, as Xpedient, as lessee, entered in a standard commercial lease agreement for approximately 45,720 square feet of warehouse space located at the Property (the "Lease Agreement").  A copy of the Lease Agreement is filed contemporaneously under seal, and is referred to herein as **Exhibit 2**.

13.     Pursuant to Section 4.01 of the Lease Agreement, St. Paul agreed to provide service connections for utilities with separate metering, including initial connection charges and all charges for gas.  Ex. 2 § 4.01.

14.     Pursuant to Section 5.06 of the Lease Agreement, St. Paul warranted to Xpedient that the heating system would be in good working order.  Ex. 2 § 5.06.

15.     Pursuant to Section 14.13 of the Lease Agreement, St. Paul provided a covenant of quiet enjoyment to Xpedient.  Ex. 2 § 14.13.

### C.     Collier's Breach of the Management and Leasing Agreement and St. Paul's Breach of the Lease Agreement by Failing to Have the Utilities Connected with Separate Metering at the Property Upon Delivery

16.     On or about May 23, 2023, Xpedient sent an e-mail to the Colliers' point of contact that handles utilities transfers, provided to Xpedient by St. Paul, requesting to have the utilities, including natural gas, connected with separate metering at the Property.

20

17. The same day, Colliers responded to Xpedient's request to have the utilities connected with separate metering at the Property, stating that there was one account, ending in 730, for Suite 10 that needed to be transferred over in order to have the utilities connected with separate metering and providing Xpedient a phone number to contact Memphis Light Gas and Water ("MLGW").

18. On or about May 24, 2023, Xpedient called MLGW requesting that account 730 be transferred to Xpedient.

19. On or about May 30, 2023, Colliers contacted Soefker Services ("Soefker"), a Memphis plumbing and heating company, requesting a quote to split the meters at the Property.

20. The same day, MLGW sent a General Power Service Agreement for account 730 to Xpedient, demonstrating that account 730 was successfully transferred to Xpedient.

21. On or about June 1, 2023, Colliers received a quote from Soefker to split the meters at the Property.

22. On or about June 7, 2023, Xpedient received a $15,000.00 invoice from MLGW for the utilities account ending in 730.  Xpedient internally began investigating the source of the invoice expenses as account 730 had not yet been connected with separate metering at the Property.

23. On or about June 9, 2023, Colliers sent Xpedient an e-mail stating that Colliers was not receiving utilities bills for the Property because MLGW transferred all four utilities accounts for the Property to Xpedient, rather than the one account ending in 730 for Suite 10.  Colliers requested that Xpedient send the utilities bills for the Property to Colliers while MLGW transferred the three accounts not ending in 730 back to Colliers.

24. On or about June 15, 2023, Xpedient called MLGW regarding the status of correctly transferring the utilities accounts and connecting the 730 account with separate metering at the

Property; however, MLGW would not communicate with Xpedient without a company code, which Xpedient did not have access to.

25.    On or about June 26, 2023, Colliers emailed Soefker asking Soefker to move forward with splitting the meters at the Property.

26.    On or about July 5, 2023, Xpedient asked Colliers for an update regarding the Property's HVAC work being completed.

27.    On or about July 6, 2023, Colliers responded to Xpedient's request for an update regarding the HVAC system, stating that it was waiting for an update from the vendor.

28.    On or about July 7, 2023, Colliers notified Xpedient that a lift was going to be delivered to the Property so that the utilities, including natural gas, could be connected with separate metering at the Property.

29.    On or about July 7, 2023, Xpedient contacted MLGW again regarding the status of correctly transferring the utilities accounts and connecting the 730 account with separate metering at the Property.  MLGW informed Xpedient that it would only speak with Jamie Davis, Xpedient's Director of Operations, regarding the 730 account as his name was the only one on the account.

30.    On or about July 10, 2023, Jamie Davis contacted MLGW regarding the status of correctly transferring the utilities accounts and connecting the 730 account with separate metering at the Property.  Despite stating three days prior that it would speak to Jamie Davis, MLGW would not speak with him regarding the 730 account.

31.    On or about July 25, 2023, Xpedient received a notice, dated July 19, 2025, from MLGW that billing for the 730 account would be delayed for further investigation to ensure accurate billing from MLGW.

32.    On or about August 7, 2023, Soefker sent Colliers an email confirming that the final mechanical inspection for Suite 10 had been completed, including the separate gas lines and gas air test.

33.    On or about August 25, 2023, Xpedient received another notice, dated August 17, 2025, from MLGW that billing for the 730 account would be delayed for further investigation to ensure accurate billing from MLGW.

34.    On or about September 26, 2023, Soefker sent Colliers an e-mail communicating that Soefker went to the Property to set up the HVAC, but could not set up the gas because the gas meter was still locked.

35.    The same day, Colliers responded to Soefkler that it would call MLGW to unlock the meter and get the gas turned on.

36.    On or about October 4, 2023, Xpedient contacted Colliers regarding the $15,000.00 invoice for account 730 as Xpedient had not been able to internally determine the source of the invoice expenses.

37.    On or about October 5, 2023, Xpedient sent all account information and Xpedient's history of payment of invoices for the 730 account to Colliers to help determine the source of the outstanding $15,000 invoice.  Xpedient received an out of office e-mail from its contact at Colliers.

38.    On or about October 9, 2023, Xpedient received a cut-off notice from MLGW for the 730 account.

39.    The same day, Xpedient forwarded the cut-off notice for the 730 account to Colliers and requested that Colliers remedy the situation, to which Colliers responded ten minutes later that it was on the phone with MLGW.

23

40.     On or about October 17, 2023, Xpedient received a second cut-off notice from MLGW for the 730 account.

41.     The same day, Xpedient contacted MLGW regarding the cut-off notice, to which MLGW responded that the notice was a mistake, and no utilities would be shut off.

42.     On or about October 18, 2023, Soefker confirmed to Colliers that everything was set up for the gas to be turned on once the meter was unlocked.

43.     On or about October 25, 2023, Xpedient received another notification, dated October 17, 2025, from MLGW that billing for the 730 account would be delayed for further investigation to ensure accurate billing from MLGW.

44.     On or about January 4, 2024, Colliers received a fire inspection report for the Property, stating "recommend maintaining proper temperature at a minimum of 40 during the winter months."

45.     Despite the multiple communications from Xpedient to Colliers and MLGW, the natural gas lines to the Property were not connected until April 10, 2024, almost a year after Xpedient sent its initial email to Colliers to set up the natural gas connection.

46.     The heating system for the Property requires natural gas to operate.

47.     Even after the natural gas connection was established on or about April 10, 2024, the HVAC system for the Property would not properly function and required substantial work and/or replacement.

**D.      The Water Intrusion Event Caused by St. Paul's Breach of the Lease Agreement and Further Breach of the Lease Agreement**

48.     On or about January 17, 2024, the temperatures dropped below freezing in the Property, causing a pipe in the fire sprinkler system to freeze, burst, and leak water into the Property causing damage to inventory stored at the Property (the "Water Intrusion Event").

24

49.    On or about September 17, 2024, Zurich American Insurance Company, on behalf of St. Paul, sent Xpedient a tender request demanding that Xpedient indemnify St. Paul for the damage to inventory stored at the Property caused by the Water Intrusion Event.

50.    On or about December 3, 2024, Xpedient responded to St. Paul's tender request, denying the tender request and asserting its own demand that St. Paul fully defend and indemnify Xpedient with respect to any and all claims of Agilent related to the Water Intrusion Event.  A true and correct copy of the Response to Tender Request and Demand for Defense and Indemnification is attached hereto as **Exhibit 3**.

51.    The same day, and in accordance with Section 11.03 of the Lease Agreement, a notice of default was provided by St. Paul on December 3, 2024.  A true and correct copy of the Notice of Default is attached hereto as **Exhibit 4**.

52.    On February 3, 2025, Agilent filed a lawsuit in the United States District Court of the Western District of Tennessee seeking damages from Xpedient that were caused by St. Paul's and Colliers' negligence and/or breach of the Lease Agreement.  *See* Doc. 1.

53.    Pursuant to Section 7.08 of the Lease Agreement, St. Paul agreed to indemnify Xpedient for any claims or liabilities incurred by Xpedient caused by St. Paul's negligence or breach of the Lease Agreement.  Ex. 2 § 7.08.

54.    St. Paul failed to indemnify Xpedient for any claims or liabilities incurred by Xpedient caused by St. Paul's negligence or breach of the Lease Agreement.

55.    St. Paul did not provide any valid excuse for its failure to indemnify Xpedient for any claims or liabilities incurred by Xpedient caused by St. Paul's negligence or breach of the Lease Agreement.

56.    To date, St. Paul still has not indemnified Xpedient for any claims or liabilities incurred by Xpedient caused by St. Paul's negligence or breach of the Lease Agreement, nor has St. Paul addressed its breach of the Lease Agreement by its failure to deliver separate metered utility services upon delivery of possession.

## COUNT I – BREACH OF CONTRACT
### (Against St. Paul)

57.    Xpedient incorporates by reference Paragraphs 1 through 56 above as if fully set forth herein.

58.    The Lease Agreement is a valid and enforceable contract between St. Paul and Xpedient.

59.    Pursuant to Section 4.01 of the Lease Agreement, St. Paul agreed to provide the normal utility service connections with separate metering for Xpedient. *See* Ex. 2 § 4.01.

60.    Pursuant to Section 5.06 of the Lease Agreement, St. Paul agreed to provide a heating system for the Property that is in good working order. *See* Ex. 2 § 5.06.

61.    St. Paul materially breached the Lease Agreement by failing to provide the normal utility service connections and failing to provide a properly functioning heating system for the Property until after April 10, 2024.

62.    In accordance with Section 11.03 of the Lease Agreement, Xpedient provided St. Paul a notice of default on December 3, 2024, stating that its failure to provide the normal utility service connections and failure to provide a properly functioning heating system for the Property until after April 10, 2024 constituted a material breach of the Lease Agreement. *See* Ex. 4.

63.    St. Paul's breach of the Lease Agreement is the direct and proximate cause of damages and material harm suffered by Xpedient.

26

64.     As a result of St. Paul's breach of the Lease Agreement, Xpedient has suffered, and is suffering, damages in an amount to be proven at trial.

### COUNT II – BREACH OF INDEMNITY AGREEMENT
### (Against St. Paul)

65.     Xpedient incorporates by reference Paragraphs 1 through 64 above as if fully set forth herein.

66.     The Lease Agreement is a valid and enforceable contract between St. Paul and Xpedient.

67.     Pursuant to Section 7.08 of the Lease Agreement, St. Paul agreed to indemnify Xpedient for any claims or liabilities incurred by Xpedient caused by St. Paul's negligence or breach of the Lease Agreement.  *See* Ex. 2 § 7.08.

68.     In accordance with Section 11.03 of the Lease Agreement, Xpedient provided St. Paul a notice of default on December 3, 2024, detailing St. Paul's breach of the Lease Agreement.  *See* Ex. 4.

69.     Also on December 3, 2024, Xpedient sent St. Paul a demand that St. Paul fully defend and indemnify Xpedient with respect to any and all claims of Agilent related to the Water Intrusion Event pursuant to Section 7.08 of the Lease Agreement.  *See* Ex. 3.

70.     On February 3, 2025, Agilent filed a lawsuit in the United States District Court of the Western District of Tennessee seeking damages from Xpedient that were caused by St. Paul's negligence and/or breach of the lease agreement.  *See* Doc. 1.

71.     St. Paul has failed to indemnify Xpedient pursuant to the indemnity provision in the Lease Agreement.

72.     St. Paul has not provided any valid excuse for its failure to indemnify Xpedient.

27

73.    St. Paul's breach of the indemnity provision in the Lease Agreement is the direct and proximate cause of damages and material harm suffered by Xpedient.

74.    As a result of St. Paul's breach of the indemnity provision in the Lease Agreement, Xpedient has suffered, and is suffering, damages in an amount to be proven at trial.

### COUNT III – BREACH OF COVENANT OF QUIET ENJOYMENT
### (Against St. Paul)

75.    Xpedient incorporates by reference Paragraphs 1 through 74 above as if fully set forth herein.

76.    The Lease Agreement is a valid and enforceable contract between St. Paul and Xpedient.

77.    Pursuant to Section 14.13 of the Lease Agreement, St. Paul provided a covenant of quiet enjoyment to Xpedient.  *See* Ex. 2 § 14.13.

78.    Due to St. Paul's failure to comply with the terms of the Lease Agreement, which required delivery of separate metered utility services upon delivery of possession, Xpedient's quiet enjoyment of the Property was interrupted.

79.    In accordance with Section 11.03 of the Lease Agreement, Xpedient provided St. Paul a notice of default on December 3, 2024, stating that its failure to provide the normal utility service connections and failure to provide a properly functioning heating system for the Property until after April 10, 2024 constituted a material breach of St. Paul's covenant of quiet enjoyment.  *See* Ex. 4.

80.    St. Paul's breach of the covenant of quiet enjoyment is the direct and proximate cause of damages and material harm suffered by Xpedient.

81.    As a result of St. Paul's breach of covenant of quiet enjoyment, Xpedient has suffered, and is suffering, damages in an amount to be proven at trial.

28

## COUNT IV – NEGLIGENCE
### (Against St. Paul and Colliers)

82.    Xpedient incorporates by reference Paragraphs 1 through 81 above as if fully set forth herein.

83.    At all times relevant hereto, St. Paul and/or Colliers maintained actual control of the Property and, as landlord and Property manager, owed a duty to Xpedient to use ordinary and reasonable care in the maintenance and management of the Property, including, but not limited to, ensuring all utilities and HVAC systems were working and operational, that the pipes and sprinkler systems were in good repair and protected against colder temperatures, and that the Property was generally fit for the purposes for which St. Paul and/or Colliers held it out for business.

84.    St. Paul and/or Colliers breached this duty by failing to ensure the utilities, including natural gas lines, were connected at the Property, failing to maintain the HVAC system in working order, failing to maintain the pipes and sprinkler system in good repair, and failing to protect the pipes and sprinkler system against colder temperatures.

85.    St. Paul and/or Colliers' breach was the actual and proximate cause of the Water Intrusion Event and the resulting loss and damage to the Property and the inventory that Xpedient facilitated storage of at the Property.

86.    As a result of St. Paul and/or Colliers' negligence, Xpedient has suffered, and is suffering, damages in an amount to be proven at trial.

## COUNT V – IMPLIED INDEMNITY
### (Against Colliers)

87.     Xpedient incorporates by reference Paragraphs 1 through 86 above as if fully set forth herein.

88.     Colliers, as manager of the Property, accepted a duty to maintain and manage the Property for all Property tenants, including Xpedient.

89.     At all times relevant hereto, Colliers maintained actual control of the Property and owed a duty to Xpedient to use ordinary and reasonable care in the maintenance and management of the Property, including, but not limited to, ensuring all utilities and HVAC systems were working and operational, that the pipes and sprinkler systems were in good repair and protected against colder temperatures, and that the Property was generally fit for the purposes for which St. Paul and/or Colliers held it out for business.

90.     Colliers breached this duty by failing to ensure the utilities, including natural gas lines, were connected at the Property, failing to maintain the HVAC system in working order, failing to maintain the pipes and sprinkler system in good repair, and failing to protect the pipes and sprinkler system against colder temperatures.

91.     Colliers' breach was the actual and proximate cause of the Water Intrusion Event and the resulting loss and damage to the Property and the inventory that Xpedient facilitated storage of at the Property.

92.     In Tennessee, "[o]ne who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover reasonable compensation for loss of time, attorney fees and other expenditures thereby suffered or incurred in the earlier action." *Pullman Standard v. Abex Corp.*, 693 S.W.2d 336, 340 (Tenn. 1985) (quoting and adopting Restatement (Second) of Torts, § 914(2) (1979)).

93.     Xpedient is incurring significant attorneys' fees, costs and expenses defending against the causes of action asserted in Agilent's Second Amended Complaint, causes of action which are the result of Colliers' negligence.

94.     Colliers is obligated under Tennessee law to indemnify Xpedient for these attorneys' fees costs and expenses incurred in defending against the causes of action asserted in the Second Amended Complaint, and any subsequent or further costs and expenses incurred by Xpedient as a result of Colliers' negligence.  *See Pullman Standard*, 693 S.W.2d at 338.

## COUNT VI – BREACH OF CONTRACT
### (Against Colliers)

95.     Xpedient incorporates by reference Paragraphs 1 through 94 above as if fully set forth herein.

96.     The Management and Leasing Agreement is a valid and enforceable contract between St. Paul and Colliers.

97.     Pursuant to Section 2.5 of the Management and Leasing Agreement, Colliers agreed to maintain, repair and/or replace or cause to be maintained repaired and/or replaced the Property for the benefit of the Property tenants.  *See* Ex. 1 § 2.5.

98.     Pursuant to Section 2.6 of the Management and Leasing Agreement, Colliers agreed to make utilities contracts for the benefit of the Property tenants, including contracts for electricity and gas.  *See* Ex. 1 § 2.6.

99.     Xpedient, as a Property tenant, was an intended third-party beneficiary of the Management and Leasing Agreement.

100.    Colliers materially breached the Lease and Management Agreement by failing to ensure the utilities, including natural gas lines, were connected at the Property, failing to maintain the

31

HVAC system in working order, failing to maintain the pipes and sprinkler system in good repair, and failing to protect the pipes and sprinkler system against colder temperatures.

101.    Colliers' breach of the Management and Leasing Agreement is the direct and proximate cause of damages and material harm suffered by Xpedient.

102.    As a result of Colliers' breach of the Management and Leasing Agreement, Xpedient has suffered, and is suffering, damages in an amount to be proven at trial.

**WHEREFORE**, Xpedient respectfully requests that the Court enter judgment in favor of Xpedient and against St. Paul and Colliers as follows:

A.    Enter judgment against St. Paul and Colliers for damages in an amount to be proven at trial resulting from St. Paul's breach of the Lease Agreement and Colliers' breach of the Management and Leasing Agreement;

B.    Order St. Paul to defend, indemnify, and hold harmless Xpedient against the claims alleged in the Second Amended Complaint by Agilent;

C.    Order Colliers to defend, indemnify, and hold harmless Xpedient against the claims alleged in the Second Amended Complaint by Agilent;

D.    Award Xpedient the costs and expenses, including attorneys' fees, to which it is contractually entitled;

E.    Award Xpedient the costs and expenses, including attorneys' fees, to which it is entitled pursuant to *Pullman Standard v. Abex Corp.*, 693 S.W.2d 336 (Tenn. 1985);

F.    Award pre- and post-judgment interest on damages owed by St. Paul and Colliers; and

G.    Award any and all other relief to which Xpedient appears entitled.

32

RESPECTFULLY SUBMITTED, this the 17th day of April 2026.

/s/Andrew B. Schrack
William P. Thomas (MS 102209)
Andrew B. Schrack (TN 037624)
**BUTLER SNOW LLP**
6075 Poplar Ave., Ste. 500
Memphis, TN 38119
T: 901-680-7200
F: 901-680-7201
will.thomas@butlersnow.com
andrew.schrack@butlersnow.com

Peter C. Sales (No. 25067)
Elizabeth T. Petras (No. 42070)
**Bradley Arant Boult Cummings LLP**
1221 Broadway, Suite 2400
Nashville, Tennessee 37203
P: (615) 252-2365
F: (615) 252-6365
psales@bradley.com
bpetras@bradley.com

*Attorneys for Defendant Xpedient Management
Group, LLC*

33

## CERTIFICATE OF SERVICE

I hereby certify that on April 17, 2026 a copy of the foregoing document has been filed electronically.  Notice of this filing will be served by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  All other parties will be served via electronic mail and/or first-class United States Mail, postage prepaid.  Parties may access this filing through the Court's electronic filing system.

/s/ Andrew B. Schrack
Andrew B. Schrack (TN 037624)