IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE, AT MEMPHIS

| | |
|---|---|
| **AGILENT TECHNOLOGIES, INC.,** *Plaintiff,* v. **XPEDIENT MANAGEMENT GROUP, LLC, ST. PAUL FIRE AND MARINE INSURANCE COMPANY, COLLIERS MANAGEMENT SERVICES – MEMPHIS, LLC** *Defendants* | |
| **XPEDIENT MANAGEMENT GROUP, LLC.,** *Cross-Plaintiff,* v. **ST. PAUL FIRE AND MARINE INSURANCE COMPANY and COLLIERS MANAGEMENT SERVICES – MEMPHIS, LLC,** *Cross-Defendants* | **NO.   2:25-cv-02101-BCL-cgc** |
| **FACTORY MUTUAL INSURANCE CO., as subrogee of Agilent Technologies, Inc.,** *Plaintiff,* v. **XPEDIENT MANAGEMENT GROUP, LLC, ST. PAUL FIRE AND MARINE INSURANCE COMPANY and COLLIERS MANAGEMENT SERVICES-MEMPHIS, LLC,** *Defendants* | **Consolidated with** **NO.   2:25-cv-02424-BCL-tmp** **JURY DEMANDED** |

**DEFENDANT/CROSS-DEFENDANT COLLIERS MANAGEMENT SERVICES –
MEMPHIS, LLC'S ANSWER TO THE CROSS-CLAIM OF DEFENDANT/CROSS-
PLAINTIFF XPEDIENT MANAGEMENT GROUP, LLC [Doc. 158]**

COMES NOW the Defendant/Cross-Defendant, Colliers Management Services-Memphis,

LLC ("Colliers"), and for its Answer to the Cross-Claim asserted against it by Defendant/Cross-

Plaintiff Xpedient Management Group, LLC ("Xpedient") [Doc. 158], states as follows:

1

## **FIRST DEFENSE**

In response to the correspondingly numbered paragraphs of Xpedient's Cross-Claim, Colliers states as follows. The headings and subheadings within the Cross-Claim are Xpedient's own characterizations; Colliers reproduces certain of them solely for ease of reference and denies each such heading and subheading to the extent it asserts or implies any wrongdoing by, or liability of, Colliers.

## **PARTIES, JURISDICTION, AND VENUE**

1. Colliers is without sufficient information to admit or deny the allegations contained in Paragraph 1 of the Cross-Claim, and therefore denies the same.

2. Colliers is without sufficient information to admit or deny the allegations contained in Paragraph 2 of the Cross-Claim, and therefore denies the same.

3. Colliers admits that it is a Tennessee limited liability company with its principal place of business located at 6363 Poplar Avenue, Suite 400, Memphis, Tennessee 38119. Any remaining allegations are denied.

4. Paragraph 4 states a legal conclusion regarding subject matter jurisdiction to which no response is required. To the extent a response is required, Colliers admits that this Court has subject matter jurisdiction over the claims asserted, but denies Xpedient's remaining characterizations as pled.

5. Paragraph 5 states a legal conclusion regarding venue to which no response is required. To the extent a response is required, Colliers admits that venue is proper in this District, but denies Xpedient's remaining characterizations as pled.

2

## FACTUAL ALLEGATIONS

6. Colliers incorporates by reference its responses to Paragraphs 1 through 5 of the Cross-Claim as if fully set forth herein.

7. Colliers admits that St. Paul is the owner of the real property located at 4601 Cromwell Avenue, Building 20, Memphis, Tennessee 38118 (the "Cromwell Warehouse" or "Property"). Any remaining allegations are denied.

8. Colliers admits that it entered into a Management and Leasing Agreement with St. Paul under which Colliers served as property manager for the Property, and that the exhibited written agreement speaks for itself. Colliers denies Xpedient's characterizations to the extent inconsistent with the writing. Any remaining allegations are denied.

9. Colliers is without sufficient information to admit or deny the allegations contained in Paragraph 9, as they pertain to communications and discovery exchanges between Xpedient and St. Paul, and therefore denies the same.

10. Colliers admits that the Management and Leasing Agreement contains a Section 2.5 and that the written agreement speaks for itself. Colliers denies Xpedient's characterizations, implications, and legal conclusions regarding the scope of Colliers' contractual duties as pled, including any implication that Colliers owed independent contractual duties to Xpedient. Colliers affirmatively states that its authority under the Management and Leasing Agreement was strictly limited, including by provisions withholding authority to make structural changes and prohibiting Colliers from incurring unbudgeted expenses in excess of $5,000 without St. Paul's prior written approval. Colliers further affirmatively states that duties as to the Cromwell Warehouse were owed by others, expressly including Xpedient as to its exclusively controlled leased premises. Any remaining allegations are denied.

11. Colliers admits that the Management and Leasing Agreement contains a Section 2.6 and that the written agreement speaks for itself. Colliers denies Xpedient's characterizations, implications, and legal conclusions as pled, including any implication that Colliers owed independent contractual duties to Xpedient. Colliers affirmatively states that, by its express terms, Section 2.6 only authorized utility contracts "[t]o the extent required of Owner in leases pertaining to the Property," and in each case expressly required "Owner's prior approval" of the terms of such contracts. Any remaining allegations are denied.

12. Colliers admits that St. Paul, as lessor, and Xpedient, as lessee, entered into a commercial lease agreement for warehouse space at the Cromwell Warehouse on or about May 18, 2023, and that the exhibited written agreement speaks for itself. Colliers affirmatively states that it was not a party to the Lease Agreement. Any remaining allegations are denied.

13. Colliers admits that the Lease Agreement contains a Section 4.01 and that the written agreement speaks for itself. Colliers affirmatively states that it was not a party to the Lease Agreement. Colliers expressly denies Xpedient's characterizations and legal conclusions as pled. Colliers affirmatively states that Section 4.01 expressly provides that "Lessee [Xpedient] shall pay the cost of all utility services, including, but not limited to, initial connection charges, all charges for gas..." Colliers further affirmatively states that Xpedient subsequently executed a Memorandum Confirming Term, accepting "full and complete possession" of the leased premises and confirming that all commitments, representations, and landlord improvements were fully satisfied and completed to its satisfaction. Any remaining allegations are denied.

14. Colliers admits that the Lease Agreement contains a Section 5.06 and that the written agreement speaks for itself. Colliers affirmatively states that it was not a party to the Lease Agreement. Colliers expressly denies Xpedient's characterizations, implications, and legal

conclusions as pled. Colliers affirmatively states that Section 5.06 expressly provides that "Lessee [Xpedient] shall be responsible for such HVAC system beginning on the Commencement Date throughout the lease term." Colliers further affirmatively states that Xpedient subsequently executed a Memorandum Confirming Term, accepting "full and complete possession" of the leased premises and expressly confirming that "all commitments, representations and assurances" made to induce Xpedient into the Lease—which necessarily includes the Lessor's warranty contained in Section 5.06—were "fully satisfied." Any remaining allegations are denied.

15. Colliers admits that the Lease Agreement contains a Section 14.13 and that the written agreement speaks for itself. Colliers affirmatively states that it was not a party to the Lease Agreement. Colliers expressly denies Xpedient's characterizations, implications, and legal conclusions as pled. Colliers affirmatively states that Section 14.13 expressly conditions any such covenant, providing that it applies only "so long as Lessee [Xpedient] fully complies with all of the terms, covenants and conditions herein contained on Lessee's part to be kept and performed." Any remaining allegations are denied.

16. Colliers admits that on or about May 23, 2023, Xpedient sent an email to Colliers, and that the written communication speaks for itself. Colliers expressly denies Xpedient's characterizations, implications, and legal conclusions as pled. Colliers affirmatively states that Xpedient did not request Colliers to connect utilities with separate metering in this communication; rather, Xpedient's representative stated: "I was given your name as point of contact to discuss transition of utilities into our name. . . Do you have any information that I may need when I contact MLGW?" Any remaining allegations are denied.

5

17. Colliers admits that on May 23, 2023, it sent an email to Xpedient, and that the written communication speaks for itself. Colliers expressly denies Xpedient's characterizations, implications, and legal conclusions as pled. Any remaining allegations are denied.

18. Colliers is without sufficient information to admit or deny the allegations in Paragraph 18 regarding communications between Xpedient and MLGW, and therefore denies the same.

19. Colliers admits that, on or about May 30, 2023, it contacted Soefker to obtain a quote regarding the gas lines at the Property, and that the written communications speak for themselves. Any remaining allegations are denied.

20. Colliers admits, upon information and belief, that on or about May 30, 2023, MLGW sent correspondence to Xpedient regarding a General Power Service Agreement for account 730, and that the document speaks for itself. Colliers expressly denies Xpedient's characterizations and legal conclusions as pled. Colliers affirmatively states that the MLGW correspondence expressly required that Xpedient "must complete and sign a General Power Service Agreement with MLGW to ensure that you will accept service." Any remaining allegations are denied.

21. Colliers admits that on or about June 1, 2023, it received a quote from Soefker regarding gas separation work at the Property, and that the written document speaks for itself. Any remaining allegations are denied.

22. Colliers admits, upon information and belief, that Xpedient received a $15,000 invoice from MLGW for utilities. Colliers is without sufficient information to admit or deny the allegations in Paragraph 22 regarding Xpedient's purported internal investigations, and therefore denies the same. Any remaining allegations are denied.

23. Colliers admits that on or about June 9, 2023, it sent an email to Xpedient regarding the MLGW utility accounts for the Property, and that the written communication speaks for itself. Colliers denies Xpedient's characterizations as pled, and denies any remaining allegations.

24. Colliers is without sufficient information to admit or deny the allegations in Paragraph 24 regarding purported communications exclusively between Xpedient and MLGW, and therefore denies the same. Colliers expressly denies Xpedient's characterizations, implications, and legal conclusions as pled.

25. Colliers admits that on or about June 26, 2023, it sent an email to Soefker regarding proceeding with the separation of the meters at the Property, and that the written communication speaks for itself. Any remaining allegations are denied.

26. Colliers admits that on or about July 5, 2023, Xpedient sent an email requesting an update regarding "HVAC" work at the Property, and that the written communication speaks for itself. Any remaining allegations are denied.

27. Colliers admits that on or about July 6, 2023, it responded to Xpedient that it was awaiting an update from a vendor, and that the written communication speaks for itself. Any remaining allegations are denied.

28. Colliers admits that on or about July 7, 2023, it sent an email to Xpedient stating that a lift was to be delivered to the Property so that the gas could be split and a meter set, and that the written communication speaks for itself. Colliers expressly denies Xpedient's characterizations as pled, and denies any remaining allegations.

29. Colliers is without sufficient information to admit or deny the allegations in Paragraph 29 regarding purported communications exclusively between Xpedient and MLGW, and therefore denies the same. Colliers admits, upon information and belief, that the MLGW account associated

with Xpedient's leased premises was held in the name of Xpedient's Director of Operations. Colliers expressly denies Xpedient's characterizations as pled, and denies any remaining allegations.

30. Colliers is without sufficient information to admit or deny the allegations in Paragraph 30 regarding communications between Xpedient and MLGW, and therefore denies the same.

31. Colliers is without sufficient information to admit or deny the allegations in Paragraph 31 regarding notices purportedly issued by MLGW to Xpedient, including the alleged receipt of a notice "dated July 19, 2025," and therefore denies the same. Colliers expressly denies Xpedient's characterizations as pled.

32. Colliers admits that on or about August 7, 2023, Soefker sent an email to Colliers regarding a mechanical inspection for Suite 10, and that the written communication speaks for itself. Any remaining allegations are denied.

33. Colliers is without sufficient information to admit or deny the allegations in Paragraph 33 regarding notices purportedly issued by MLGW to Xpedient, including the alleged receipt of a notice "dated August 17, 2025," and therefore denies the same. Colliers expressly denies Xpedient's characterizations as pled.

34. Colliers admits that on or about September 26, 2023, Soefker sent an email to Colliers indicating that it went to the Property to perform a heat start-up but the gas meter was locked, and that the written communication speaks for itself. Any remaining allegations are denied.

35. Colliers admits that on or about September 26, 2023, it sent an email responding to Soefker regarding the gas meter, and that the written communication speaks for itself. Colliers expressly denies Xpedient's characterizations as pled, and denies any remaining allegations.

8

36. Colliers admits that on or about October 4, 2023, Xpedient sent an email to Colliers regarding an MLGW invoice, and that the written communication speaks for itself. Colliers expressly denies Xpedient's characterizations as pled, and denies any remaining allegations.

37. Colliers admits that on or about October 5, 2023, Xpedient sent an email to Colliers regarding an MLGW account. Colliers affirmatively states that its property manager personally and promptly responded to the email, advising that she was out of the office and would review the information, and that the written communications speak for themselves. Colliers expressly denies Xpedient's characterizations as pled, and denies any remaining allegations.

38. Colliers admits, upon information and belief, that on or about October 9, 2023, Xpedient received a cut-off notice from MLGW regarding the 730 account, and that the written document speaks for itself. Any remaining allegations are denied.

39. Colliers admits that on or about October 9, 2023, an email exchange occurred between Xpedient and Colliers regarding an MLGW cut-off notice, and that the written communications speak for themselves. Colliers expressly denies Xpedient's characterizations as pled, and denies any remaining allegations.

40. Colliers admits, upon information and belief, that Xpedient received a cut-off notice from MLGW on or about October 17, 2023. Any remaining allegations are denied.

41. Colliers is without sufficient information to admit or deny the allegations in Paragraph 41 regarding purported communications exclusively between Xpedient and MLGW, and therefore denies the same.

42. Colliers admits that on or about October 18, 2023, Soefker sent an email to Colliers regarding the gas meter, and that the written communication speaks for itself. Colliers expressly denies Xpedient's characterizations as pled, and denies any remaining allegations.

43. Colliers admits, upon information and belief, that on or about October 25, 2023, Xpedient received a notification from MLGW indicating billing would be delayed for further investigation, and that the written document speaks for itself. Any remaining allegations are denied.

44. Colliers admits that on or about January 4, 2024, it received an inspection report from Security Fire Protection Company, Inc. containing the quoted recommendation, and that the written report speaks for itself. Colliers affirmatively states that the report cited no deficiency or violation of the wet pipe sprinkler system, including for any lack of antifreeze or insulation. Colliers denies that it retained operational control or authority to maintain the temperature within Xpedient's leased premises. Colliers affirmatively states that Xpedient executed a Memorandum Confirming Term accepting "full and complete possession" of its space, thereby assuming exclusive control over its temperature environment. Colliers further affirmatively states that it deployed portable space heaters to successfully protect from damage in the vacant portions of the building within its operational control. Any remaining allegations are denied.

45. Colliers admits that the gas meter serving the Property was unlocked by MLGW on or about April 10, 2024. Colliers expressly denies Xpedient's characterizations as pled, including any implication of wrongdoing or unreasonable delay by Colliers. Colliers affirmatively states that it diligently engaged contractors to physically separate the gas lines and pass a pressure test, and that the ensuing delays in activation resulted from Xpedient's failure to properly establish and secure its MLGW utility account, as well as from MLGW's administrative and permitting processes. Any remaining allegations are denied.

10

46. Colliers admits that the HVAC system for the offices and the ceiling heaters in the warehouse at the Cromwell Warehouse used natural gas. Colliers expressly denies Xpedient's characterizations as pled, and denies any remaining allegations.

47. Colliers denies the allegations in Paragraph 47 as pled.

48. Colliers admits that a winter freeze occurred in the Memphis region and that on or about January 17, 2024, temperatures were below freezing. Colliers further admits that a pipe in the fire sprinkler system burst and water entered the Property, but affirmatively states that said pipe burst and water entry occurred within the leased premises exclusively controlled by Xpedient. Colliers is without sufficient information to admit or deny the nature or extent of the alleged damage to inventory stored at the Property, and therefore denies the same. Colliers denies any remaining allegations as pled.

49. The allegations in this paragraph are not directed at Colliers and, thus, no response from Colliers is required. To the extent further response is required, Colliers is without sufficient information to admit or deny the allegations in Paragraph 49, and therefore denies the same.

50. The allegations in this paragraph are not directed at Colliers and, thus, no response from Colliers is required. To the extent further response is required, Colliers is without sufficient information to admit or deny the allegations in Paragraph 50, and therefore denies the same.

51. The allegations in this paragraph are not directed at Colliers and, thus, no response from Colliers is required. To the extent further response is required, Colliers is without sufficient information to admit or deny the allegations in Paragraph 51, and therefore denies the same.

52. Colliers admits that Agilent filed this action on or about February 3, 2025, and that the record speaks for itself. Colliers denies that it was negligent, breached any duty, or caused any damages, and denies any remaining allegations and characterizations in Paragraph 52.

53. Colliers admits that the Lease Agreement contains a Section 7.08 and that the written agreement speaks for itself. Colliers was not a party to the Lease Agreement. Colliers denies Xpedient's characterizations and legal conclusions as pled, and denies any remaining allegations.

54. The allegations in this paragraph are not directed at Colliers and, thus, no response from Colliers is required. To the extent further response is required, Colliers is without sufficient information to admit or deny the allegations in Paragraph 54 regarding indemnification between St. Paul and Xpedient, and therefore denies the same.

55. The allegations in this paragraph are not directed at Colliers and, thus, no response from Colliers is required. To the extent further response is required, Colliers is without sufficient information to admit or deny the allegations in Paragraph 55, and therefore denies the same.

56. The allegations in this paragraph are not directed at Colliers and, thus, no response from Colliers is required. To the extent further response is required, Colliers is without sufficient information to admit or deny the allegations in Paragraph 56 regarding indemnification and the Lease Agreement between St. Paul and Xpedient. To the extent Paragraph 56 asserts or implies any wrongdoing by, or liability of, Colliers, the same is denied. Any remaining allegations are denied.

## COUNT I – BREACH OF CONTRACT
### (Against St. Paul)

Count I of the Cross-Claim, including Paragraphs 57 through 64, is asserted solely against St. Paul and does not assert any claim against Colliers; accordingly, no response from Colliers is required. To the extent Paragraph 57 re-incorporates prior allegations, Colliers re-incorporates its foregoing responses thereto. To the extent any further response to the allegations of Count I is deemed required of Colliers, those allegations are denied.

12

## COUNT II – BREACH OF INDEMNITY AGREEMENT
**(Against St. Paul)**

Count II of the Cross-Claim, including Paragraphs 65 through 74, is asserted solely against St. Paul and does not assert any claim against Colliers; accordingly, no response from Colliers is required. To the extent Paragraph 65 re-incorporates prior allegations, Colliers re-incorporates its foregoing responses thereto. To the extent any further response to the allegations of Count II is deemed required of Colliers, those allegations are denied.

## COUNT III – BREACH OF COVENANT OF QUIET ENJOYMENT
**(Against St. Paul)**

Count III of the Cross-Claim, including Paragraphs 75 through 81, is asserted solely against St. Paul and does not assert any claim against Colliers; accordingly, no response from Colliers is required. To the extent Paragraph 75 re-incorporates prior allegations, Colliers re-incorporates its foregoing responses thereto. To the extent any further response to the allegations of Count III is deemed required of Colliers, those allegations are denied.

## COUNT IV – NEGLIGENCE
**(Against St. Paul and Colliers)**

82. Colliers incorporates by reference its responses to Paragraphs 1 through 81 of the Cross-Claim as if fully set forth herein.

83. Colliers denies the allegations contained in Paragraph 83 as directed to Colliers. Colliers denies that it maintained actual operational control over Xpedient's leased premises and denies that it owed Xpedient the duties alleged with respect to Xpedient's exclusively controlled space. Colliers affirmatively states that it acted at all relevant times solely as the disclosed property management agent of St. Paul, with authority strictly limited by the Management and Leasing Agreement, and that Xpedient exercised exclusive possession and control of its leased premises, including by its execution of the Memorandum Confirming Term. The allegations are pled against

13

Colliers and St. Paul jointly and in the alternative, and Colliers is without sufficient information to admit or deny, and cannot answer on St. Paul's behalf, the allegations as directed to St. Paul. Any remaining allegations are denied.

84. Colliers denies the allegations contained in Paragraph 84 as directed to Colliers. Colliers affirmatively states that the physical separation of the gas lines was timely completed and tested; that any delay in gas activation was attributable to Xpedient and MLGW; that Colliers deployed portable space heaters to protect the vacant portions of the building within its operational control; that the wet pipe sprinkler system functioned as designed and required no antifreeze or insulation; and that the freeze within Xpedient's exclusively controlled premises resulted from Xpedient's own negligent failures. Any remaining allegations are denied.

85. Colliers denies the allegations contained in Paragraph 85 as directed to Colliers. Colliers affirmatively states that any damages were caused or contributed to by the fault of Xpedient, MLGW, and/or others, and not by any act or omission of Colliers. Any remaining allegations are denied.

86. Colliers denies the allegations contained in Paragraph 86 as directed to Colliers, and denies that it caused any loss or damage. Colliers is without sufficient information to admit or deny the nature, extent, or amount of Xpedient's claimed damages, and therefore denies the same.

## COUNT V – IMPLIED INDEMNITY
### (Against Colliers)

87. Colliers incorporates by reference its responses to Paragraphs 1 through 86 of the Cross-Claim as if fully set forth herein.

88. Colliers denies the allegations contained in Paragraph 88. Colliers denies that it accepted or owed any duty to Xpedient to maintain or manage Xpedient's exclusively controlled leased premises, and affirmatively states that it acted solely as the disclosed property management

14

agent of St. Paul pursuant to a written Management and Leasing Agreement. Any remaining allegations are denied.

89. Colliers denies the allegations contained in Paragraph 89 for the reasons set forth in its response to Paragraph 83, which is incorporated herein. Any remaining allegations are denied.

90. Colliers denies the allegations contained in Paragraph 90 for the reasons set forth in its response to Paragraph 84, which is incorporated herein. Any remaining allegations are denied.

91. Colliers denies the allegations contained in Paragraph 91 for the reasons set forth in its response to Paragraph 85, which is incorporated herein. Any remaining allegations are denied.

92. Paragraph 92 sets forth a quotation of legal authority and a legal conclusion to which no response is required. To the extent a response is required, Colliers denies that the cited authority entitles Xpedient to any recovery from Colliers, and affirmatively states that Colliers committed no tort and that Xpedient is not a passive party entitled to indemnity.

93. Colliers denies the allegations contained in Paragraph 93. Colliers denies that it was negligent or that any attorneys' fees, costs, or expenses incurred by Xpedient resulted from any act or omission of Colliers, and affirmatively states that Xpedient is being sued for its own alleged conduct. Any remaining allegations are denied.

94. Colliers denies the allegations contained in Paragraph 94, including the legal conclusion that Colliers is obligated to indemnify Xpedient. Any remaining allegations are denied.

## COUNT VI – BREACH OF CONTRACT
### (Against Colliers)

95. Colliers incorporates by reference its responses to Paragraphs 1 through 94 of the Cross-Claim as if fully set forth herein.

96. Colliers admits that the Management and Leasing Agreement is a contract between St. Paul and Colliers and that the written agreement speaks for itself. Any remaining allegations are denied.

97. Colliers admits that the Management and Leasing Agreement contains a Section 2.5 and that the written agreement speaks for itself. Colliers denies Xpedient's characterizations and legal conclusions as pled, including any contention that the Management and Leasing Agreement was made for the benefit of, or conferred enforceable rights upon, Xpedient. Colliers affirmatively states that its duties ran to St. Paul, the property owner, and were subject to the limitations set forth in the Management and Leasing Agreement. Any remaining allegations are denied.

98. Colliers admits that the Management and Leasing Agreement contains a Section 2.6 and that the written agreement speaks for itself. Colliers affirmatively states that, by its terms, any such utility contracts were to be made only to the extent required of the Owner and in each case subject to St. Paul's prior approval. Colliers denies Xpedient's characterizations and legal conclusions as pled, including any contention that such provision was made for the benefit of, or conferred enforceable rights upon, Xpedient. Any remaining allegations are denied.

99. Colliers denies the allegations contained in Paragraph 99. Colliers expressly denies that Xpedient was an intended third-party beneficiary of the Management and Leasing Agreement, and affirmatively states that the Management and Leasing Agreement was entered into solely between St. Paul and Colliers, for St. Paul's benefit, and that Xpedient was, at most, an incidental beneficiary with no enforceable rights thereunder. Any remaining allegations are denied.

100. Colliers denies the allegations contained in Paragraph 100. Colliers denies that it breached the Management and Leasing Agreement, and denies that it was a party to the Lease Agreement between St. Paul and Xpedient. Furthermore, Colliers affirmatively states that it

performed its obligations subject to the limitations of the Management and Leasing Agreement and that any delay in gas activation or the freeze within Xpedient's exclusively controlled premises resulted from the conduct of Xpedient, MLGW, and/or others, and not from any act or omission of Colliers. Any remaining allegations are denied.

101.    Colliers denies the allegations contained in Paragraph 101.

102.    Colliers denies the allegations contained in Paragraph 102, and denies that Xpedient sustained any damages as a result of any act or omission of Colliers. Colliers is without sufficient information to admit or deny the nature, extent, or amount of Xpedient's claimed damages, and therefore denies the same.

Colliers denies that Xpedient is entitled to any of the relief requested in the WHEREFORE clause and prayer for relief of the Cross-Claim, whether against Colliers or otherwise, and denies all allegations in the Cross-Claim not expressly admitted herein.

### SECOND DEFENSE

Xpedient's Cross-Claim, in whole or in part, fails to state a claim against Colliers upon which relief can be granted.

### THIRD DEFENSE

Colliers relies upon the doctrine of modified comparative fault as to all named parties in this case. The finder of fact will apportion fault among all named parties that caused or contributed to any alleged damages in accordance with the principles of modified comparative fault. Colliers alleges that any damages claimed by Xpedient were caused entirely or contributed to by the fault of: Xpedient, including for failing to properly establish and secure its MLGW utility account and for failing to maintain active gas service or adequate heat within its leased space; MLGW, including for locking the gas meter and failing to restore gas service, and/or W.A. Soefker & Son,

17

Inc. d/b/a Soefker Services, for any failures contributing to the lack of gas not otherwise attributable to Xpedient and/or MLGW; Agilent, including for failing to specify sufficient product storage, security, and protection requirements, for failing to advise as to product sensitivity, and/or for failing to mitigate; St. Paul, including for any acts, omissions, or breaches on its part or as to duties retained by St. Paul as property owner; and any other persons or entities whose fault caused or contributed to the alleged damages, as may become apparent through ongoing investigation and discovery, as to all of which Colliers reserves all rights.

## FOURTH DEFENSE

Xpedient's alleged damages were caused, in whole or in part, by the acts or omissions of third parties not under Colliers' control and for which Colliers is in no way responsible or liable. No act or omission of Colliers was the proximate cause of any damages, injury, or loss to Xpedient.

## FIFTH DEFENSE

Xpedient's claims against Colliers are or may be barred, in whole or in part, by waiver, laches, and estoppel, including equitable, judicial, and/or administrative estoppel, and including by reason of Xpedient's execution of the Memorandum Confirming Term.

## SIXTH DEFENSE

Colliers played no role in causing the damages claimed by Xpedient.

## SEVENTH DEFENSE

Colliers did not breach any duty owed to Xpedient. Colliers exercised due care and diligence in all of the matters alleged.

## EIGHTH DEFENSE

Xpedient and/or its subrogor or principal failed to mitigate the damages alleged.

18

## NINTH DEFENSE

Xpedient has not sustained any damages that were caused by Colliers or for which Colliers is liable.

## TENTH DEFENSE

To the extent Xpedient's claims derive from the underlying loss of Agilent's inventory, those claims are barred, in whole or in part, or must be reduced, by assumption of risk, failure to mitigate, and/or spoliation. Agilent is a sophisticated commercial entity that consciously assumed the risk of the loss by storing highly sensitive inventory under agreements containing a capped limitation of liability grossly below the value of its inventory claimed in this case, and thereafter failed to reasonably mitigate its damages and unilaterally disposed of and destroyed the allegedly damaged inventory before the parties could conduct comprehensive, independent testing to verify the extent of the damage or the viability of salvage. Accordingly, Colliers is entitled to a spoliation instruction and/or other relief, and any recovery derived from that loss must be barred or proportionally reduced.

## ELEVENTH DEFENSE

Colliers asserts all defenses available under the agreements between and among the parties. The terms of those agreements are incorporated by reference herein.

## TWELFTH DEFENSE

Colliers acted at all relevant times solely as the disclosed property management agent for the property owner, St. Paul, pursuant to the Management and Leasing Agreement, and owed no independent legal duty or contractual obligation to Xpedient. Colliers' authority to act regarding the Cromwell Warehouse was strictly limited by the express terms of the Management and Leasing Agreement, which withheld authority to make structural changes and prohibited Colliers from

19

incurring unbudgeted expenses in excess of $5,000 without St. Paul's prior written approval. The subject premises were delivered to Xpedient, who subsequently executed a Memorandum Confirming Term expressly acknowledging that all landlord improvements were completed to its satisfaction and accepting full and complete possession of the leased premises. A true and correct copy of the Memorandum Confirming Term is attached hereto as Exhibit A (redacted). Accordingly, Xpedient exercised exclusive operational control over the subject premises at the time of the alleged incident, severing any purported duty Colliers may have owed regarding the conditions within that exclusively controlled space.

**THIRTEENTH DEFENSE**

Xpedient's tort claims against Colliers are barred, in whole or in part, by the economic loss doctrine to the extent Xpedient seeks to recover purely economic losses. Colliers was not a party to the commercial bailment, the Master Operating Services Agreement, or the Site Operating Agreement between Agilent and Xpedient, and the economic loss doctrine bars the use of tort claims against a non-party property management agent to recover purely economic expectations arising from those contracts.

**FOURTEENTH DEFENSE**

To the extent any claim against Colliers is premised upon the Memphis City Code or the Fire Code, such claim is barred because those codes do not establish a standard of care, nor form the basis for civil liability, regarding the specific type of harm alleged. The cited codes are public safety ordinances enacted to protect the public and property from fire and fire-related hazards, not to protect a commercial tenant's inventory from water damage caused by dropping ambient temperatures. Furthermore, NFPA 25 expressly permits the delegation of temperature-

20

maintenance responsibilities, which Xpedient assumed by taking exclusive operational control of the leased premises.

## FIFTEENTH DEFENSE

Xpedient's claim for breach of the Management and Leasing Agreement fails because Xpedient was not an intended third-party beneficiary of that agreement and lacks standing to enforce it. The Management and Leasing Agreement was entered into solely between St. Paul and Colliers, for St. Paul's benefit; it conferred no enforceable rights upon Xpedient, who was at most an incidental beneficiary.

## SIXTEENTH DEFENSE

Xpedient's claim for implied indemnity fails because Colliers committed no tort or breach giving rise to any indemnity obligation; because Xpedient is an active participant alleged to have breached its own independent contractual, bailment, and common-law duties, rather than a passive or vicariously liable party; and because, under Tennessee's system of modified comparative fault, common-law indemnity among alleged joint tortfeasors is unavailable, each party instead bearing only its own apportioned share of fault. To the extent Xpedient seeks its attorneys' fees and expenses, the predicate for any such recovery fails because Xpedient is sued for its own alleged conduct and not solely by reason of any conduct of Colliers.

## SEVENTEENTH DEFENSE

Colliers owed no independent legal duty to Xpedient with respect to the conditions within Xpedient's exclusively leased and exclusively controlled premises. Xpedient's exclusive possession and control of those premises, confirmed by its execution of the Memorandum Confirming Term, together with Colliers' status as the disclosed and limited agent of St. Paul, foreclose the existence of any such duty.

21

## EIGHTEENTH DEFENSE

Colliers does not, by this Answer, waive and expressly reserves any and all rights to assert cross-claims, counterclaims, third-party claims, or claims for contribution and/or indemnity against any party or non-party, including by timely amendment, as may be warranted by ongoing investigation and discovery.

## NINETEENTH DEFENSE

Colliers reserves the right to amend this Answer to assert such other and further defenses as may become apparent through further investigation and discovery.

## TWENTIETH DEFENSE

All allegations in the Cross-Claim not heretofore admitted, explained, or denied are here and now denied as though specifically denied herein.

WHEREFORE, having fully answered the Cross-Claim of Xpedient, Colliers respectfully prays for the following relief from this Honorable Court:

1.  That Xpedient's Cross-Claim against Colliers be denied and dismissed with prejudice;

2.  That this case be tried before a jury; and

3.  For such other and further relief as this Honorable Court deems just and proper.

This the 29th day of June 2026.

*/s/ John W. Butler, Esq.*
John W. Butler, BPR #014771
Grant E. Mitchell, BPR #036878
BUTLER, VINES AND BABB, P.L.L.C.
2701 Kingston Pike, Knoxville, TN 37919
Phone/Fax: (865) 244-3925
jbutler@bvblaw.com
gmitchell@bvblaw.com
*Attorneys for Defendant Colliers Management Services –*
*Memphis, LLC*

22

## CERTIFICATE OF SERVICE

I hereby certify that on June 29, 2026, I caused a copy of the above and foregoing document

to be served on all counsel by electronic mail.

Amber S. Finch, Esq.
Katherine Goetz, Esq.
Margaret C. McDonald, Esq.
Reed Smith, LLP
515 South Flower, Suite 4300
Los Angeles, CA 90071
(213) 457-8000
afinch@reedsmith.com
kgoetz@reedsmith.com
mcmcdonald@reedsmith.com

*Attorneys for Plaintiff Agilent Technologies, Inc.*

Douglas F. Halijan, Esq.
Burch, Porter & Johnson PLLC
130 North Court Avenue
Memphis, TN 38103
(901) 524-5000
dhalijan@bpjlaw.com

*Attorney for Plaintiff Agilent Technologies, Inc.*

William P. Thomas, Esq.
Andrew B. Schrack, Esq.
Butler Snow LLP
6075 Poplar Avenue, Suite 500
Memphis, TN  38119
(901) 680-7200
will.thomas@butlersnow.com
andrew.schrack@butlersnow.com

*Attorneys for Defendant and Cross-Plaintiff Xpedient Management Group, LLC*

Sean W. Martin, Esq.
Carr Allison
633 Chestnut Street, Suite 2000
Chattanooga, TN  37450
(423) 648-9832
swmartin@carrallison.com

*Attorney for Defendant and Cross-Defendant St. Paul Fire and Marine Insurance Company*

S. Joe Welborn, Esq.
Smith Cashion & Orr, PLC
3100 West End Ave., Suite 800
Nashville, TN  37203
(615) 742-8586
jwelborn@smithcashion.com

*Attorney for Plaintiff Factory Mutual Insurance Company*

Peter C. Sales, Esq.
Elizabeth Thea Petras, Esq.
Bradley Arant Boult Cummings
1221 Broadway Suite 2400
Nashville, TN 37203
(615) 252-2365
psales@bradley.com
bpetras@bradle.com

*Attorneys for Defendant and Cross-Plaintiff Xpedient Management Group, LLC*

*/s/ John W. Butler, Esq.*
John W. Butler, BPR #014771
Grant E. Mitchell, BPR #036878

23