**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE, AT MEMPHIS**

| | |
|---|---|
| **AGILENT TECHNOLOGIES, INC.,**<br>*Plaintiff,*<br>v.<br>**XPEDIENT MANAGEMENT GROUP, LLC, et al.**<br>*Defendants* | **NO. 2:25-cv-02101-BCL-cgc**<br>**Consolidated with**<br>**NO. 2:25-cv-02424-BCL-tmp**<br>**JURY DEMANDED** |

**DEFENDANT COLLIERS MANAGEMENT SERVICES – MEMPHIS, LLC'S ANSWERS AND RESPONSES TO XPEDIENT MANAGEMENT GROUP, LLC'S FIRST SET OF DISCOVERY REQUESTS**

Pursuant to Federal Rules of Civil Procedure 26, 33, and 34, Defendant Colliers Management Services – Memphis, LLC ("Colliers") hereby answers and responds to the First Set of Discovery Requests served by Xpedient Management Group, LLC ("Xpedient"). Colliers objects to the definitions and instructions to the extent same attempt to impose any duties which differ from those applicable under applicable rules and law. Colliers' investigation is ongoing; these Answers and Responses are based upon information reasonably available to Colliers as of the date of service, and Colliers will supplement as required by Rule 26(e).

Xpedient's Requests are styled as directed to "Colliers International Group, Inc.," and Definition K purports to define "Colliers" to include "any affiliated property management entity acting on behalf of St. Paul." Colliers International Group, Inc. is not a party to this action. Defendant Colliers Management Services – Memphis, LLC answers and responds solely on its own behalf; objects to Definition K and to the styling of these Requests to the extent they purport

EXHIBIT
"14"

to impose discovery obligations on any non-party or affiliated entity; and construes "Colliers" throughout as referring to Colliers Management Services – Memphis, LLC.

**INTERROGATORIES**

**INTERROGATORY NO. 1:** Describe all communications from May 1, 2023, until December 31, 2024 between Colliers and MLGW concerning gas service, gas meters, meter releases, utility transfers, pressure testing, meter unlocking, account transfers, or service activation at the subject Premises.

**OBJECTION OF COUNSEL:** Colliers objects to this Interrogatory on the grounds that a demand to "describe all communications" over a twenty-month period is overly broad, unduly burdensome, and seeks a narrative enumeration more appropriately obtained from the produced correspondence itself. Colliers further objects to the extent this Interrogatory assumes Colliers had possession, custody, operational control over, or a legal or contractual duty to establish or activate the utility accounts and services for the tenant's leased premises, which were under the exclusive control and contractual responsibility of the tenant, Xpedient. The below Answer is provided subject to and without waiver of objections.

**ANSWER:** Throughout the stated period, Colliers personnel — principally Property Manager Shellie Moses and Assistant Property Manager Jessica Edmonds — communicated with MLGW representatives (including commercial representative Natasha Rosko and a representative identified in the produced correspondence as Luke) regarding: (a) the physical separation of the gas piping between the vacant suite and Xpedient's occupied suite performed by W.A. Soefker & Son, Inc., and the associated pressure testing, which the piping passed by August 2023, approving the infrastructure for a meter unlock; (b) MLGW's internal suite-numbering confusion and the resulting service-address and work-order errors; (c) Xpedient's failure to successfully establish its

utility account and pay required security deposits, which prevented the meter unlock; (d) MLGW's erroneous transfer of property-owner utility accounts into Xpedient's name and Colliers' assistance in having those accounts corrected; and (e) MLGW's attempted meter unlock on or about March 26, 2024, its report of a "bad regulator," the unit regulator repairs completed by W.A. Soefker & Son, Inc. on or about April 2, 2024, and the subsequent activation of gas service. Pursuant to Rule 33(d), the substance, dates, and participants of these communications may be ascertained from Colliers' produced email correspondence, notes, and the produced MLGW notices and invoices, the burden of deriving the answer being substantially the same for either party. Colliers further notes that MLGW has produced documents in this action in response to subpoena (including recorded calls).

**INTERROGATORY NO. 2:** State whether Colliers contends that Xpedient was responsible for obtaining gas service or HVAC functionality prior to January 2024 and, if so, identify every document supporting that contention.

**OBJECTION OF COUNSEL:** Colliers objects to this Interrogatory to the extent that "identify every document" seeks the premature and exhaustive marshaling of trial evidence. The below Answer is provided subject to and without waiver of objections.

**ANSWER:** Yes. Colliers contends that Xpedient was contractually responsible for obtaining gas service and for HVAC functionality within its leased premises prior to January 2024. Pursuant to Section 4.01 of the Lease Agreement, the Lessee (Xpedient) was responsible for the cost of all utility services, including initial connection charges, deposits, and establishing its own utility accounts; pursuant to Section 5.02, Xpedient was responsible for maintaining the HVAC system within its leased premises and keeping a regular schedule of preventative maintenance with a contractor. Xpedient further executed a Memorandum Confirming Term legally affirming that

all landlord improvements and mechanical systems were completed to its satisfaction and accepting "full and complete possession" of the leased premises. The documents supporting this contention include: the Standard Commercial Lease between St. Paul and Xpedient and the Memorandum Confirming Term (e.g., COLLIERS_00830–00892); MLGW's billing communications and cut-off notices evidencing Xpedient's unpaid utility invoices and deposit failures (e.g., COLLIERS_00802, COLLIERS_00807); the produced MLGW invoices and account records (e.g., COLLIERS_00990); the correspondence of Shellie Moses and Jessica Edmonds with MLGW and Xpedient produced in this action, particularly the May 23, 2023, email exchange between Jamie Davis of Xpedient and Colliers' Jessica Edmonds; and the written discovery responses of Xpedient and St. Paul served in this litigation.

**INTERROGATORY NO. 3:** Describe all inspections, audits, testing, or evaluations of the Fire Protection System at the subject Premises performed from January 1, 2023, through January 18, 2024.

**OBJECTION OF COUNSEL:** Colliers objects to this Interrogatory on the grounds that a demand to "describe all inspections, audits, testing, or evaluations" is overly broad and seeks a narrative enumeration more appropriately obtained from the produced inspection reports themselves. The below Answer is provided subject to and without waiver of objections.

**ANSWER:** Colliers contracted with Security Fire Protection Co., Inc., a third-party fire-protection vendor, to perform ongoing quarterly, annual, and five-year inspections, testing, and maintenance of the wet-pipe sprinkler system and associated fire protection systems at the Premises, pursuant to a Contract for Services dated August 5, 2022 (produced by Security Fire Protection in this action at SF 0224–0232). During the stated period, that program included: (a) periodic quarterly wet-sprinkler inspections during 2023, including the quarterly inspection

performed September 19, 2023 (e.g., COLLIERS_01362–01366); (b) a five-year inspection and internal pipe assessment performed December 6, 2023 (e.g., COLLIERS_01252); (c) a service response by Security Fire Protection on November 16, 2023, to a waterflow condition on System 1, resolved the same day (service order SV2311160114, e.g., COLLIERS_01038–01042); and (d) the scheduled inspections performed on January 4, 2024, generating four inspection reports: a quarterly Fire Alarm-Panel report (e.g., COLLIERS_01302–01305), a Fire Alarm Supplement-Devices report (e.g., COLLIERS_01269–01271), an annual Fire Hydrant report (e.g., COLLIERS_01319–01320), and the annual Wet-Sprinkler inspection report (e.g., COLLIERS_01321–01340). Pursuant to Rule 33(d), the date, scope, and findings of each inspection during the period may be ascertained from the Security Fire Protection inspection reports produced in this action (e.g., COLLIERS_00993–01026; COLLIERS_01252–01366; COLLIERS_01622–01634), the burden of deriving that information being substantially the same for either party. Because Colliers utilized Security Fire Protection as a third-party vendor for the inspection, testing, and maintenance of the fire protection systems, comprehensive historical inspection records are maintained by the vendor; Security Fire Protection has produced documents in this action in response to subpoena that are also responsive to this Interrogatory.

**INTERROGATORY NO. 4:** Describe all deficiencies identified in the Fire Protection System at the subject Premises from January 1, 2023, through January 18, 2024, and all actions taken in response.

**OBJECTION OF COUNSEL:** Colliers objects to this Interrogatory to the extent the undefined term “deficiencies” is vague and to the extent the Interrogatory conflates vendor recommendations, alarm-panel trouble conditions, and deficiency findings. The below Answer is provided subject to and without waiver of objections.

**ANSWER:** The produced Security Fire Protection inspection reports for the stated period reflect the following, which Colliers describes using the vendor's own classifications: (1) the January 4, 2024 annual Wet-Sprinkler inspection report identified no deficiency or violation concerning freeze protection, temperature maintenance, antifreeze, or insulation of the wet-pipe sprinkler system; the report separately recommended "maintaining proper temperature at a minimum of 40°F during the winter months" (e.g., COLLIERS_01321–01340, at COLLIERS_01323), a recommendation — not a deficiency finding — addressed to ambient building temperature; (2) the January 4, 2024 Wet-Sprinkler report noted one open item: multiple escutcheon rings missing in the east office area — a trim-hardware item located in the vacant east portion of the building under Colliers' operational control, with no relationship to freeze protection or to the January 17, 2024 pipe failures, which occurred in the tenant-occupied west suite; and (3) the January 4, 2024 fire-alarm reports noted that multiple detection devices were "in trouble" on the fire alarm control panel upon the technician's arrival and departure — alarm-panel conditions within the scope of the vendor's alarm servicing, and the Fire Alarm-Panel report reflects the system restored to normal on January 4, 2024. The open escutcheon-ring item was addressed by Security Fire Protection, which installed escutcheon plates on the office-area sprinkler heads on March 22, 2024, in the course of the freeze-repair work under Work Order SV2401171394 (Invoice SFP054236, produced with Colliers' supplemental production served contemporaneously herewith); the particulars of any separate alarm-vendor service addressing the duct-detector trouble conditions are being confirmed, and Colliers will supplement. The December 6, 2023 five-year internal inspection (e.g., COLLIERS_01252–01268) reported, per the vendor's own classifications: cross-main internal condition — pass; branch-line/head internal condition — fail, with a recommendation to flush System #1 — an internal pipe-condition item unrelated to freeze

protection; a recommendation to replace a 1-1/4″ drain-cup swing check valve; and a duct-detector trouble condition on the fire alarm panel. The 2023 quarterly wet-sprinkler reports reflect no reported deficiencies and no general comments for the March 15, 2023 and September 19, 2023 inspections (e.g., COLLIERS_01341; COLLIERS_01362) and a general comment of multiple duct detectors in trouble on June 20, 2023 (e.g., COLLIERS_01349). The wet-pipe sprinkler system was regularly inspected by Security Fire Protection, was mechanically sound, and functioned properly as designed when the tenant's failure to maintain ambient temperature above freezing in its exclusively controlled space caused the water within the pipes to freeze. Colliers will supplement this Answer pursuant to Rule 26(e) as its investigation continues.

**INTERROGATORY NO. 5:** Describe all actions taken by Colliers to prepare the Premises for freezing temperatures during the winter of 2023-2024.

**OBJECTION OF COUNSEL:** Colliers objects to this Interrogatory to the extent it assumes Colliers had operational control over, or a duty to prepare, the entirety of the Premises, including the leased premises under the exclusive control of the tenant, Xpedient. The below Answer is provided subject to and without waiver of objections.

**ANSWER:** To protect the areas of the building over which Colliers retained operational control from freezing temperatures during the winter of 2023-2024, Colliers took the following actions: (1) prior to and during winter weather events, including the January 2024 deep freeze, Colliers deployed temporary, portable electric space heaters in the vacant east-end space, as reflected in Work Order #137086 (requested January 9, 2024 and completed January 11, 2024; e.g., COLLIERS_01249; see also COLLIERS_01724–01725); the heaters were purchased and placed by Colliers maintenance technicians, including Anthony Allred, Jamie Brantley, and/or Tim Floyd, under the direction of Colliers' Property Managmeent personnel, and each heater was

equipped with a thermostat to automatically cycle on and off to maintain ambient temperatures above freezing; and (2) Colliers maintained its contract with Security Fire Protection Co., Inc. for ongoing quarterly, annual, and five-year inspections of the wet-pipe sprinkler system, including the annual inspection performed on January 4, 2024. As a direct result of these measures, no pipes froze or burst within the vacant, Colliers-controlled portions of the warehouse. Colliers affirmatively states that Xpedient accepted full and complete possession of its leased premises pursuant to the Memorandum Confirming Term and pursuant to the Lease Agreement, was solely responsible for establishing utilities, maintaining the HVAC system, and maintaining proper temperatures inside its exclusively controlled space.

**INTERROGATORY NO. 6:** Identify every contention Colliers makes that any act or omission of Xpedient caused or contributed to the January 2024 Incident.

**OBJECTION OF COUNSEL:** Colliers objects to this Interrogatory on the grounds that it seeks legal conclusions and the premature, exhaustive disclosure of trial strategy and the mental impressions of counsel. The below Answer is provided subject to and without waiver of objections.

**ANSWER:** Based upon facts presently known, Colliers contends that the following acts and omissions of Xpedient caused or contributed to the January 2024 Incident: (1) pursuant to Sections 4.01 and 5.02 of the Lease Agreement, Xpedient was contractually obligated to establish its own utility accounts, pay utility deposits, and maintain the HVAC system within its leased premises, and Xpedient executed a Memorandum Confirming Term accepting “full and complete possession” of the space, thereby assuming exclusive operational control over its temperature environment; (2) Xpedient failed to successfully establish its MLGW gas account and failed to pay required security deposits, with the direct result that the gas meter serving its premises remained locked and without gas; (3) despite the widely publicized impending historic freeze, and

actual knowledge that its gas meter was locked and its HVAC system was without heat, Xpedient negligently failed to deploy reasonable, available measures — such as the temporary electric space heaters Colliers successfully used in the vacant spaces — within its exclusively controlled space to prevent the pipes from freezing; and (4) Xpedient failed to maintain ambient temperatures above freezing in its exclusively controlled space, which caused the water within the wet-pipe sprinkler system and domestic lines in that space to freeze and burst. Persons with knowledge and documents supporting these contentions include those identified in Colliers' Answer to Interrogatory No. 2 above, the produced work-order records, and the written discovery responses of Xpedient served in this litigation. Colliers reserves the right to supplement this Answer as discovery, including expert discovery, progresses.

**INTERROGATORY NO. 7:** With respect to the Wet Sprinkler System Inspection Report from Security Fire Protection dated January 4, 2024, attached hereto as Exhibit 1 please state the following: (a) the date and time Colliers first received the inspection report; (b) the method by which the report was received, including whether it was received by email, mail, hand delivery, electronic portal, text message, or any other means; (c) the identity of every person who received the report or communication on behalf of Colliers; (d) the identity of every person to whom the report or communication was forwarded, distributed, transmitted, or discussed; (e) the date on which each such forwarding, distribution, transmission, or discussion occurred; (f) all actions taken by Colliers in response to the report; and (g) if Colliers contends it never received the report, identify all facts supporting that contention and identify all persons with knowledge thereof.

**OBJECTION OF COUNSEL:** Colliers objects to this Interrogatory on the grounds that it is compound, containing at least seven discrete subparts, and is overly broad and unduly burdensome to the extent it demands the identity of "every person" to whom the report was

"discussed" without limitation. Colliers further objects to subparts (d) and (e) to the extent they encompass post-loss communications among Colliers, St. Paul, their respective counsel, and insurer representatives, which are protected by the attorney-client privilege, the work-product doctrine, and the common-interest doctrine, as reflected in Colliers' privilege log correspondence. The below Answer is provided subject to and without waiver of objections.

**ANSWER:** Colliers states that Security Fire Protection Co., Inc., the third-party fire-protection vendor with which Colliers contracted for periodic inspections of the Premises' fire protection systems, performed scheduled inspections at the Cromwell Warehouse on January 4, 2024, generating four inspection reports: a quarterly Fire Alarm-Panel report, a Fire Alarm Supplement-Devices report, an annual Fire Hydrant report, and the annual Wet-Sprinkler inspection report referenced in this Interrogatory (Colliers' copy produced at, e.g., COLLIERS_01321–01340).

(a)–(b): Consistent with its Answers to Xpedient's Cross-Claims and its regular practice of receiving Security Fire Protection's inspection reports in the ordinary course of managing the property, Colliers received the January 4, 2024 report on or about January 4, 2024. The written Wet-Sprinkler inspection report is dated January 4, 2024, and identifies Colliers' then-Property Manager, Shellie Moses, as the vendor's designated contact. Security Fire Protection maintained a customer portal through which its inspection reports were made available; the copies of the January 4, 2024 reports located in Colliers' files were retrieved from that portal, and available records do not document when the reports were first published to, or first accessed from, that portal. Following a reasonable and diligent inquiry — including a search of Colliers' collected email files, property-management work-order records, and document archives, and a review of Security Fire Protection's document production in this action — Colliers has located no document

or record establishing the precise date, time, or method by which the written report was first received by Colliers or any of its personnel. Colliers' investigation is continuing, including inquiry of former personnel, and Colliers will supplement pursuant to Rule 26(e).

(c): The report identifies Colliers' then-Property Manager, Shellie Moses, as the vendor's designated contact. Colliers has located no record identifying the specific individual who first received or accessed the written report.

(d)–(e): Colliers has located no record of any pre-loss forwarding, distribution, or transmission of the report. Following the January 17, 2024 Water Intrusion Event, the report and its contents have been discussed among Colliers, St. Paul, their respective counsel, and insurer representatives; those communications are privileged and are withheld as reflected in Colliers' privilege log correspondence.

(f): Colliers' practice upon receiving vendor inspection reports was to review them to determine whether the vendor-noted deficiencies required corrective action. The January 4, 2024 report noted no deficiency concerning freeze protection. The report's winter-temperature language is standard advisory language appearing in the vendor's reports across multiple years, before and after the Water Intrusion Event (e.g., COLLIERS_01402 (January 1, 2016); COLLIERS_01641 (November 13, 2024); COLLIERS_01622 (October 2, 2025)). No corrective action responsive to the report was indicated. Rather, Colliers states that in response to forecasted severe winter weather and widely publicized freeze warnings (including those issued by Memphis Light, Gas and Water), Colliers undertook proactive freeze-preparation measures during the same period. On January 9, 2024, Colliers issued a portfolio-wide freeze-preparation work order that, at the Premises, resulted in a check of the vacant east-end space, and deployment of space heaters (Work Order #137086, requested January 9, 2024 and completed January 11, 2024; e.g., COLLIERS_01249; see also

COLLIERS_01724–01725). Colliers maintenance technician Anthony Allred performed this work on January 10, 2024. As a result of these measures, no pipes froze or burst within the vacant, Colliers-controlled portions of the warehouse. Following the January 17, 2024 Water Intrusion Event, Security Fire Protection returned to the Premises, and Colliers, through Ms. Moses, executed the vendor's repair authorization on January 18, 2024 (e.g., COLLIERS_01037).

(g): Colliers does not contend that it never received the report; consistent with its Answers to Xpedient's Cross-Claims, Colliers received the report on or about January 4, 2024, and states the facts set forth above.

**INTERROGATORY NO. 8:** Describe in complete detail all knowledge possessed by Colliers, its employees, agents, representatives, contractors, property managers, maintenance personnel, or consultants concerning any system, device, material, method, procedure, equipment, or measure intended to prevent freezing of pipes, sprinkler piping, fire protection piping, plumbing piping, water lines, HVAC piping, gas piping, or any other building system at 4601 Cromwell Avenue at any time from January 1, 2022 through January 31, 2024: (a) every freeze-protection measure known by Colliers to exist at the property, including but not limited to antifreeze systems, dry-pipe systems, preaction systems, heat tracing, heat tape, electric heating cable, wire heating wrap, insulation, pipe jacketing, space heaters, temporary heaters, HVAC heating systems, building heating systems, temperature monitoring devices, low-temperature alarms, freeze alarms, remote monitoring systems, or any other freeze-protection measure; (b) the location of each such freeze-protection measure; (c) the date Colliers first became aware of each such freeze-protection measure; (d) the manner in which Colliers obtained such knowledge; (e) all inspections, testing, maintenance, repairs, evaluations, recommendations, reports, or communications concerning any freeze-protection measure; (f) all persons with knowledge concerning any freeze-protection

measure; (g) whether Colliers believed each freeze-protection measure was operational and functioning before the January 2024 freeze event and the basis for that belief; (h) all actions taken by Colliers before January 17, 2024, to verify that any freeze-protection measure was present and operational; and (i) all facts supporting any contention by Colliers that the building, sprinkler system, plumbing system, or other piping systems were adequately protected from freezing temperatures before the January 2024 freeze event.

**OBJECTION OF COUNSEL:** Colliers objects to this Interrogatory on the grounds that it is compound, containing at least nine discrete subparts; that the demand to "describe in complete detail all knowledge" possessed by every category of person over a two-year period is overly broad, unduly burdensome, and not proportional to the needs of the case; and that it seeks an exhaustive narrative more appropriately developed through depositions. The below Answer is provided subject to and without waiver of objections.

**ANSWER:** Answering subparts (a) through (i) together, Colliers states as follows. The freeze-protection measures known to Colliers to exist at the Premises during the stated period were: (1) temporary, portable, thermostat-controlled electric space heaters deployed by Colliers in the vacant east-end space prior to and during winter weather events (deployed as reflected in Work Order #137086, requested January 9, 2024 and completed January 11, 2024, e.g., COLLIERS_01249, COLLIERS_01724–01725); (2) the permanent natural-gas heating systems — rooftop package units serving the office spaces and ceiling-mounted hanging heaters serving the warehouse floor — dependent on natural gas supplied by MLGW, which were not heating the tenant's space while the gas meter remained locked due to the tenant's failure to establish service; (3) insulation wrap present on domestic water line(s) in the ceiling, as reflected in the produced work-order records (e.g., Work Order #137255); and (4) the ambient-temperature-dependent

design of the wet-pipe sprinkler system itself, which was regularly inspected, tested, and maintained by Security Fire Protection Co., Inc. under Colliers' vendor program. The Premises did not utilize an antifreeze system, dry-pipe system, or preaction system; the sprinkler system was a wet-pipe system. No low-temperature alarm, freeze alarm, or remote temperature-monitoring system existed at the Premises during the stated period. Persons with knowledge include Shellie Moses, Jessica Edmonds, Anthony Allred, Jamie Brantley, Tim Floyd, and Kim Hafley (Colliers), and Mark Griffis (Security Fire Protection Co., Inc.). The wet-pipe sprinkler system was operational and functioning before the January 2024 freeze event because it was regularly inspected by Security Fire Protection, was mechanically sound, and functioned properly as designed, and because the vendor's inspection program was in place. The actions taken before January 17, 2024, to protect freeze-vulnerable Colliers-controlled portions of the Premises are those reflected in Work Order #137086 — deployment of temporary, thermostat-controlled space heaters. The facts supporting Colliers' contention that the building systems within its operational control were adequately protected from freezing are set forth in Colliers' Answer to Interrogatory No. 5 above, including that no pipes froze or burst within the vacant, Colliers-controlled portions of the warehouse. As to the tenant's exclusively controlled space, freeze protection was the contractual responsibility of Xpedient, as set forth in Colliers' Answers to Interrogatory Nos. 2 and 6 above.

**VERIFICATION**

I, Tim Mashburn, declare under penalty of perjury that I am the Executive Vice President/Principal of Colliers Management Services – Memphis, LLC, a Defendant in this action; that I am authorized to make this verification on its behalf; and that the foregoing Answers to Interrogatories are true and correct.

Executed on this 20th day of July, 2026, at Memphis, TN.

By: ______________________________

**REQUESTS FOR PRODUCTION**

The documents responsive to these Requests were produced and served on all counsel of record on July 6, 2026, Bates-labeled COLLIERS_00681 through COLLIERS_01742, as they are kept in the usual course of business. No documents are being re-produced herewith; that production is incorporated by reference in full. Contemporaneously herewith, Colliers is serving a supplemental production, Bates-labeled beginning at COLLIERS_01743, which is likewise incorporated by reference herein where responsive. To clarify and for convenience, Colliers also notes the following regarding prior document transmissions:

1. Colliers previously produced documents Bates-labeled COLLIERS_00001 through COLLIERS_00382 in response to Plaintiff Agilent's Rule 45 subpoena. Those documents are incorporated by reference herein to the extent they are responsive to these Requests.

2. Colliers previously served its Initial Disclosures, which included an un-bates-stamped Exhibit A (insurance policies) totaling 298 pages. For clarity of reference, Colliers applied Bates-labels to those identical insurance policies as COLLIERS_00383 through COLLIERS_00680, which are also incorporated by reference herein where responsive.

3. For completeness of the discovery record, Colliers also incorporates by reference herein where responsive the fully executed document entitled "Memorandum Confirming Term." This document was previously transmitted via email to all counsel of record on June 8, 2026, at 9:53 a.m. CT, and was subsequently filed in the Court record on June 10, 2026, as Exhibit B to Colliers' Motion to Modify Scheduling Order (Doc. 206-2). A Bates-stamped copy of this document appears within the production (e.g., COLLIERS_00830–00832).

**REQUEST NO. 1:** Produce the complete property management file for 4601 Cromwell from January 1, 2023, through December 31, 2024.

**RESPONSE:** Colliers objects to this Request to the extent it seeks documents protected by the attorney-client privilege or the work-product doctrine. Pursuant to Fed. R. Civ. P. 34(b)(2)(C), Colliers states that no responsive documents are being withheld on the basis of the foregoing objections. Colliers objects to this Request on the grounds that a demand for the "complete property management file" is overly broad, unduly burdensome, and not proportional to the needs of the case, as it encompasses financial, budgeting, leasing, and administrative records having no bearing on the claims or defenses in this action, which concerns a discrete winter-weather property loss. Pursuant to Fed. R. Civ. P. 34(b)(2)(C), Colliers states that it is withholding financial, budgeting, and unrelated leasing and administrative records on the basis of the foregoing relevancy objections, and Colliers is willing to meet and confer regarding any specific category Xpedient contends is relevant. Subject to and without waiver of the foregoing objections, the responsive, non-privileged property-management records for the stated period — including the work-order records, the email correspondence of Colliers personnel, vendor proposals, invoices, and service records, the Security Fire Protection inspection reports, the Standard Commercial Lease and Memorandum Confirming Term, and the January 18, 2024 Incident Report (e.g., COLLIERS_01243) — have been produced and are incorporated by reference as set forth in the preamble.

**REQUEST NO. 2:** Produce all communications with MLGW concerning the following topics related to the subject warehouse at 4601 Cromwell from May 1, 2023, to December 31, 2024: (a) gas service, (b) gas meters, (c) account transfers, (d) pressure testing, (e) meter releases, (f) meter unlocking, (g) service activation, (h) utility accounts, (i) suite numbering, or (j) service addresses.

**RESPONSE:** Responsive communications located from the stated period have been produced, including account notices, invoices, and the email correspondence, notes, and call records of Colliers personnel (including Shellie Moses and Jessica Edmonds) with MLGW representatives (including Natasha Rosko and a representative identified in the produced correspondence as Luke). Colliers further notes that MLGW has produced documents in this action in response to subpoena (including recorded calls), and other parties and non-parties have produced documents that are also responsive to this request.

**REQUEST NO. 3:** Produce all internal communications between or among any Colliers employees, agents, representatives, property managers, maintenance personnel, supervisors, executives, asset managers, or other persons acting on behalf of Colliers concerning 4601 Cromwell Avenue from January 1, 2023 through March 31, 2024, including but not limited to communications concerning: (a) natural gas service; (b) gas meter separation; (c) utility transfers; (d) MLGW accounts, deposits, service orders, meter releases, meter unlocking, or service activation; (e) HVAC repairs, HVAC replacement, HVAC functionality, heating capability, or lack of heat; (f) freeze protection, winterization, cold-weather preparation, weather forecasts, freeze warnings, or precautions to protect building systems from freezing temperatures; (g) sprinkler systems, fire protection systems, antifreeze systems, dry systems, wet systems, inspections, deficiencies, recommendations, repairs, maintenance, testing, or code compliance; (h) the January 2024 freeze event; (i) the January 2024 sprinkler pipe failure, water release, water intrusion, flooding, or property damage; (j) communications regarding responsibility for the freeze loss or potential liability arising from the freeze loss; (k) communications regarding insurance claims, incident investigations, root-cause analyses, remediation, repairs, or corrective actions following the freeze loss; and (l) communications concerning Xpedient, Agilent, St. Paul

Properties, Security Fire Protection, Soefker Services, MLGW, or any contractor performing work at the property. This request includes, without limitation, emails, email attachments, draft emails, text messages, instant messages, Microsoft Teams messages, Slack messages, internal notes, memoranda, meeting notes, handwritten notes, calendar invitations, task assignments, work orders, maintenance logs, and electronically stored information of every kind.

**RESPONSE:** Colliers objects to this Request to the extent it seeks documents protected by the attorney-client privilege, the work-product doctrine, or the common-interest doctrine, including post-loss and litigation-related communications among Colliers, St. Paul, their respective counsel, and insurer representatives. Pursuant to Fed. R. Civ. P. 34(b)(2)(C), Colliers states that it is withholding post-loss and litigation-related communications and draft materials exchanged among Colliers, St. Paul, and their respective counsel and insurer representatives under the common-interest doctrine, and its post-loss claim and claim-handling communications with its liability insurer as a category, on the basis of the foregoing objections, as identified in Colliers' privilege log correspondence served on all counsel of record on July 6, 2026. Colliers further objects that this Request, spanning fifteen months of all internal communications on twelve enumerated subjects, is overly broad and unduly burdensome. Subject to and without waiver of the foregoing objections, the responsive, non-privileged internal communications have been produced, including the internal correspondence of Shellie Moses, Jessica Edmonds, and other Colliers personnel concerning gas service and the meter separation, MLGW accounts and deposits, HVAC status and lack of heat, freeze protection and weather preparation, the sprinkler system and inspections, the January 2024 freeze event and resulting damage, and the post-event remediation, together with the produced work-order records.

**REQUEST NO. 4:** This request includes, without limitation, emails, email attachments, draft emails, text messages, instant messages, Microsoft Teams messages, Slack messages, internal notes, memoranda, meeting notes, handwritten notes, calendar invitations, task assignments, work orders, maintenance logs, and electronically stored information of every kind.

**RESPONSE:** This Request does not identify a category of documents; it describes the forms of electronically stored information encompassed by a request. Colliers construes this Request as modifying the scope of Request No. 3 and incorporates by reference its Response to Request No. 3.

**REQUEST NO. 5:** Produce all HVAC inspection reports, repair reports, replacement proposals, service tickets, and work orders from January 2023 through December 2024.

**RESPONSE:** Colliers objects to the extent this Request assumes Colliers had operational control over, or a duty to maintain, the HVAC systems serving the tenant's leased premises; pursuant to Section 5.02 of the Lease Agreement, maintaining the HVAC system within the leased premises was the contractual responsibility of the tenant, Xpedient. Subject to and without waiver of the foregoing objections, the responsive, non-privileged documents have been produced, including the correspondence, proposals, and invoices of W.A. Soefker & Son, Inc. regarding the gas line separation, pressure testing, unit regulator repairs, and HVAC-related coordination for the property owner, together with the produced work-order records. Because Xpedient was contractually obligated to maintain the HVAC system in its leased space, additional service and maintenance records are maintained by the tenant's vendors, Crowe Heating & Air Conditioning, and W.A. Soefker & Son, Inc. Colliers further notes that these vendors have produced documents in this action in response to subpoena, and other parties and non-parties have produced documents that are also responsive to this request.

**REQUEST NO. 6:** Produce all documents reflecting the location, numbering, or designation of Suites 1, 2, 5, 10, or any other suite designation used at the property.

**RESPONSE:** Colliers objects to this Request to the extent it seeks documents protected by the attorney-client privilege or the work-product doctrine. Pursuant to Fed. R. Civ. P. 34(b)(2)(C), Colliers states that no responsive documents are being withheld on the basis of the foregoing objections. Subject to and without waiver of the foregoing objections, the responsive, non-privileged documents have been produced, including the Standard Commercial Lease identifying the premises leased to Xpedient, the Memorandum Confirming Term, and the correspondence and MLGW account records. Colliers further notes that MLGW has produced documents in this action in response to subpoena that are also responsive to this request.

**REQUEST NO. 7:** Produce all fire protection inspection reports, sprinkler inspection reports, deficiency reports, recommendations, and corrective action records related to the Premises from January 2022 through January 2024.

**RESPONSE:** Colliers objects to this Request to the extent it seeks documents protected by the attorney-client privilege or the work-product doctrine. Pursuant to Fed. R. Civ. P. 34(b)(2)(C), Colliers states that no responsive documents are being withheld on the basis of the foregoing objections. Objection is also raised to the request's duration from January 2022 through January 2024, as this is overly broad and unduly burdensome. Subject to and without waiver of the foregoing objections, the responsive, non-privileged documents within Colliers' possession, custody, or control for the stated period have been produced.

**REQUEST NO. 8:** Produce all documents concerning Wet Sprinkler System Inspection Report from Security Fire Protection dated January 4, 2024, attached hereto as Exhibit 1 and all corrective action taken or considered in response to that report.

**RESPONSE:** Colliers objects to this Request to the extent it seeks documents protected by the attorney-client privilege, the work-product doctrine, or the common-interest doctrine, including post-loss communications concerning the report among Colliers, St. Paul, their respective counsel, and insurer representatives. Pursuant to Fed. R. Civ. P. 34(b)(2)(C), Colliers states that it is withholding such post-loss privileged communications on the basis of the foregoing objections, as identified in Colliers' privilege log correspondence; no other responsive documents are being withheld on the basis of the foregoing objections. Subject to and without waiver of the foregoing objections, the responsive, non-privileged documents have been produced, including the January 4, 2024 Wet-Sprinkler inspection report itself and the work-order records reflecting the freeze-preparation measures undertaken during the same period (Work Order #137086, requested January 9, 2024 and completed January 11, 2024; e.g., COLLIERS_01249; see also COLLIERS_01724–01725). See also Colliers' Answer to Interrogatory No. 7, served contemporaneously herewith.

**REQUEST NO. 9:** Produce all communications with Security Fire regarding the subject warehouse at 4601 Cromwell.

**RESPONSE:** Colliers objects to this Request to the extent it seeks documents protected by the attorney-client privilege or the work-product doctrine. Pursuant to Fed. R. Civ. P. 34(b)(2)(C), Colliers states that, apart from limiting its search to the construed period stated in this Response, no responsive documents are being withheld on the basis of the foregoing objections. Colliers objects to this Request on the grounds that it is overly broad as to time, unduly burdensome, and not proportional to the needs of the case, as it seeks every communication exchanged with a third-party vendor without any temporal limitation for a property Colliers has managed for years. Colliers construes this Request as directed to the period from January 1, 2023,

to the present. Subject to and without waiver of the foregoing objections, the responsive, non-privileged communications for the construed period have been produced, including correspondence between Colliers personnel (including Shellie Moses and Tim Mashburn) and Security Fire Protection Co., Inc. regarding the January 4, 2024 inspections, and the post-event damage assessment and repair. Because Colliers utilized Security Fire Protection Co., Inc. as a third-party vendor, comprehensive historical records and routine communications are maintained by the vendor. Colliers further notes that Security Fire Protection Co., Inc. has produced documents in this action in response to subpoena, and other parties and non-parties have produced documents that are also responsive to this request.

**REQUEST NO. 10:** Produce all documents concerning freeze preparation, winterization, freeze protection, heating, pipe protection, sprinkler protection, or weather-related precautions at the Premises.

**RESPONSE:** Colliers objects to this Request to the extent it seeks documents protected by the attorney-client privilege or the work-product doctrine. Pursuant to Fed. R. Civ. P. 34(b)(2)(C), Colliers states that no responsive documents are being withheld on the basis of the foregoing objections. Colliers further objects to the extent this Request improperly assumes Colliers had operational control over, or a duty to winterize or protect, the leased premises, which were under the exclusive control and contractual responsibility of the tenant, Xpedient. Subject to and without waiver of the foregoing objections, the responsive, non-privileged documents have been produced, including: records reflecting Colliers' proactive freeze-preparation measures for the property owner's vacant spaces — the deployment of temporary, thermostat-controlled space heaters; and the January 4, 2024 annual Wet-Sprinkler inspection report. Colliers also has produced complete IMPAK work-order records. *See* COLLIERS_00964–00965 and

COLLIERS_01726–01741. Colliers further notes that Security Fire Protection Co., Inc. has produced documents in this action in response to subpoena, and other parties and non-parties have produced documents that are also responsive to this request.

**REQUEST NO. 11:** Produce all photographs, videos, diagrams, drawings, or schematics depicting gas lines, meters, HVAC systems, or fire protection systems at the Premises.

**RESPONSE:** Colliers objects to this Request to the extent it seeks documents protected by the attorney-client privilege or the work-product doctrine. Pursuant to Fed. R. Civ. P. 34(b)(2)(C), Colliers states that no responsive documents are being withheld on the basis of the foregoing objections. Subject to and without waiver of the foregoing objections, following a reasonable and diligent search, Colliers has produced the responsive, non-privileged materials within its possession, custody, or control. Colliers further notes that other parties and non-parties (including W.A. Soefker & Son, Inc. and Security Fire Protection Co., Inc.) have produced documents in this action in response to subpoena that are also responsive to this request. To the extent additional responsive photographs or diagrams are identified, Colliers will supplement pursuant to Rule 26(e).

**REQUEST NO. 12:** Produce all photographs, videos, or other documents relating to the January 2024 sprinkler failure and water intrusion event at the Premises.

**RESPONSE:** Colliers objects to this Request to the extent it seeks documents protected by the attorney-client privilege or the work-product doctrine. Pursuant to Fed. R. Civ. P. 34(b)(2)(C), Colliers states that no responsive documents are being withheld on the basis of the foregoing objections. Subject to and without waiver of the foregoing objections, the responsive, non-privileged documents have been produced, including the January 18, 2024 Incident Report prepared by Shellie Moses of Colliers for St. Paul, other post-event correspondence, the Security

Fire Protection damage-assessment and repair records (e.g., COLLIERS_01031–01037), and the work-order records concerning the post-event water issues. Colliers, through counsel, is coordinating the collection of the remaining post-event repair and remediation records (including any of ServiceMaster by Cornerstone) and will supplement if and when obtained, subject to any applicable privilege, which will be clearly asserted if applicable. Colliers further notes that other parties and non-parties have produced documents in this action that are also responsive to this request.

**REQUEST NO. 13:** Produce all insurance claims, notices, reports, or communications relating to the January 2024 loss.

**RESPONSE:** Colliers objects to this Request to the extent it seeks documents protected by the attorney-client privilege, the work-product doctrine, or the common-interest doctrine, including post-loss claim files and claim-handling communications between Colliers, its insurers, and/or St. Paul. Pursuant to Fed. R. Civ. P. 34(b)(2)(C), Colliers states that it is withholding, as a category, its post-loss claim and claim-handling communications with its liability insurer, as described in Colliers' privilege log correspondence served on all counsel of record on July 6, 2026. Subject to and without waiver of the foregoing objections, Colliers states that it did not make any first-party property claims for damage to the Cromwell Warehouse or the stored inventory, but assisted St. Paul with its own claims submitted to its own carrier for damage from and repairs to the warehouse. Colliers' applicable liability insurance policies have been produced and Bates-labeled COLLIERS_00383 through COLLIERS_00680 and are incorporated by reference. The January 18, 2024 Incident Report prepared by Colliers for St. Paul has been produced.

**REQUEST NO. 14:** Produce all communications with St. Paul relating to the January 2024 loss at the Premises.

**RESPONSE:** Colliers objects to this Request to the extent it seeks communications protected by the attorney-client privilege, the work-product doctrine, and/or the common-interest doctrine, including post-loss and post-litigation communications between Colliers and St. Paul and/or their respective counsel and insurer representatives. Pursuant to Fed. R. Civ. P. 34(b)(2)(C), Colliers states that it is withholding post-loss and litigation-related communications and draft materials exchanged among Colliers, St. Paul, and their respective counsel and insurer representatives under the common-interest doctrine, on the basis of the foregoing objections, as identified in Colliers' privilege log correspondence served on all counsel of record on July 6, 2026. Subject to and without waiver of the foregoing objections, the responsive, non-privileged business communications have been produced, including the January 18, 2024 Incident Report prepared by Colliers for St. Paul, the exchanged Building Improvement Job Sheet Authorization forms, and other pre-litigation correspondence between Colliers and St. Paul concerning the loss. The operative Management and Leasing Agreement between St. Paul and Colliers has been produced in this action by St. Paul at St.Paul000264–St.Paul000296 and is incorporated by reference herein. Colliers further notes that St. Paul is a party to this action and has produced its own documents and communications that are also responsive to this request.

**REQUEST NO. 15:** Produce all requests for indemnity from any party including but not limited to St. Paul relating to the January 2024 loss.

**RESPONSE:** Colliers objects to this Request to the extent it seeks communications protected by the attorney-client privilege, the work-product doctrine, or the common-interest doctrine, including joint-defense communications and internal evaluations of liability, defense, and indemnification between Colliers, St. Paul, and/or their respective counsel and insurers. Pursuant to Fed. R. Civ. P. 34(b)(2)(C), Colliers states that it is withholding draft correspondence

and communications of counsel concerning (or commenting upon) the Xpedient notice-of-default and tender/indemnification disputes, on the basis of the foregoing objections, as identified in Colliers' privilege log correspondence served on all counsel of record on July 6, 2026. Subject to and without waiver of the foregoing objections, the responsive, non-privileged documents have been produced, including the Standard Commercial Lease setting forth the contractual indemnification obligations of the respective parties, the executed formal notices of default exchanged between the parties (e.g., COLLIERS_00820–00823), and related correspondence (e.g., COLLIERS_00785–00786, COLLIERS_00991–00992). The operative Management and Leasing Agreement has been produced in this action by St. Paul at St.Paul000264–St.Paul000296 and is incorporated by reference herein.

**REQUEST NO. 16:** Produce all documents that support any contention that Xpedient caused or contributed to the loss.

**RESPONSE:** Colliers objects to this Request to the extent it seeks the mental impressions of counsel, internal legal analysis, and premature disclosure of trial strategy protected by the work-product doctrine and/or the attorney-client privilege. Pursuant to Fed. R. Civ. P. 34(b)(2)(C), Colliers states that it is withholding counsel's work product and litigation-preparation materials on the basis of the foregoing objections; no other responsive documents are being withheld on the basis of the foregoing objections. Colliers further objects that it is unreasonable to require Colliers to marshal all supporting documents at this point in litigation; discovery is ongoing and Colliers will supplement in accordance with the Federal Rules. Subject to and without waiver of the foregoing objections, Colliers identifies and has produced (or incorporated by reference as set forth in the preamble) the documents identified in its Answer to Interrogatory No. 6, served contemporaneously herewith, including the Standard Commercial Lease and Memorandum

Confirming Term, MLGW's billing communications and cut-off notices, the produced MLGW invoices and account records, the work-order records, the March 18, 2024 Xpedient correspondence regarding its own space heaters (e.g., COLLIERS_00932), the MLGW response to subpoena, the written discovery responses of Xpedient, and communications between Colliers and Xpedient. Colliers reserves the right to supplement this response.

**REQUEST NO. 17:** Produce all documents, reports, inspection records, maintenance records, testing records, photographs, drawings, specifications, proposals, invoices, work orders, communications, and other materials concerning any freeze-protection system, antifreeze system, dry-pipe system, preaction system, heat tracing, heat tape, pipe insulation, temperature monitoring system, alarm system, or any other measure intended to prevent freezing of pipes or sprinkler systems at 4601 Cromwell Avenue.

**RESPONSE:** Colliers objects to this Request to the extent it seeks documents protected by the attorney-client privilege or the work-product doctrine. Pursuant to Fed. R. Civ. P. 34(b)(2)(C), Colliers states that no responsive documents are being withheld on the basis of the foregoing objections. Subject to and without waiver of the foregoing objections, Colliers states that the sprinkler system at the Premises is a wet-pipe system; the Premises did not utilize an antifreeze system, dry-pipe system, or preaction system. The responsive, non-privileged documents concerning the freeze-protection measures that did exist have been produced, including the work-order records reflecting the deployment of temporary, thermostat-controlled space heaters (Work Order #137086; e.g., COLLIERS_01249; COLLIERS_01724–01725), the produced IMPAK work-order records, and the Security Fire Protection inspection reports. Colliers further notes that Security Fire Protection Co., Inc. has produced documents in this action in response to subpoena that are also responsive to this request.

Respectfully submitted,

***/s/ John W. Butler, Esq.***
John W. Butler, BPR #014771
Grant E. Mitchell, BPR #036878
BUTLER, VINES AND BABB, P.L.L.C.
2701 Kingston Pike, Knoxville, TN 37919
Phone/Fax: (865) 244-3925
jbutler@bvblaw.com & gmitchell@bvblaw.com
*Attorneys for Defendant Colliers Management Services – Memphis, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 20, 2026, I caused a copy of the above and foregoing document to be served on all counsel by electronic mail:

Amber S. Finch, Esq.
Katherine Goetz, Esq.
Margaret C. McDonald, Esq.
Reed Smith, LLP
515 South Flower, Suite 4300
Los Angeles, CA 90071
(213) 457-8000
afinch@reedsmith.com
kgoetz@reedsmith.com
mcmcdonald@reedsmith.com

*Attorneys for Plaintiff Agilent Technologies, Inc.*

Douglas F. Halijan, Esq.
Burch, Porter & Johnson PLLC
130 North Court Avenue
Memphis, TN 38103
(901) 524-5000
dhalijan@bpjlaw.com

*Attorney for Plaintiff Agilent Technologies, Inc.*

William P. Thomas, Esq.
Andrew B. Schrack, Esq.
Butler Snow LLP
6075 Poplar Avenue, Suite 500
Memphis, TN 38119
(901) 680-7200
will.thomas@butlersnow.com
andrew.schrack@butlersnow.com

*Attorneys for Defendant and Cross-Plaintiff Xpedient Management Group, LLC*

Sean W. Martin, Esq.
Brittany N. Lezu, Esq.
Carr Allison
633 Chestnut Street, Suite 2000
Chattanooga, TN 37450
(423) 648-9832
swmartin@carrallison.com
blezu@carrallison.com

*Attorney for Defendant and Cross-Defendant St. Paul Fire and Marine Insurance Company*

S. Joe Welborn, Esq.
Smith Cashion & Orr, PLC
3100 West End Ave., Suite 800
Nashville, TN 37203
(615) 742-8586
jwelborn@smithcashion.com

*Attorneys for Plaintiff Factory Mutual Insurance Company*

Peter C. Sales, Esq.
Elizabeth Thea Petras, Esq.
Bradley Arant Boult Cummings
1221 Broadway Suite 2400
Nashville, TN 37203
(615) 252-2365
psales@bradley.com
bpetras@bradley.com

*Attorneys for Defendant and Cross-Plaintiff Xpedient Management Group, LLC*

**By: *<u>/s/ John W. Butler, Esq.</u>***