**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

**AGILENT TECHNOLOGIES, INC., PLAINTIFF**

**VS CASE NO. 2:25-cv-02101-BCL-cgc**

**XPEDIENT MANAGEMENT GROUP, LLC,**
**ST. PAUL FIRE AND MARINE INSURANCE COMPANY,**
**COLLIERS MANAGEMENT SERVICES-MEMPHIS, LLC DEFENDANTS**

**XPEDIENT MANAGEMENT GROUP, LLC, CROSS PLAINTIFF**

**VS**

**ST PAUL FIRE AND MARINE INSURANCE COMPANY CROSS-DEFENDANTS**
**and COLLIERS MANAGEMENT SERVICES-MEMPHIS, LLC**

**FACTORY MUTUAL INSURANCE CO., AS**
**SUBROGEE OF AGILENT TECHNOLOGIES, Inc. PLAINTIFF**

**V.**

**XPEDIENT MANAGEMENT GROUP, LLC**
**and ST. PAUL FIRE AND MARINE INSURANCE COMPANY**
**and COLLIERS MANAGEMENT SERVICES-MEMPHIS, LLC DEFENDANTS**

**XPEDIENT MANAGEMENT GROUP, LLC'S STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1, Defendant Xpedient Management Group, LLC ("Xpedient") submits the following concise statement of material facts as to which there is no genuine dispute:

**A. The parties' agreements and negotiated allocation of Product Loss risk.**

1. Agilent Technologies, Inc. ("Agilent") and Xpedient executed the Master Operating Services Agreement for Logistics Services (the "MOSA") and the Memphis Site Operating Agreement (the "SOA") in May 2023. The SOA identified the facility as approximately 45,000 square feet at 4601 Cromwell Avenue in Memphis and established a term from May 15, 2023 through May 31, 2026. See MOSA Exhibit “1”; SOA Exhibit “2”.

2. MOSA Section 12(C)(a) provides that, subject to the agreement's limitations, Xpedient may be responsible for Agilent's actual manufacturing or acquisition cost to replace Products at their pre-loss condition, less salvage value, when loss or damage is caused by Xpedient's failure to exercise reasonable care. Section 12(C)(b) states that the Products are not insured by Xpedient against loss or injury, however caused. See MOSA § 12(C)(a)-(b), at 4-5 Exhibit "1".

3. Section 12(C)(c) states that Xpedient's maximum liability arising out of or related to loss of or damage to Products may not exceed $1 million per occurrence, $2 million annually, or $5 million over the life of the MOSA. The same paragraph states that the parties are sophisticated commercial organizations negotiating at arm's length and jointly agreed that the Limit was commercially reasonable in relation to the value of the Products, the fees charged, and their respective business interests. See MOSA § 12(C)(c), at 5 Exhibit "1".

4. Section 12(C)(d)(ii) excludes liability for Product Losses in excess of the Limit. Section 12(C)(e) requires every Product Loss claim to be made promptly in writing and no later than 90 days after Agilent became aware or reasonably should have become aware of the loss or damage; requires the writing to identify the Products, explain Xpedient's alleged liability, and claim payment of a specified or determinable amount; and states that no action may be maintained without a timely written claim. See MOSA § 12(C)(d)-(e), at 5-6 Exhibit "1".

5. Section 12(C)(e) also provides that neither party is liable for special, indirect, consequential, or punitive damages, including lost production, income, or profits. See MOSA § 12(C)(e), at 6 Exhibit "1".

6. MOSA Section 6(B) assigns to Agilent the cost of transporting Products to an alternate facility, rent, and all other facility expenses when an event causes a premature loss of use or possession of the facility. See MOSA § 6(B), at 2 Exhibit "1".

7. The MOSA states that a failure to enforce a provision does not constitute a continuing waiver, and that no waiver, release, alteration, or modification is binding unless set forth in a writing signed by both parties. It also provides that Agilent, for itself and its insurers, waives recovery to the extent subrogation would make Xpedient responsible for losses for which it is not responsible under the MOSA. See MOSA §§ 20, 30(F), 30(H), at 9, 14 Exhibit "1"

8. Before execution, Agilent's Logistics Process Manager told Xpedient that he was meeting with Agilent's Legal and Procurement personnel to review all redlines, that Legal and Procurement were redlining the MOSA, and that more formal feedback would follow his call with Agilent's lawyer. See May 3, 2023 Agilent/Xpedient Emails XMG_3343-44 Exhibit "7".

9. The parties' written comments addressed the amount of the Product Loss limit. Xpedient wrote, "Our limit is $1M"; Agilent Commercial Counsel Krisztina Comeau asked, "Are these limits acceptable?"; and Agilent Global Sourcing representative Chon-Leong Choo noted that Agilent's contract with the prior provider had a $1 million per-occurrence limit. See May 9, 2023 Xpedient/Agilent Emails, XMG_2733-2801 Exhibit "8".

10. Agilent's pre-execution Contract Summary Sheet identified as a legal risk that "XMG's maximum liability coverage is $1 million" and identified the mitigation as "Agilent's insurance policy will cover the difference in loss." See Agilent's Contract Summary ATI_006893 Exhibit "9". The same document stated that Agilent's insurance would cover inventory loss and expenses associated with product damage. *Id.*

**B. The January 2024 event and Agilent's written communications concerning a claim.**

11. On January 17, 2024, water entered the Memphis warehouse after fire-sprinkler and domestic-water piping froze and burst. Agilent and Factory Mutual refer to the incident as the January 17, 2024 "Water Intrusion Event." (Doc. 137 ¶¶ 70-85; Doc. 136 ¶¶ 44-51).

12. On January 19, 2024, Agilent's Chris Mulryan wrote internally that Xpedient had reported a water break "raining water down on the TIPS" and asked Agilent personnel to assess

the damage. On January 25, Mulryan reported that 321 pallets were impacted, discussed repair versus disposal, and addressed who would bear liability. See Jan. 19–25, 2024 Agilent Internal Emails ATI_000470-72 Exhibit “3”.

13. On February 7, 2024, Agilent sent Xpedient an email stating that Agilent’s Products had "experienced water damage," that Agilent was investigating the extent of the damage, and that Agilent would provide an update after the necessary steps and resulting costs were determined. See Feb. 7, 2024 Agilent Internal Email ATI_004078 Exhibit “4”.

14. The February 7 email requested information concerning the cause of the water damage, repairs and remediation, and measures to prevent recurrence. It did not state that Xpedient was liable, demand payment, or identify a specified or determinable amount claimed from Xpedient. *Id.*

15. Ninety days after February 7, 2024 was May 7, 2024. Agilent did not send a writing invoking Section 12(C)(e) until June 7, 2024, 121 days after February 7 and 31 days after May 7. See June 7, 2024 Agilent Notice of Claim Ltr. ATI_011132 Exhibit “5”.

16. Agilent’s June 7 letter was titled "Agilent’s Notice of Claim Pursuant to Master Operating Services Agreement" and expressly invoked Section 12(C)(e). The letter characterized the matter as a "potential claim," stated that Agilent was unable to fully explain Xpedient’s liability or make a claim for payment of a specified or determinable amount, and reported a preliminary estimate of $8,054,398.96 in irreparably damaged inventory after inspection and segregation concluded on March 29, 2024. *Id.*

17. Xpedient’s June 24 response acknowledged receipt of the June 7 letter, stated that Xpedient had provided it to its insurer and adjuster, and stated that Xpedient would work through the matter under the terms and conditions of the MOSA and SOA. The response did not state that the June 7 notice was timely or that Section 12(C)(e) had been waived. See June 24, 2024 Xpedient Response to Claim Ltr XMG_0352 Exhibit “6”.

### C. Agilent's contemporaneous understanding of the $1 million allocation and Plaintiffs' claimed damages.

18. On April 23, 2024, Agilent executive Rodney Gonsalves wrote that approximately $8.1 million in inventory would likely be disposed of and that Agilent expected to recover approximately $4.1 million "from the warehouse provider and insurance," leaving an anticipated uncovered loss. See April 22-24, 2024 Agilent Internal Emails, ATI_012818-012820 Exhibit "10".

19. Agilent's April 2024 financial presentation stated, "Xpedient liability at $1 M per contract," and separately modeled a $1 million claim against Xpedient and a $3,114,300 insurance claim under Agilent's Factory Mutual policy. See Agilent Financial Presentation April 23, 2024 Exhibit "11" at ATI_011537.

20. On April 24, 2024, Agilent's External Financial Reporting group asked whether the anticipated receivables from "insurance ($3.1m)" and the "warehouse ($1m)" were sufficiently certain to be booked and requested separate confirmation regarding the insurance and Xpedient claims. *Id.*

21. Agilent's damages expert calculates $9,822,798 in alleged underlying loss before insurance payments and interest: $8,520,974 in replacement costs, $958,122 in post-event SOA payments, $103,773 in disposal costs, $170,419 in estimated replacement freight, $64,227 in inventory-count expense, and $5,281 to transport undamaged inventory. See Grudzien Report at 5 Exhibit "13".

22. The $8,520,974 replacement-cost calculation values 25,012 boxes of allegedly damaged pipette tips using contractual unit prices. Factory Mutual paid Agilent a total of $4,787,087 toward the claimed loss. See Grudzien Report at 6-8 at 5, 8 & Ex. A, Schedule 1 Exhibit "13".

23. The expert describes the $958,122 in post-event SOA payments as "additional overhead damages" arising from payments Agilent continued to make through January 2, 2026, and describes the $5,281 transportation claim as the cost of moving undamaged Products to another Agilent warehouse. See Grudzien Report at 6-7 & Ex. A, Schedules 2, 6 Exhibit “13”.

24. The expert describes the $103,773 disposal claim as third-party costs to dispose of allegedly damaged Products; calculates the $170,419 freight claim as an estimate equal to two percent of replacement costs; and describes the $64,227 inventory-count claim as expenses incurred between February and April 2024 to count allegedly damaged inventory. See Grudzien Report at 6-7 & Ex. A, Schedules 3-5 Exhibit “13”

25. Factory Mutual sues as Agilent’s subrogee. Its damages expert also seeks $335,446 in Factory Mutual’s own adjustment expenses: $318,478 for an industrial hygienist, $12,248 for a salvor, and $4,720 for a forensic accountant. (Doc. 136 at 1; Ex. 9, Grudzien Report at 9-10 & Ex. B, Schedule 2 Exhibit 13)

26. Agilent asserts contract, bailment, negligent-misrepresentation, negligence/recklessness, declaratory, and negligence-per-se theories against Xpedient; Factory Mutual asserts contract, bailment, negligence, gross-negligence, and negligence-per-se theories. Each seeks recovery arising from the same alleged physical damage to Agilent’s Products during the January 17 event. (Doc. 137, Counts I-VI; Doc. 136, Counts I-V)

27. Neither Agilent nor Factory Mutual pleads a conversion claim or alleges that Xpedient appropriated the Products to its own use. (Doc. 137, Counts I-VI; Doc. 136, Counts I-V)

**D. The sprinkler system and information known before the event.**

28. Colliers, St. Paul’s property manager, contracted with Security Fire Protection Co., Inc. to perform ongoing quarterly, annual, and five-year inspections, testing, and maintenance of the wet-pipe sprinkler system. Colliers Responses to Interrogatories Interrog. Nos. 3, 7 Exhibit

"14". A January 4, 2024 wet-sprinkler inspection report identified Colliers Property Manager Shellie Moses as the contact and recommended maintaining a minimum temperature of 40°F during winter. See Jan. 4, 2024 Security Fire Report COLLIERS_01321-40, at COLLIERS_01323 Exhibit "15".

29. Colliers has identified no record that the January 4 report was forwarded, distributed, or transmitted to Xpedient before the January 17 event.

Respectfully submitted,

*/s/ William P. Thomas*
William P. Thomas (MS Bar No. 102209)
Andrew B. Schrack (BPR No. 037624)
BUTLER SNOW LLP
6075 Poplar Avenue, Suite 500
Memphis, Tennessee 38119
Telephone: (901) 680-7200
will.thomas@butlersnow.com
andrew.schrack@butlersnow.com

*Attorneys for Xpedient Management Group, LLC*

**CERTIFICATE OF SERVICE**

I certify that on September 21, 2026 the foregoing was filed through the Court's CM/ECF system, which sent notice to all counsel of record.

/s/ *William P. Thomas*
William P. Thomas