THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

**AGILENT TECHNOLOGIES, INC.,**
**Plaintiff,**
**v.**

**Case No. 2:25-cv-02101-MSN-cgc**

**XPEDIENT MANAGEMENT GROUP, LLC and ST. PAUL FIRE AND MARINE INSURANCE COMPANY,**
**Defendants.**

**XPEDIENT MANAGEMENT GROUP, LLC**

**Cross-Plaintiff,**
**v.**
**ST. PAUL FIRE AND MARINE INSURANCE COMPANY**

**Cross-Defendant.**

**XPEDIENT MANAGEMENT GROUP, LLC'S RESPONSES TO PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSION**

Pursuant to Federal Rule of Civil Procedure 36, Defendant Xpedient Management Group, LLC ("Xpedient") hereby responds to Plaintiff's First Set of Requests for Admission.

**FIRST SET OF REQUESTS FOR ADMISSION**

**General Response Applicable to All Requests:** Xpedient responds subject to and without waiving the terms of the Standard Commercial Lease, pursuant to which the property owner, St. Paul Fire and Marine Insurance Company, was contractually responsible for providing operational utility connections, including natural gas service, and for delivering the building's mechanical systems, including the HVAC system, in working order. Xpedient further states that during the relevant period there was ongoing uncertainty and lack of clarity among Memphis Light, Gas & Water ("MLGW"), the property owner and/or its property manager, and third-party

EXHIBIT
"B"

vendors regarding responsibility for gas metering, inspections, and activation necessary to commission the HVAC system, and Xpedient did not have unilateral authority to complete or control those processes.

**REQUEST NO. 1:** Admit that from July 15, 2023 to April 1, 2024 the gas meter serving the Cromwell Warehouse was locked.

**RESPONSE: Xpedient admits that the gas meter serving the Cromwell Warehouse was locked from November 17, 2023 until April 1, 2024. Xpedient lacks knowledge to admit the earliest date on which the gas meter was locked. Xpedient further states that, under the Lease, responsibility for providing a functional gas connection and coordinating any required metering and inspections rested with the property owner, and Xpedient's understanding of the status of gas service was dependent on information received from MLGW and the property owner and/or its property manager.**

**REQUEST NO. 2:** Admit that at least sixty days (60) prior to the Water Intrusion Event, You knew the gas meter at the Cromwell Warehouse was locked.

**RESPONSE: Admitted. Xpedient states that it did not have direct access to, custody of, or control over the gas meter or Memphis Light, Gas & Water ("MLGW") utility infrastructure and did not receive clear or consistent information from MLGW or the property owner and/or its property manager establishing what was required to have the gas activated to the warehouse. Xpedient admits that, prior to the Water Intrusion Event, it was aware of ongoing issues and confusion regarding gas service, metering, inspections, and account status for the leased premises, including uncertainty as to whether gas service was active or could be activated. Xpedient further states that, under the Lease, responsibility for providing a functional gas connection and coordinating any required metering and**

**inspections rested with the property owner, and Xpedient's understanding of the status of gas service was dependent on information received from MLGW and the property owner and/or its property manager.**

**REQUEST NO. 3:** Admit that in the sixty (60) days prior to the Water Intrusion Event, You did not inform Agilent that the gas meter at the Cromwell Warehouse was locked.

**RESPONSE:** **Xpedient admits that it did not represent to Agilent that it had definitive confirmation from MLGW that a gas meter was locked during that period. Xpedient further states that, under the Lease, responsibility for providing a functional gas connection and coordinating any required metering and inspections rested with the property owner, and Xpedient's understanding of the status of gas service was dependent on information received from MLGW and the property owner and/or its property manager.**

**REQUEST NO. 4:** Admit that at the time of the Water Intrusion Event, portable heaters were located in or near the vacant subsection of the Cromwell Warehouse.

**RESPONSE:** **Xpedient lacks sufficient information to admit the Request as stated and therefore denies it. Xpedient denies personal knowledge of the presence, location, ownership, or operational status, of portable heaters in or near any vacant subsection of the Cromwell Warehouse at the time of or before the Water Intrusion Event. Xpedient further states that it did not place, operate, or control portable heaters in vacant portions of the building and that any such heaters, if present, would have been placed or maintained by the property owner, its property manager, or third parties outside Xpedient's control. Following the Water Intrusion Event Xpedient was informed that portable heaters were being utilized by the property owner or its property manager in vacant portions of the building.**

**REQUEST NO. 5:** Admit that at the time of the Water Intrusion Event, no portable heaters were located in or near the subsection of the Cromwell Warehouse leased to You.

**RESPONSE:** **Xpedient admits that at the time of the Water Intrusion Event that no portable heaters were located in the Cromwell Warehouse area leased by Xpedient. Xpedient does not have sufficient knowledge to confirm the presence of portable heaters near the Cromwell Warehouse space leased by Xpedient. Xpedient denies personal knowledge of the presence, location, ownership, or operational status, of portable heaters in or near any vacant subsection of the Cromwell Warehouse at the time of or before the Water Intrusion Event. Following the Water Intrusion Event Xpedient was informed that portable heaters were being utilized by the property owner or its property manager in vacant portions of the building.**

**REQUEST NO. 6:** Admit that from July 15, 2023 to April 1, 2024, the Heating, Ventilation, and Air Conditioning ("HVAC") system serving the Cromwell Warehouse was not providing heat.

**RESPONSE:** **Xpedient admits that, from July 15, 2023 to April 1, 2024, it was aware of ongoing issues and uncertainty regarding the status and commissioning of the HVAC system, which were dependent on unresolved natural gas service, metering, and inspection issues involving Memphis Light, Gas & Water ("MLGW") and the property owner and/or its property manager. Xpedient further admits that it did not have exclusive control over the HVAC system or its gas supply and did not receive clear or consistent information confirming that the HVAC system was not providing heat at that time. Xpedient further states that, under the Lease, the property owner was responsible for delivering the HVAC system in operational condition and for providing the gas connection necessary for**

**its operation, and that during the relevant period it remained unclear which party—MLGW, the property owner, or third-party contractors—was responsible for completing the steps required to activate gas service and commission the HVAC system.**

**REQUEST NO. 7:** Admit that at least sixty (60) days prior to the Water Intrusion Event, You knew that the HVAC system servicing the Cromwell Warehouse was not providing heat.

**RESPONSE:** **Xpedient admits that, in the sixty (60) days prior to the Water Intrusion Event, it was aware of ongoing issues and uncertainty regarding the status and commissioning of the HVAC system, which were dependent on unresolved natural gas service, metering, and inspection issues involving Memphis Light, Gas & Water ("MLGW") and the property owner and/or its property manager. Xpedient further admits that it did not have exclusive control over the HVAC system or its gas supply and did not receive clear or consistent information confirming that the HVAC system was not providing heat at that time. Xpedient further states that, under the Lease, the property owner was responsible for delivering the HVAC system in operational condition and for providing the gas connection necessary for its operation, and that during the relevant period it remained unclear which party—MLGW, the property owner, or third-party contractors—was responsible for completing the steps required to activate gas service and commission the HVAC system.**

**REQUEST NO. 8:** Admit that in the sixty (60) days prior to the Water Intrusion Event, You did not inform Agilent that the HVAC system at the Cromwell Warehouse was not providing heat.

**RESPONSE:** **Xpedient admits that in the sixty (60) days prior to the Water Intrusion Event it had no communication with Agilent regarding the status of the HVAC system at the Cromwell Warehouse. Xpedient further states that neither the Master**

**Operating Services Agreement nor the Site Operating Agreement imposed a contractual obligation on Xpedient to affirmatively notify Agilent that the HVAC system was not providing heat. Xpedient further states that, under the Lease, the property owner was responsible for delivering the HVAC system in operational condition and for providing the gas connection necessary for its operation, and that during the relevant period it remained unclear which party—MLGW, the property owner, or third-party contractors—was responsible for completing the steps required to activate gas service and commission the HVAC system.**

**REQUEST NO. 9:** Admit that from January 1, 2023 to January 17, 2024, the sprinkler system at the Cromwell Warehouse did not have an antifreeze solution, insulated covering, frostproof castings, working heat tracing systems, or low temperature alarms.

**RESPONSE:** **Xpedient lacks sufficient information to admit or deny the Request as stated. Xpedient did not own, design, install, modify, or maintain the sprinkler system at the Cromwell Warehouse and did not have responsibility for determining whether the system included antifreeze solution, insulated covering, frostproof castings, heat tracing systems, or low temperature alarms during the period identified. Xpedient further states that the sprinkler system was owned, controlled, and maintained by the property owner and/or its agents, and Xpedient did not have access to the design specifications, system components, or maintenance records necessary to confirm or deny the presence or absence of the features listed in the Request. Xpedient further states that any decisions regarding winterization measures for the sprinkler system, including antifreeze, insulation, heat tracing, or alarms, were within the control and responsibility of the property owner and its agents, not Xpedient.**

**REQUEST NO. 10:** Admit that, following the Water Intrusion Event and continuing to the present, You have refused to release Agilent from the Warehousing Agreement unless Agilent agrees to pay the Early Termination Fee set forth therein.

**RESPONSE:** **Admitted, to the extent that the Warehousing Agreement remains in effect according to its terms. Xpedient admits that, following the Water Intrusion Event and continuing to the present, it has not released Agilent from the Warehousing Agreement absent compliance with the contractual early termination provisions, including payment of the Early Termination Fee expressly set forth in the Agreement. Xpedient further states that its position is based solely on enforcement of the unambiguous terms of the Warehousing Agreement and not on any refusal to perform contractual obligations or any improper purpose.**

This 4th day of February 2026.

William P. Thomas (MS 102209)
Andrew B. Schrack (TN 037624)
**BUTLER SNOW LLP**
6075 Poplar Ave., Ste. 500
Memphis, TN 38119
T: 901-680-7200
F: 901-680-7201
will.thomas@butlersnow.com
andrew.schrack@butlersnow.com

*Attorneys for Defendant Xpedient Management Group, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 4, 2026 a true and correct copy of the foregoing document has been served via e-mail and/or U.S. Mail, on the following counsel of record:

Douglas F. Halijan
Elena R. Mosby
BURCH PORTER & JOHNSON, PLLC
130 North Court Avenue Memphis, TN 38103
dhalijan@bpjlaw.com
emosby@bpjlaw.com

Douglas F. Halijan Elena R. Mosby
BURCH PORTER & JOHNSON, PLLC
130 North Court Avenue
Memphis, TN 38103
dhalijan@bpjlaw.com
emosby@bpjlaw.com

Attorneys *for Plaintiff*

Sean W. Martin
Michael J. Petherick
CARR ALLISON
633 Chestnut Street, Suite 2000
Chattanooga, TN 37450
T: 423.648.9832
swmartin@carrallison.com
mpetherick@carrallison.com

*Attorneys for Defendant St. Paul Fire and Marine Insurance Company*

Samuel Joseph Welborn
Jefferson C. Orr
SMITH CASHION & ORR, PLC
3100 West End Ave., Ste. 800
Nashville, TN 37203
jwelborn@smithcashion.com
jorr@smithsachion.com

*Attorneys for Defendant Factory Mutual Insurance Company*

William P. Thomas

99001068.v1