IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

| | | |
|---|---|---|
| AGILENT TECHNOLOGIES, INC. | ) | |
| Plaintiff, | ) | Case No. |
| vs. | ) | 2:25-CV-02101 |
| XPEDIENT MANAGEMENT | ) | (BCL)(CGC) |
| GROUP, LLC, et al., | ) | |
| Defendants. | ) | |

---

| | |
|---|---|
| XPEDIENT MANAGEMENT GROUP, | ) |
| LLC, | ) |
| Cross-Plaintiff, | ) |
| vs. | ) |
| ST. PAUL FIRE AND MARINE | ) |
| INSURANCE COMPANY and | ) |
| COLLIERS MANAGEMENT | ) |
| SERVICES - MEMPHIS, LLC, | ) |
| Cross-Defendants. | ) |

---

ORAL AND VIDEOTAPED DEPOSITION OF

ZACHARY LIVINGSTON

September 16, 2026

Reported By: SUSAN ASHE, CER

Job No.: 10200460

EXHIBIT "B"

Wednesday, September 16, 2026

10:14 a.m. Eastern Daylight Time

Oral and videotaped deposition of ZACHARY LIVINGSTON, taken on behalf of the Plaintiff, beginning at 10:14 a.m., on Wednesday, September~16, 2026, at the law offices of Reed Smith LLP, 1301 K~Street, Northwest, Washington, D.C., before Susan Ashe, Certified Electronic Reporter and a Notary Public in the District of Columbia.

APPEARANCE OF COUNSEL:

On behalf of the Plaintiff Agilent Technologies:

REED SMITH LLP
BY: MARGARET C. McDONALD, ESQ.
515 South Flower Street, Suite 4300
Los Angeles, California 90071
(213) 457-8000
mcmcdonald@reedsmith.com

- and -

BRADLEY ARANT BOULT CUMMINGS LLP
BY: PETER C. SALES, ESQ. (Via Zoom)
BY: ELIZABETH T. PETRAS, ESQ. (Via Zoom)
1221 Broadway, Suite 2400
Nashville, Tennessee 37203
(615) 244-2582
psales@bradley.com
bpetras@bradley.com

A. Yes.
**Q. And it's your testimony that Heena Rathod is in the accounting department at Xpedient. Is that correct?**
A. Yes.
**Q. Okay. And had you had any communications with MLGW before you sent this email?**
A. The reason that I asked "him" for the account number is because when you call -- when I called MLGW that morning, I couldn't talk to anybody unless I had an account number.
**Q. Was the morning of January 17th the first time that you had called MLGW relating to the Cromwell warehouse?**
A. As far as I recall, yes.
**Q. Okay. And what prompted you to call on the morning of January 17th?**
A. I had had a meeting with Dirk. And he said we need to work on getting the gas turned on.
**Q. Okay.**
A. So I took steps.
The first thing I did was call MLGW, and I couldn't talk to anybody because I didn't have an account number.
So that's when I contacted Heena in

accounting to see if I could get an account number.
**Q. And how, to your understanding, did Dirk become aware that the gas was not turned on?**
A. I had mentioned that it was cold, that the weather -- that it actually snowed, and it was a surprise and, you know, that I had my coat on still, because the warehouse was a little cold.
**Q. And did you communicate to him that the gas was not turned on?**
A. I believe so.
**Q. Okay. And once he learned that, he then instructed you to get the gas turned on?**
A. He told me to get it on.
**Q. Okay.**
COURT REPORTER: You told him to get it on, is that what you said?
WITNESS: Yeah, he told me to get it on. Yeah.
**Q. And that was to get the gas on, correct?**
A. Correct.
**Q. Okay. And that was before the water intrusion event. Correct?**
A. It's the day of.
**Q. But before, yes?**
A. Yes.

places of water were coming from.

**Q. Okay. In the next day or the following days, were you able to just -- and I know you're not a sprinkler expert or anything, but were you able to tell, inside the warehouse, where the broken pipe was where you saw this significant stream of water coming out?**

A. I saw the area where the water was coming out.

I couldn't determine exactly where it was coming out of, but I was able to, you know, see, once -- once it was daylight, where it was coming from.

**Q. Okay. So you were asked about these -- the gas meter being locked based on Crowe's work and the Crowe email to you. Do you recall that?**

A. Through the Crowe email, yeah, that's when I learned, that the meter was locked.

**Q. Okay. And then after that, Crowe forwarded the invoice to accounting@xpedient.com?**

A. I believe it was Crowe, yes -- I mean, yeah, accounting received it, the Crowe invoice.

**Q. Directly from Crowe.**

A. I believe so, yes.

**Q. And they would have had to have gotten**

**that information from you, correct? -- to send it to "accounting@xpedient."**
A. Yeah, I would have told them to send it to accounting.
**Q. Okay. When would you have told them that?**
A. It -- probably when I scheduled the job.
I'm not 100% sure when during the job I told them to send it to accounting.
**Q. Okay. Well, that's my question -- because first they sent it directly to you, correct?**
A. Okay.
**Q. And it wasn't until January of '24 that they sent it to accounting@xpedient.com.**
**So I guess....**
A. January or December?
**Q. January the 9th.**
A. It was marked as paid, though.
**Q. Well, I guess my question is: After they were there in November, did you have any subsequent discussions with Crowe?**
A. I don't recall any conversation with Crowe.
**Q. Before January the 17th, 2024, did you ever contact MLGW about anything at that building?**
MR. THOMAS: Objection; asked