**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | |
|---|---|
| AGILENT TECHNOLOGIES, INC.,<br>Plaintiff,<br><br>v.<br><br>XPEDIENT MANAGEMENT GROUP, LLC, ST. PAUL FIRE AND MARINE INSURANCE COMPANY, and COLLIERS MANAGEMENT SERVICES – MEMPHIS, LLC,<br>Defendants. | Case No. 2:25-cv-02101-BCL-cgc<br><br>Judge Brian C. Lea<br>Magistrate Judge Charmaine Claxton |
| XPEDIENT MANAGEMENT GROUP, LLC,<br>Cross-Plaintiff,<br><br>v.<br><br>ST. PAUL FIRE AND MARINE INSURANCE COMPANY and COLLIERS MANAGEMENT SERVICES – MEMPHIS, LLC,<br>Cross-Defendants. | |
| FACTORY MUTUAL INSURANCE CO., as subrogee of Agilent Technologies, Inc.,<br>Plaintiff,<br><br>v.<br><br>XPEDIENT MANAGEMENT GROUP, LLC, ST. PAUL FIRE AND MARINE INSURANCE COMPANY, and COLLIERS MANAGEMENT SERVICES – MEMPHIS, LLC,<br>Defendants. | Case No. 2:25-cv-02424-BCL-tmp<br><br>JURY DEMANDED |

**AGILENT TECHNOLOGIES, INC.'S RESPONSE TO XPEDIENT MANAGEMENT GROUP, LLC'S MOTION FOR LEAVE TO AMEND RESONSES TO REQUESTS FOR ADMISSION NOS. 2 AND 5**

Plaintiff Agilent Technologies, Inc. ("Agilent") submits this response in opposition to the Motion for Leave to Amend Responses to Requests for Admission Nos. 2 and 5 (ECF 265) filed by Defendant Xpedient Management Group, LLC ("Xpedient"). Agilent opposes withdrawal of Xpedient's admission to Request for Admission ("RFA") No. 2. While Agilent does not oppose Xpedient correcting its response to RFA No. 5 to reflect its witness's actual testimony, it does oppose the proposed amended response as drafted because it misstates that testimony.

## **Introduction**

Xpedient admitted on February 4, 2026, that it knew "at least sixty days (60) prior to the [January 17, 2024] Water Intrusion Event" that the Cromwell Warehouse's gas meter was locked. (ECF 265-2 at 2-3.) It could hardly claim otherwise. Xpedient began leasing the Cromwell Warehouse in May 2023 (ECF 137 at ¶ 35; ECF 142), roughly eight months before the Event, and from shortly thereafter was receiving the Warehouse's gas utility bills, which showed ***no*** gas usage from May 2023 through the Event. (*See, e.g.,* Exs. 1-7 [Xpedient's Memphis Light Gas & Water ("MLGW") utility bills, covering July 2023 through January 11, 2024, just six days before the Water Intrusion Event, reflecting no gas usage].)

Xpedient's Director of Operations, with responsibility for the Cromwell Warehouse, also testified that the gas meter, which was "right next to the steps going into" the Warehouse, was "obviously locked." (Ex. 8 [Updike Tr.] at 147:24-149:14.) As the MLGW bills confirm, this meter was "obviously locked" from the start of Xpedient's tenancy. Moreover, on November 16, 2023—two months before the Event, an HVAC vendor Xpedient itself hired arrived onsite to service the Warehouse's HVAC system but could not do so because the gas meter was locked. (Ex. 9 [Nov. 16, 2024 invoice].) Present for that visit was Xpedient's safety manager, whom its CFO placed at the top of Xpedient's hierarchy of more than 500 employees. (Ex. 10 [Livingston

Tr.] at 86:15-87:21; Ex. 11 [Haynes Tr.] at 17:15-21, 20:8-14, 30:7-34:6.) Despite this, and other evidence, Xpedient now claims its admission of this fact was incorrect; it now seeks to *deny* that it knew the gas meter was locked before December 1, 2023 (the date the HVAC vendor emailed Xpedient's safety manager, attaching the invoice from the November 2023 site visit, and asking if they "need to come back out when the gas is unlocked"). (*See* Ex. 9.) Xpedient also seeks to withdraw its admission that "no portable heaters were located in the Cromwell Warehouse area leased by Xpedient," reflecting testimony by its safety manger that a *single* space heater was operating in his office.

In the nearly nine months since Xpedient made these admissions, Agilent deposed Xpedient's Rule 30(b)(6) designees and prepared its expert reports in reliance thereon. Then, at 12:34 p.m. on Friday, October 16, 2026, less than one business day before Agilent's opposition to Xpedient's motion for summary judgment was due, Xpedient asked the parties to consent to withdrawing these admissions and then filed this motion the following Monday before Agilent could even meaningfully confer with its client about the issue. (Ex. 12 [Oct. 16-19, 2026 email exchange].) In addition to that, Xpedient's motion rests on testimony Xpedient had in hand for a month before it filed its motion. (ECF 265-3 at 1 [deposition dated September 16, 2026].) The motion should be denied as to RFA No. 2 and, to the extent the Court permits amendment of Xpedient's response to RFA No. 5, the final sentence of Xpedient's proposed amended response should be stricken, or any amended response should be required to accurately reflect the testimony that Xpedient relies upon.

## Legal Standard

A matter admitted under Rule 36 "is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended." Fed. R. Civ. P. 36(b). The court "may permit

withdrawal or amendment if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits." *Id.* The Sixth Circuit has made clear that the district court has "considerable discretion" over whether to permit withdrawal. *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 154 (6th Cir. 1997) (internal citation omitted). Prejudice under Rule 36(b) concerns the special difficulties a party faces because of a sudden need to obtain evidence once an admission is withdrawn. *Id.* Because the rule is permissive, a court is not required to permit withdrawal even when both factors favor the movant, and it may weigh the equities, including the timing of the request and the movant's conduct. *See O'Neill v. Medad*, 166 F.R.D. 19 (E.D. Mich. 1996); *In re Ottawa River Steel*, 324 B.R. 636 (Bankr. N.D. Ohio 2005).

## <u>Argument</u>

### A. The Court Should Deny Withdrawal of the Admission to RFA No. 2

RFA No. 2 asked Xpedient to "[a]dmit that at least sixty days (60) prior to the Water Intrusion Event, You knew the gas meter at the Cromwell Warehouse was locked." Xpedient answered, "Admitted." (ECF 265-2 at 2.) Its counsel signed and served that response on February 4, 2026. (*Id.* at 7–8.) More than eight months later, Xpedient asks to withdraw that admission. The Court should deny this request.

#### 1. <u>Withdrawal would not promote presentation of the merits</u>

Withdrawal does not promote presentation on the merits here. Xpedient took possession of its portion of the Cromwell Warehouse in mid-May 2023 (ECF 137 at ¶ 35; ECF 142), and it then received MLGW bills for the premises month after month, which all showed no gas usage. (Exs. 1-7.)

Xpedient's proposed amendment rests entirely on the testimony of its safety manager,

Zachary Livingston. Mr. Livingston's testified that he indisputably knew the gas meter was locked when he received the HVAC vendor's invoice on December 1, 2023. (ECF 265-3 at 135:3-12.) But Mr. Livingston did "[not] recall" whether he knew, during the HVAC vendor's November 16, 2023 visit, that the inspection could not be completed because the gas meter was locked. (*Id.* at 135:13-16; Ex. 10 [Livingston Tr.] at 87:16-21.)

Consistent with its admission, Xpedient's Rule 30(b)(6) designee, when asked whether, "on November 16, 2023, Xpedient knew the gas meter serving its side of the building was locked," answered, "I believe Zach Livingston understood that at that time." (Ex. 11 [Haynes Tr.] at 312:23–313:3; *see also id.* 205:1–5.) Likewise, one of Xpedient's Director of Operations for the Cromwell Warehouse, Jamie Davis, agreed that the HVAC vendor "informed Mr. Livingston that the gas meter was locked . . . on November 16th, 2023." (Ex. 13 [Davis Tr.] at 200:11-201:13.)

Against this record, Mr. Livingston's failure to recall whether the HVAC vendor informed him, at the time of their visit, that the gas meter was locked does not show that the admission is untrue. At most, it demonstrates that Xpedient would have preferred to answer differently now that it has filed a summary judgment motion.

2. <u>Withdrawal would prejudice Agilent</u>

Xpedient looks to withdraw its admission near the close of fact discovery. (ECF 214.) When Agilent deposed Xpedient's two Rule 30(b)(6) designees on September 2 and 3, 2026, it understood that Xpedient had conclusively admitted knowing "at least" sixty days before the Event that the gas meter was locked. Agilent's expert, Stephen Hopper, likewise relied on the admission. (Ex. 14 [2/17/26 Hopper Report] at 11, 14, 17, 20; Ex. 15 [5/13/26 Hopper Report] at 8, 15, 17.) Withdrawal now would force Agilent's expert to revisit certain opinions, among other things, all because Xpedient decided a month after Livingston's deposition, more than eight months after its

admission, and at the close of fact discovery, to change course one business day before Agilent's opposition to Xpedient's summary judgment motion was due.

3. <u>The equities and timing independently warrant denial</u>

Even apart from the two Rule 36(b) factors, the Court should exercise its discretion to deny withdrawal. Agilent deposed Mr. Livingston on September 16, 2026, with Xpedient's counsel defending. (ECF 265-3 at 1, 4.) Xpedient then sat on his testimony for a month. At midday on Friday, October 16, one business day before Agilent's opposition to Xpedient's motion for summary judgment was due, Xpedient asked for consent to amend. (Ex. 12.) The following Monday morning, the day its opposition was due, Agilent's counsel explained that Agilent had not yet had a full business day to consider the request or confer with its client and would respond "by Wednesday if not before." (*Id.*) Xpedient would not wait two days. Within the hour, its counsel replied, "I'll go ahead and file the motion," and did so. (*Id.*; ECF 265, 266.) Its certificate of consultation states only that Agilent "would not indicate whether they would oppose" (ECF 266 at 4), omitting that Agilent had promised an answer by or before mid-week. This conduct does not merit discretionary relief.

**B. Agilent Does Not Oppose Correcting RFA No. 5, but the Proposed Response Misstates Livingston's Testimony**

RFA No. 5 asked Xpedient to admit that "no portable heaters were located in or near the subsection of the Cromwell Warehouse leased to You," and Xpedient admitted that "no portable heaters were located in the Cromwell Warehouse area leased by Xpedient." (ECF 265-2 at 4.) Agilent does not oppose Xpedient correcting its admission to RFA No. 5 to acknowledge, consistent with Mr. Livingston's testimony, that a portable space heater was present in Xpedient's leased premises. Agilent opposes, however, the final sentence of Xpedient's proposed amended

response, which asserts that "Livingston's testimony does not establish whether any portable heater was operating at the precise moment of the Water Intrusion Event or the precise location or operating status of the second heater." (ECF 265-1 at 2-3.) That sentence is contradicted by the testimony on which Xpedient relies.

First, Mr. Livingston testified that "when I was there, I would turn it on as a means of comfort and put it on my desk." (ECF 265-3 at 139:1-4.) In other words, the heater was on only when Mr. Livingston was present. It is undisputed that Mr. Livingston was not at the Cromwell Warehouse when the Event occurred; he went to the building only after the alarm sounded on the evening of January 17, 2024. (Ex. 10 [Livingston Tr.] at 335:12-336:16.)

Second, Mr. Livingston testified that he tested only "[o]ne of" the two infrared heaters, that he had it "plugged in and operating in the office space where [he] worked," and that he did not have a space heater "operating anywhere else in the warehouse." (ECF 265-3 at 138:8-19, 140:4-9.) He also testified that he was not aware of "any other space heaters being located anywhere in the warehouse." (*Id.* at 140:10-14.) Xpedient's statement that the testimony leaves open the "operating status of the second heater" is therefore inaccurate.

Accordingly, if the Court permits amendment of RFA No. 5, Agilent requests that the Court strike the final sentence of the proposed response, or require that any amended response accurately reflect Mr. Livingston's testimony that he operated a single space heater, only in his office, and only when he was present.

## **Conclusion**

For these reasons, Agilent respectfully requests that the Court (1) deny Xpedient's motion to the extent it seeks to withdraw its admission to RFA No. 2; and (2) to the extent the Court permits amendment of RFA No. 5, strike the final sentence of the proposed amended response or

require an amended response consistent with Mr. Livingston's testimony.

DATED: November 2, 2026

Respectfully submitted,

*/s/ Margaret C. McDonald*
Amber Finch (#222321) (admitted *pro hac vice*)
Margaret C. McDonald (#307008) (admitted *pro hac vice*)
Katherine P. Goetz (#346205) (admitted *pro hac vice*)
REED SMITH LLP
515 South Flower Street, Suite 4300
Los Angeles, CA 90071
Telephone: 213-457-8000
Facsimile: 213-457-8080
afinch@reedsmith.com
mcmcdonald@reedsmith.com
kgoetz@reedsmith.com

Douglas F. Halijan (BPR # 16718)
BURCH PORTER & JOHNSON, PLLC
130 North Court Avenue
Memphis, TN 38103
Telephone: 901-524-5000
Facsimile: 901-524-5024
dhalijan@bpjlaw.com