# EXHIBIT 8

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

AGILENT TECHNOLOGIES, INC.,

Plaintiff,

vs. Case No. 2:25-CV-02101-bcl-cgc

XPEDIENT MANAGEMENT GROUP, LLC,
ST. PAUL FIRE AND MARINE INSURANCE
COMPANY, AND COLLIERS MANAGEMENT
SERVICES - MEMPHIS, LLC,

Defendants.

---

XPEDIENT MANAGEMENT GROUP, LLC,

Cross-Plaintiff,

vs.

ST. PAUL FIRE AND MARINE INSURANCE
COMPANY and COLLIERS MANAGEMENT
SERVICES - MEMPHIS, LLC,

Cross-Defendants.

---

(Caption continued on page 2.)

Deposition of

DIRK UPDIKE
Individually and 30(b)(6)

September 2, 2026

10:00 a.m.

Reported by:
Julie Lyle, RPR, LCR
Job No. 10199289

A. I couldn't tell you the numbers or anything, but it would have been documents supplied as part of the --

**Q. Production?**

A. Yes, ma'am.

**Q. Okay.**

A. Part of the production.

**Q. Perfect.**

**And did you bring any documents with you today?**

A. I just brought the United States District Court from Western Tennessee Division --

MR. THOMAS: It's the 30(b)(6) notice.

THE WITNESS: The 30(b)(6).

BY MS. McDONALD:

**Q. Perfect.**

**So it's the amended notice of deposition, right at the bottom of the page, is that --**

A. Amended Notice of Deposition of Xpedient Management Group, 30(b)(6).

**Q. Perfect.**

**And you understand you're appearing in two separate capacities today, correct?**

A. Yes, ma'am.

**Q. Okay. First, you're obviously appearing in**

**your individual capacity, and then you're also appearing as the designated representative -- corporate representative of Xpedient under Rule 30(b)(6) in regards to certain topics identified in that notice that you have in front of you, correct?**

A. Yes.

MR. THOMAS: If you'd like me to, I can identify the topics that he's going to cover.

MS. McDONALD: They're consistent with the chart that you circulated, right?

MR. THOMAS: They are.

MS. McDONALD: Have they changed?

MR. THOMAS: No, but, you know, I would like the record to reflect that this witness will cover the topics in Xpedient's Amended Notice of Deposition, Topic Number 7, Topic Number 8, Topic Number 9.

MR. BUTLER: Oh, wait.

MS. McDONALD: Wait. You had Nate as 9.

MR. BUTLER: You had Nate for 9.

MR. THOMAS: Yeah. Yeah. That is a change, so 9 is a change. 10, 11, 12, 14.

MR. BUTLER: Not 13 anymore?

MS. McDONALD: Not 13?

fully came over.
**Q. Okay. And prior to that, had Mr. Livingston ever reported to you?**
A. Prior to that?
**Q. Yeah.**
A. No.
**Q. Okay. And when he started reporting to you on February 1st, 2024, what was his title at that time?**
A. Safety manager.
**Q. Okay. And how long have you been employed by Xpedient?**
A. My first day at Xpedient was October 30th of 2023.
**Q. And what was your title at the time you joined Xpedient?**
A. Senior director.
**Q. Was that senior director of operations or just senior director?**
A. Yeah, senior director of operations.
**Q. And how long did you hold that title?**
A. Until August of 2025.
**Q. Okay. And what were your responsibilities as senior director of operations at Xpedient?**
A. I was responsible for safety. So safety came

event?
BY MS. McDONALD:
**Q. Yeah.**
A. Yeah, I would have known at that point while we were trying to get them out there to fix it.
**Q. And how would you have known?**
A. I mean, I visited the site. We had talked about it, and we were trying to get the gas up and going.
**Q. Who had you talked about it with?**
A. I mean, Zach, Jamie, Mike, Nate.
**Q. And they, all four of them, told you the gas meter was locked?**
A. After the event?
**Q. Yeah.**
A. I mean, I went and visited like two or three days later. And then it was --
**Q. Okay. I know you testified you went to the warehouse --**
A. Yeah.
**Q. -- either you flew in to Memphis Friday night/Saturday morning, correct --**
A. Yeah. Yeah.
**Q. -- after the water-intrusion event?**
**And so you learned when you were on the**

**ground in Memphis that the gas meter was locked?**
A. Correct.
**Q. How did you make that determination?**
A. It was showed to me.
**Q. What do you mean, it was shown to you?**
A. I went outside and looked at it and saw it. It was shown to me.
**Q. So you -- by visually looking at the gas meter, you could tell if it was locked?**
A. There was a lock on it. That's what I can tell you. I'm not a plumbing specialist. I'm not a gas specialist. But there was a lock on it.
**Q. So it was obviously locked, is your testimony?**
A. When I got there?
**Q. Yeah.**
A. Yeah.
**Q. And are you aware that that gas meter was locked for all of 2023?**
A. I am not.
**Q. Okay. Are you surprised to hear that?**
A. You mean now am I aware of that?
**Q. Yeah.**
A. I am aware of it now, yes. Correct. I was not at the time.

**Q. Okay. But to your understanding today, that lock would have been on that gas meter the entire time Xpedient was at the warehouse from May of 2023, correct?**

A. My understanding, based on what I've heard, is that it had been locked out the whole time. With what I know today.

**Q. And was it easy to access the gas meter?**

A. Define -- can you define what you mean by easy access?

**Q. How did you see the gas meter? Was it outside the building? Where was it?**

A. It was right next to the steps going into the building.

**Q. Would you have to walk past the gas meter to get into the warehouse?**

A. No. No, wouldn't -- you wouldn't have to. You would walk -- it was off to the right of the door, up against the building. And there was parking cinderblocks straight out from it, probably to avoid people pulling up close to the line, would be my guess, because I don't remember -- I don't think it had bollards in front of it, if I remember correctly.

**Q. Okay. But the gas meter is very close to the**

COURT REPORTER'S CERTIFICATE

STATE OF TENNESSEE:

I, JULIE K. LYLE, Licensed Reporter for the State of Tennessee, CERTIFY:

1. The foregoing deposition was taken before me at the time and place stated in the foregoing styled cause with the appearances as noted;

2. Being a Court Reporter, I then reported the deposition stenographically to the best of my skill and ability, and the foregoing pages contain a full, true and correct transcript of my said stenographic notes then and there taken;

3. I am not in the employ of and am not related to any of the parties or their counsel, and I have no interest in the matter involved.

WITNESS MY SIGNATURE, this, the 14th day of September, 2026.

JULIE LYLE, RPR, LCR
LCR Number: 850
Expiration: 6/30/2028